UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEIL ANAND, *et al.*,<br><br>        *Plaintiffs,*<br><br>      v.<br><br>U.S. DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES, *et al.*,<br><br>        *Defendants.* | Civil Action No. 21-1635 (CKK) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

DOUGLAS C. DREIER, D.C. Bar No. 1020234
Assistant United States Attorney – Civil Division
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-2551
douglas.dreier@usdoj.gov

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................. 1

I.    HHS's Response to Plaintiff Anand's FOIA Request. ........................................... 2

II.    DEA's Response to Plaintiffs' FOIA Requests. ................................................... 4

    A.    DEA's Response to Plaintiff Anand's FOIA Request. ................................. 4

    B.    DEA's Response to Plaintiff Pompy's FOIA Request.................................. 6

LEGAL STANDARDS ....................................................................................................... 8

ARGUMENT ...................................................................................................................... 9

I.    Defendants Performed Reasonable Searches.......................................................... 9

    A.    Applicable Standards.................................................................................... 9

    B.    HHS's Searches Were Reasonable and Legally Sufficient. ....................... 11

    C.    DEA's Searches for Plaintiff Anand's Request Were Reasonable and Legally Sufficient. ...................................................................................... 13

    D.    DEA's Searches for Plaintiff Pompy's Request Were Reasonable and Legally Sufficient. ...................................................................................... 14

II.    Defendants Properly Applied FOIA Exemptions to the Records. ...................... 15

    A.    Defendants' Withholdings Pursuant to Exemption 7(A) Are Appropriate. ................ 17

    B.    DEA's Withholdings Pursuant to 5 U.S.C. § 552a(j) Are Appropriate. ..................... 19

    C.    HHS's Withholdings Pursuant to Exemption 3 Are Appropriate. .............................. 20

    D.    HHS's Withholdings Pursuant to Exemption 4 Are Appropriate. .............................. 22

    E.    Defendants' Withholdings Pursuant to Exemption 5 Are Appropriate....................... 24

    F.    Defendants' Withholdings Pursuant to Exemptions 6 and 7(C) Are Appropriate. ...... 30

    G.    DEA's Withholdings Pursuant to Exemption 7(D) Are Appropriate. ......................... 35

    H.    Defendants' Withholdings Pursuant to Exemption 7(E) Are Appropriate.................. 37

    I.    Defendants' Withholdings Pursuant to Exemption 7(F) Are Appropriate. ................. 41

    J.    Defendants Released All Reasonably Segregable Information.................................... 42

III.  DEA Properly Invoked *Glomar* in Responding to Plaintiff Anand's Request for
       Information Regarding His Former Business Partner.........................................................43

CONCLUSION..............................................................................................................................45

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*100Reporters LLC v. Dep't of Just.*,
       248 F. Supp. 3d 115 (D.D.C. 2017) ...................................................................... 28, 29

*Adams v. United States*,
       78 Fed. Cl. 556 (Fed. Cl. 2007) ...................................................................................31

*Agrama v. IRS*,
       272 F. Supp. 3d 42 (D.D.C. 2017) ............................................................................16-17

*Am. Fed'n of Gov't Emps. v. Broad. Bd. of Governors*,
       711 F. Supp. 2d 139 (D.D.C. 2010) .............................................................................34

*Amadis v. Dep't of State*,
       971 F.3d 364 (D.C. Cir. 2020) .....................................................................................30

*Amuso v. Dep't of Just.*,
       600 F. Supp. 2d 78 (D.D.C. 2009) ...............................................................................32

*Anand v. Indep. Blue Cross*,
       Civ. A. No. 20-6243, 2021 WL 3128690 (E.D. Pa. July 23, 2021) ...............................4

*Anderson v. Lib. Lobby, Inc.*,
       477 U.S. 242 (1986) .......................................................................................................8

*Armstrong v. Exec. Office of the President*,
       97 F.3d 575 (D.C. Cir. 1996) ........................................................................................42

*Associated Press v. Dep't of Def.*,
       549 F.3d 62 (2d Cir. 2008) ............................................................................................33

*Beck v. Dep't of Just.*,
       997 F.2d 1489 (D.C. Cir. 1993) ...............................................................................32, 34

*Birch v. U.S. Postal Serv.*,
       803 F.2d 1206 (D.C. Cir. 1986) ....................................................................................36

*Blackwell v. FBI*,
646 F.3d 37 (D.C. Cir. 2011) ................................................. 37

*Borda v. Dep't of Just.*,
306 F. Supp. 3d 306 (D.D.C. 2018) ............................... 20, 21

*Brayton v. Off. of U.S. Trade Rep.*,
641 F.3d 521 (D.C. Cir. 2011) ................................................. 8

*Brown v. Dep't of Just.*,
742 F. Supp. 2d 126 (D.D.C. 2010) .................................... 10

*Canning v. Dep't of Just.*,
567 F. Supp. 2d 104 (D.D.C. 2008) .................................... 42

*Carter v. Dep't of Com.*,
830 F.2d 388 (D.C. Cir. 1987) ............................................. 33

*Castro v. IRS*,
Civ. A. No. 20-1843 (CKK), 2022 WL 1085245 (D.D.C. Mar. 22, 2022) ........................... 21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................... 8

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
600 F. Supp. 114 (D.D.C. 1984) ......................................... 27

*Church of Scientology of Cal. v. IRS*,
792 F.2d 146 (D.C. Cir. 1986) ............................................. 16

*Cleveland v. United States*,
128 F. Supp. 3d 284 (D.D.C. 2015) .................................... 26

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ............................... 25, 26, 27

*Codrea v. ATF*,
239 F. Supp. 3d 128 (D.D.C. 2017) .................................... 31

*Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*,
554 F.3d 1046 (D.C. Cir. 2009) .......................................... 33

*Cooper v. Dep't of Just.*,
Civ. A. No. 99-2513 (RBW), 2022 WL 602532 (D.D.C. Mar. 1, 2022) ............................... 31

*CREW v. Dep't of Homeland Sec.*,
  648 F. Supp. 2d 152 (D.D.C. 2009) .................................. 27

*CREW v. Dep't of Labor*,
  478 F. Supp. 2d 77 (D.D.C. 2007) .................................. 9, 16

*CREW v. Dep't of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014) .................................. 17

*CREW v. Dep't of Just.*,
  854 F.3d 675 (D.C. Cir. 2017) .................................. 44

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
  436 F. Supp. 3d 90 (D.D.C. 2019) .................................. 24

*Ctr. for Nat'l Sec. Studies v. Dep't of Just.*,
  331 F.3d 918 (D.C. Cir. 2003) .................................. 18-19, 24-25, 44

*Davis v. Dep't of Just.*,
  968 F.2d 1276 (D.C. Cir. 1992) .................................. 44

*Defs. of Wildlife v. Dep't of Interior*,
  314 F. Supp. 2d 1 (D.D.C. 2004) .................................. 9-10, 23

*Defs. of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) .................................. 8, 10

*Dep't of Def. v. Fed. Labor Relations Auth.*,
  510 U.S. 487 (1994) .................................. 15, 32

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) .................................. 27

*Dep't of Just. v. Landano*,
  508 U.S. 165 (1993) .................................. 36, 37

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
  489 U.S. 479 (1989) .................................. 32

*Dep't of Just. v. Tax Analysts*,
  492 U.S. 136 (1989) .................................. 16

*Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982) .................................. 32

*Djenasevic v. Exec. Office for U.S. Attorneys*,
    319 F. Supp. 3d 474 (D.D.C. 2018) ................................................. 19

*Donato v. Exec. Office for U.S. Attorneys*,
    308 F. Supp. 3d 294 (D.D.C. 2018) ................................................. 44

*Dow Jones & Co. v. Dep't of Just.*,
    917 F.2d 571 (D.C. Cir. 1990) ........................................................ 36

*Elec. Priv. Info. Ctr. v. DEA*,
    192 F. Supp. 3d 92 (D.D.C. 2016) ................................................. 12

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
    117 F. Supp. 3d 46 (D.D.C. 2015) ................................................. 23

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
    777 F.3d 518 (D.C. Cir. 2015) ........................................................ 42

*Fisher v. United States*,
    425 U.S. 391 (1976) ................................................................ 25, 26

*Food Mktg. Inst. v. Argus Leader Media*,
    139 S. Ct. 2356 (2019) ........................................................... 22, 23

*FPL Grp. Inc. v. IRS*,
    698 F. Supp. 2d 66 (D.D.C. 2010) ................................................. 27

*Fund for Const'l Gov't v. Nat'l Archives & Records Serv.*,
    656 F.2d 856 (D.C. Cir. 1981) ................................................... 20, 21

*Gallant v. NLRB*,
    26 F.3d 168 (D.C. Cir. 1994) ........................................................ 16

*Gardels v. CIA*,
    689 F.2d 1100 (D.C. Cir. 1982) ..................................................... 43

*Greenberg v. Dep't of Treasury*,
    10 F. Supp. 2d 3 (D.D.C. 1998) ..................................................... 9

*Gula v. Meese*,
    699 F. Supp. 956 (D.D.C. 1988) ................................................... 36

*Gulf & W. Indus. v. United States*,
    615 F.2d 527 (D.C. Cir. 1979) ...................................................... 23

*Hudgins v. IRS*,
    620 F. Supp. 19 (D.D.C. 1985) ........................................................................ 13

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ...................................................................... 27

*In re Sealed Case*,
    737 F.2d 94 (D.C. Cir. 1984) ....................................................................... 25

*Juarez v. Dep't of Just.*,
    518 F.3d 54 (D.C. Cir. 2008) .................................................................. 17, 18

*Jud. Watch, Inc. v. Dep't of Just.*,
    20 F.4th 49 (D.C. Cir. 2021) ........................................................................ 27

*Jud. Watch, Inc. v. Dep't of Just.*,
    365 F.3d 1108 (D.C. Cir. 2004) .................................................................... 24

*Jud. Watch, Inc. v. Rossotti*,
    285 F. Supp. 2d 17 (D.D.C. 2003) .................................................................. 9

*Kowalczyk v. Dep't of Just.*,
    73 F.3d 386 (D.C. Cir. 1996) .................................................................. 10, 11

*Labow v. Dep't of Just.*,
    278 F. Supp. 3d 431 (D.D.C. 2017) .............................................................. 20

*Landmark Legal Found. v. EPA*,
    272 F. Supp. 2d 59 (D.D.C. 2003) .......................................................... 12, 13

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ....................................................................... 9

*Leonard v. Dep't of Treasury*,
    590 F. App'x 141 (3d Cir. 2014) .................................................................. 21

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999) ....................................................................... 32

*Lewis v. Dep't of Just.*,
    867 F. Supp. 2d 1 (D.D.C. 2011) ................................................................. 31

*Mapother v. Dep't of Just.*,
    3 F.3d 1533 (D.C. Cir. 1993) ....................................................................... 26

*Mayer Brown LLP v. IRS*,
   562 F.3d 1190 (D.C. Cir. 2009) ........................................................ 37

*McCutchen v. HHS*,
   30 F.3d 183 (D.C. Cir. 1994) ....................................................... 15, 31

*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ........................................................ 8

*McKinley v. Bd. of Governors of Fed. Reserve Sys.*,
   647 F.3d 331 (D.C. Cir. 2011) ......................................................... 28

*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ..................................................... 25, 42

*Media Rsch. Ctr. v. Dep't of Just.*,
   818 F. Supp. 2d 131 (D.D.C. 2011) .................................................. 8, 9

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ..................................................... 11, 12

*Mil. Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ....................................................... 9, 16

*Nadler v. Fed. Deposit Ins. Corp.*,
   92 F.3d 93 (2nd Cir. 1996) ............................................................. 23

*NARA v. Favish*,
   541 U.S. 157 (2004) .................................................................. 32, 34

*Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995) .......................................................... 44

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
   879 F.2d 873 (D.C. Cir. 1989) ...................................................... 33, 34

*Nat'l Inst. of Mil. Just. v. Dep't of Defense*,
   512 F.3d 677 (D.C. Cir. 2008) ......................................................... 28

*Nat'l Pub. Radio, Inc. v. FBI*,
   539 F. Supp. 3d 1 (D.D.C. 2021) ...................................................... 42

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) .............................................................. 24, 27, 28

*Oglesby v. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ................................................ 10

*OSHA Data/C.I.H., Inc. v. Dep't of Labor*,
   220 F.3d 153 (3d Cir. 2000) ................................................ 23

*People for the Am. Way Found. v. Nat'l Park Serv.*,
   503 F. Supp. 2d 284 (D.D.C. 2007) ................................................ 32

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) ................................................ 9

*Petroleum Info. Corp. v. Dep't of Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ................................................ 26, 27

*Pub. Citizen Health Rsch. Grp. v. FDA*,
   185 F.3d 898 (D.C. Cir. 1999) ................................................ 16

*Pub. Citizen Health Rsch. Grp. v. FDA*,
   704 F.2d 1280 (D.C. Cir. 1983) ................................................ 22

*Pub. Emps. for Envtl. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*,
   740 F.3d 195 (D.C. Cir. 2014) ................................................ 41

*Putnam v. Dep't of Just.*,
   873 F. Supp. 705 (D.D.C. 1995) ................................................ 36

*Reps. Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ................................................ 26

*Rockwell Int'l Corp. v. Dep't of Just.*,
   235 F.3d 598 (D.C. Cir. 2001) ................................................ 24

*Rodrequez v. U.S. Postal Serv.*,
   Civ. A. No. 90-1886, 1991 WL 212202 (D.D.C. Oct. 2, 1991) ................................................ 31

*Roth v. Dep't of Just.*,
   642 F.3d 1161 (D.C. Cir. 2011) ................................................ 44

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................ 9, 10, 35, 44

*Salas v. Office of Inspector Gen.*,
   577 F. Supp. 2d 105 (D.D.C. 2008) ................................................ 33-34

*Schaerr v. Dep't of Just.*,
    435 F. Supp. 3d 99 (D.D.C. 2020) ......................................................................... 44

*Schrecker v. Dep't of Just.*,
    349 F.3d 657 (D.C. Cir. 2003) ................................................................................ 10

*Sea Shepherd Conserv. Soc'y v. IRS*,
    89 F. Supp. 3d 81 (D.D.C. 2015) ........................................................................... 21

*Shapiro v. Dep't of Just.*,
    Civ. A. No. 12-0313 (BAH), 2020 WL 3615511 (July 2, 2020) ........................... 24

*Soghoian v. Office of Mgmt. & Budget*,
    932 F. Supp. 2d 167 (D.D.C. 2013) ................................................................... 22-23

*Spirko v. U.S. Postal Serv.*,
    147 F.3d 992 (D.C. Cir. 1998) ................................................................................ 16

*Stein v. SEC*,
    266 F. Supp. 3d 326 (D.D.C. 2017) ....................................................................... 43

*Steinberg v. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) .................................................................................. 10

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) .............................................................................. 43

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) .......................................................................... 11, 25

*Tax Analysts v. IRS*,
    294 F.3d 71 (D.C. Cir. 2002) ........................................................................... 34, 35

*Telematch, Inc. v. Dep't of Agric.*,
    No. 20-5378, --- F.4th ---, 2022 WL 3330101 (D.C. Cir. Aug. 12, 2022) ...... 33, 34

*Tokar v. Dep't of Just.*,
    304 F. Supp. 3d 81 (D.D.C. 2018) ......................................................................... 22

*Truitt v. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990) ................................................................................ 10

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ................................................................................ 10

*Weisberg v. Dep't of Just.*,
    705 F.2d 1344 (D.C. Cir. 1983) ........................................................ 9

*Weisberg v. Dep't of Just.*,
    745 F.2d 1476 (D.C. Cir. 1984) ........................................................ 10

*Williams v. Ashcroft*,
    30 F. App'x 5 (D.C. Cir. 2002) .................................................. 11, 12

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ................................................... 16, 43

**Statutes**

* 5 U.S.C. § 552 ................................. 11, 16, 17, 19, 20, 22, 24, 29, 30, 31, 34, 36, 37, 41, 42, 44

5 U.S.C. § 552a ...................................................................................... 19

I.R.C. § 6103 ................................................................................... 20, 21

I.R.C. § 6109 ........................................................................................ 21

42 U.S.C. § 1306c .......................................................................... 20, 21, 22

**Rules, Regulations, and Legislative Materials**

28 C.F.R § 16.98 ................................................................................ 19-20

28 C.F.R. § 16.98 ................................................................................... 19

45 C.F.R. § 5.52 .......................................................................... 13, 14, 15

Fed. R. Civ. P. 56 .................................................................................... 8

Fed. R. Crim. P. 6 ............................................................................. 20, 21

H.R. Rep. No. 93-876 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271 ....................... 11

Plaintiffs Neil Anand and Lesly Pompy brought this Freedom of Information Act ("FOIA") litigation against Defendants, U.S. Department of Health and Human Services ("HHS") and Drug Enforcement Administration ("DEA").   Defendants undertook appropriate efforts to search for responsive documents, provided all reasonably segregable records, and withheld only that information that is properly exempt from release under FOIA Exemptions 3, 4, 5, 6, 7(A), 7(C), 7(D), 7(E), and 7(F).  In addition, DEA properly asserted a *Glomar* response under Exemptions 6 and 7(C) for one aspect of Plaintiff Anand's DEA FOIA request, which seeks records regarding a non-party, Paul Soccio.    As explained herein, and in the attached Statement of Facts and Declarations of Robin Brooks (HHS) and Angela D. Hertel (DEA), Defendants are entitled to judgment as a matter of law.

## BACKGROUND

On June 26, 2018, a grand jury indicted Plaintiff Pompy on multiple criminal counts, including health care fraud and the distribution of controlled substances, and he is still awaiting trial.  *United States v. Pompy*, Crim. A. No. 18-20454 (E.D. Mich.); Hertel Decl. ¶ 25.  Similarly, on September 10, 2019, a grand jury indicted Plaintiff Anand on multiple criminal counts, including health care fraud and conspiracy to distribute controlled substances, and he is still awaiting trial.  *United States v. Anand*, Crim. A. No. 19-0518 (E.D. Pa.); Brooks Decl. ¶ 6.

On June 11, 2021, Plaintiffs filed the operative Complaint in this civil action (ECF No. 1). The Complaint is confusing regarding which FOIA requests are at issue,[1] which has led to considerable discussion in the parties' joint status reports.  At times, Defendants have stated that they believe that only one FOIA request (one submitted by Plaintiff Anand to HHS on April 17,

---

[1]        For instance, there was no May 11, 2021 letter.  *See* Answer (ECF No. 5) ¶ 8; Brooks Decl. ¶ 15; Hertel Decl. ¶¶ 28–30.

2021) is at issue because that is the only request referenced in the "Complaint for Declaratory and Injunctive Relief (Addendum)" (ECF No. 1 at 7–11) or that is discussed in the Complaint's exhibits (*id.* at 19–22); however, Plaintiffs' *Pro Se* Form 2 (*id.* at 1–6) also could be construed to refer to two FOIA requests separately submitted by Plaintiffs to DEA on April 17, 2021. Given Plaintiffs' *pro se* status and given that Plaintiffs did name DEA as a defendant, Defendants will address all three FOIA requests and agree to treat all three FOIA requests as at issue in the Complaint. To be clear, no FOIA request submitted more recently is part of the Complaint.

**I.      HHS's Response to Plaintiff Anand's FOIA Request.**

On April 17, 2021, HHS's Office of the Inspector General ("OIG") received a FOIA request from Plaintiff Anand (not Plaintiff Pompy) that sought the following documents: "All information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation, all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians, all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery." Anand's HHS FOIA Request (Ex. 1); Brooks Decl. ¶¶ 8–9. The Institute of Advanced Medicine and Surgery is owned by Plaintiff Anand. Indictment ¶ 2, *United States v. Anand*, Crim. A. No. 19-0518 (E.D. Pa. Sept. 10, 2019), ECF No. 1 (Ex. 6). The date range for that request is October 1, 2015, to September 25, 2019. Anand's HHS FOIA Request (Ex. 1).

Upon receiving the FOIA request, OIG concluded that the request for "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians" was too vague and did not reasonably describe the records sought. Brooks Decl. ¶ 10.

OIG reports are indexed by the subject of the investigation, not the submitter, and OIG cannot retrieve them by submitter. *Id.*

Notwithstanding that deficiency with one part of Plaintiff Anand's request, OIG continued to process those portions of the request that could be processed. *Id.* ¶¶ 10–11. OIG determined that OIG's Office of Investigations could possess responsive records regarding the remaining portions of the request. *Id.* ¶ 10. OIG therefore sent the request to the Office of Investigations to conduct a search of its law enforcement database. *Id.* ¶ 11. That database houses all investigations conducted by the Office of Investigations, including complaints as well as civil and criminal cases. *Id.* The Office of Investigations searched for records containing "Anand," the "Institute of Advanced Medicine and Surgery," "Qlarant," or "the Pill Mill Doctor Project," and it located one case file where Plaintiff Anand was a subject of investigation. *Id.*

Upon locating that case file, the Office of Investigations reviewed all the documents in the electronic case file for documents pertaining to Plaintiff Anand, the Institute of Advanced Medicine and Surgery, Qlarant, or the Pill Mill Doctor Project. *Id.* OIG also consulted with the case agents, who confirmed that they were unfamiliar with the Pill Mill Doctor Project and did not have any responsive documents from Qlarant. *Id.* ¶ 12. The case agents confirmed that a statement of work and/or contract with Qlarant, to the extent they exist, would be outside the scope of OIG's investigative work. *Id.*

On April 23, 2021, OIG denied Plaintiff Anand's request under FOIA Exemption 7(A) due to the open and ongoing investigation concerning the subject of the request. *Id.* ¶ 13. Plaintiff Anand appealed OIG's determination and then filed this action before HHS responded to his appeal. *Id.* ¶¶ 14, 16.

While this action was pending, the Centers for Medicaid and Medicare, a separate component of HHS, located the statement of work and official contract of Qlarant Corporation. *Id.* ¶ 17.  OIG released those records, with portions withheld pursuant to FOIA Exemptions 3, 4, and 6, on June 15, 2022.  *Id.*  OIG also conducted a supplemental search of its law enforcement database in June 2022 to locate any records that the initial search had excluded by using the term "the Pill Mill Doctor Project," rather than just "Pill Mill Doctor Project."  *Id.* ¶ 18.  After deleting the definite article, OIG located responsive investigative reports.  *Id.*  For the closed investigative reports, OIG released them in part after making certain withholdings pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E).  *Id.*  For the open investigative reports, OIG withheld them in full pursuant to Exemptions 5, 6, 7(A), and 7(C).  *Id.*  OIG also released 61 pages of publicly available documents from Plaintiff Anand's case file in their entirety.  *Id.*

## II.   **DEA's Response to Plaintiffs' FOIA Requests.**

Also on April 17, 2021, Plaintiffs separately submitted FOIA requests to DEA seeking (respectively) records pertaining to themselves.  Anand's DEA FOIA Request (Ex. A); Pompy's DEA FOIA Request (Ex. F); Hertel Decl. ¶¶ 8, 18.  Those requests, and the DEA's responses thereto, are addressed in turn.

### A.   **DEA's Response to Plaintiff Anand's FOIA Request.**

On April 17, 2021, Plaintiff Anand requested "all [DEA] documents concerning Neil Anand, Institute of Advanced Medicine and Surgery, Anand Medical Investment, [and] Paul Soccio."  Anand's DEA FOIA Request (Ex. A) at 1; Hertel Decl. ¶ 8.  Paul Soccio is Plaintiff Anand's former business partner, and the two individuals appear to have a contentious relationship.  *See Anand v. Indep. Blue Cross*, Civ. A. No. 20-6243, 2021 WL 3128690, at *2 (E.D. Pa. July 23, 2021) (recounting Plaintiff Anand's allegations against Mr. Soccio), *aff'd in part*, No. 21-2679,

2022 WL 2339476 (3d Cir. June 29, 2022); *see generally Soccio v. Anand*, No. 201606395 (Bucks

Cnty., Pa. Com. Pl.).  Institute of Advanced Medicine and Surgery and Anand Medical Investment

are both owned by Plaintiff Anand.  Indictment ¶ 2, *United States v. Anand*, Crim. A. No. 19-0518

(E.D. Pa. Sept. 10, 2019), ECF No. 1 (Ex. 6).

Pursuant to its law enforcement mission, all DEA criminal law enforcement investigative

records are maintained as part of the DEA Investigative Reporting and Filing System ("IRFS").

Hertel Decl. ¶ 6.   IRFS is a DEA Privacy Act System of Records that accounts for all

administrative, general, and criminal investigative records compiled by DEA for law enforcement

purposes across all DEA offices worldwide, including records maintained at DEA field offices.

*Id.*  This includes any records related to an individual's involvement in, or association with, a DEA

intelligence operation or civil, criminal, or regulatory investigation.  *Id.*  DEA locates records that

are maintained as part of IRFS using the DEA Narcotics and Dangerous Drugs Information System

("NADDIS").  *Id.* ¶ 7.  NADDIS is a centralized electronic data index system that captures discrete

data points about a person or entity collected during a DEA investigation and maintained as part

of a DEA record.  *Id.*  Utilizing NADDIS to conduct an initial query as to whether records exist as

part of IRFS is the practical means by which DEA identifies, and then locates, investigative records

across any DEA office worldwide.  *Id.*  A NADDIS search is a worldwide, comprehensive search

because all DEA intelligence and investigative records are indexed into NADDIS for purposes of

being maintained as part of IRFS.  *Id.*

In order to locate all investigative records about Plaintiff Anand, DEA searched IRFS by

querying NADDIS using the term "Neil Anand."  *Id.* ¶ 14.  The search resulted in the identification

of three investigative case numbers.  *Id.*  Plaintiff Anand, however, is the subject of a pending

federal criminal proceeding involving health care fraud and conspiracy to distribute controlled

substances in violation of the Controlled Substances Act.  *Id.*; *see generally United States v. Anand*, Crim. A. No. 19-0518 (E.D. Pa.).  Because of this still-pending criminal law enforcement proceeding, DEA withheld in full all responsive records pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption 7(A), as well as asserted FOIA Exemptions 5, 6, 7(C), 7(D), 7(E), and 7(F) for certain information within the records.  Hertel Decl. ¶ 14.

In order to locate all investigative records about Plaintiff Anand's companies—Institute of Advanced Medicine and Anand Medical Investment—DEA searched IRFS by querying NADDIS, first using the term "Institute of Advanced Medicine and Surgery" and then separately using the term "Anand Medical Investment."  *Id.* ¶ 15.  Each search resulted in a "no results found" response in NADDIS.  *Id.*  Therefore, DEA located no records responsive to this request.  *Id.*

For investigative records about Mr. Soccio, DEA did not conduct a search because it is DEA standard practice to deny the request for investigative records about a third party, neither affirming nor denying the existence of records.  *Id.* ¶ 16.  DEA thus issued a *Glomar* response pursuant to FOIA Exemptions 6 and 7(C), as there is no evidence of Mr. Soccio's death or authorization for Plaintiff Anand to receive any such records (to the extent they may exist), nor has there been an official acknowledgement of such an investigation.  *Id.*

**B.     DEA's Response to Plaintiff Pompy's FOIA Request.**

On April 17, 2021, Plaintiff Pompy requested "DEA Administrative audit done on 9/26/2016 at 730 N. Macomb St, Monroe Michigan 48162[;] DEA investigation of Lesly Pompy regarding DEA and X-DEA registration[;] [i]nvestigation of investigation involving DEA registration BP 2527058, FP 2665478[;] [and] contractual relationship, statement of works between Blue Cross Blue Shield of Michigan Mutual Insurance C[o]mpany and the DEA."  Pompy's FOIA Request to DEA (Ex. F) at 1; Hertel Decl. ¶ 18.  The address that he provided—

730 N. Macomb St, Monroe, MI—is an address associated with Plaintiff Pompy in NADDIS. Hertel Decl. ¶ 24 n.3.   Likewise, "DEA registration BP2527058 and FP2665478" are also associated with Plaintiff Pompy in NADDIS.   *Id.*   Thus, Plaintiff Pompy's request is for investigative records about himself and any contract or statement of work between DEA and Blue Cross Blue Shield of Michigan Mutual Insurance Company.   *Id.* ¶ 24.

In order to locate all investigative records about Plaintiff Pompy, DEA searched IRFS by querying NADDIS using the term "Lesly Pompy."   *Id.* ¶ 25.   The search resulted in the identification of active investigative cases.   *Id.*   Additionally, Plaintiff Pompy is the subject of a pending federal criminal proceeding involving the distribution of controlled substances in violation of the Controlled Substances Act and health care fraud. *Id.*; *see generally United States v. Pompy*, Crim. A. No. 18-20454 (E.D. Mich.).   Because of the active investigations and pending criminal law enforcement proceeding, DEA withheld in full all responsive records pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption 7(A), and also asserted FOIA Exemptions 5, 6, 7(C), 7(D), 7(E), and 7(F) for certain information within the records.   Hertel Decl. ¶ 25.

In order to locate all contracts or statements of work between DEA and Blue Cross Blue Shield of Michigan Mutual Insurance Company, DEA's Office of Acquisition & Relocation conducted a search of its records.   *Id.* ¶ 26.   DEA determined that this Office would have all responsive records because it is responsible for planning, developing, and managing DEA acquisition activities worldwide.   *Id.*   This includes the overall planning, solicitation, evaluation, award, administration, and close out of contracts and purchase orders.   *Id.*   That Office searched its acquisition database using the terms "Blue Cross," "Blue," "BCBS," "Michigan," "Mutual," and "Insurance" and located no records or any information to indicate any contract between DEA and this entity.   *Id.*

                                    *        *        *

    With both Defendants having now made their final determinations, Defendants move for

summary judgment.

                              **LEGAL STANDARDS**

    Summary judgment is appropriate when the pleadings and evidence "show[] that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Anderson v. Lib. Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp.

v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the party moving for summary judgment

to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  A

genuine issue is one that "might affect the outcome of the suit under the governing law."  *Lib.

Lobby*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not

rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts

showing that there is a genuine issue for trial." *Id.*

    "[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v.

Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of

Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are

decided on motions for summary judgment.") (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623

F. Supp. 2d 83, 87 (D.D.C. 2009)).  A government agency may obtain summary judgment in a

FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*,

697 F.2d 1095, 1102 (D.C. Cir. 1983).  "[T]he Court may award summary judgment solely on the

basis of information provided by the department or agency in declarations when the declarations

describe 'the documents and the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are

                                          8

not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"
*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Agency declarations receive "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).  Upon determining that an agency has released all non-exempt material, the Court has no further judicial function to perform, and the claim is moot.  *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

### I.   Defendants Performed Reasonable Searches.

#### A.   Applicable Standards.

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents."  *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  A search is not inadequate merely because it failed to "uncover[] every document extant."  *SafeCard*, 926 F.2d at 1201; *see also Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured").  An agency may search for responsive records in the way its records systems are indexed.  *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Where an appropriately detailed agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith.  *Defs. of Wildlife v. Dep't of*

*Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).   "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).   FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a particular place.   *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996).   Nor does FOIA require an agency search every record system. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search."   *Defs. of Wildlife*, 623 F. Supp. 2d at 91.   However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."   *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).   The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micro manage the executive branch."   *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents."   *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard*, 926 F.2d at 1200); *accord Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) (a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search [for them]").

Moreover, in responding to a FOIA request, an agency looks to the "reasonabl[e] descri[ption]" of the records sought.   5 U.S.C. § 552(a)(3)(A).   That is, a professional agency employee familiar with the subject area must, in light of the FOIA request framed by the requestor, be able to locate the requested records with a "reasonable amount of effort."   H.R. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271.   The agency must be able to determine "precisely" which records are being requested.   *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (citation and internal quotation marks omitted).   The agency then is obligated to perform a "reasonable" search in response to the request framed by the requestor.   *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).   An agency, however, is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents."   *Kowalczyk*, 73 F.3d at 389; *see also Williams v. Ashcroft*, 30 F. App'x 5, 6 (D.C. Cir. 2002) (agency need not look for records not sought in initial FOIA request).

### B.     HHS's Searches Were Reasonable and Legally Sufficient.

HHS conducted a reasonable and legally sufficient search for records responsive to Plaintiff Anand's FOIA request.   Plaintiff Anand's request sought: "All information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation, all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians, all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery."   Anand's HHS FOIA Request (Ex. 1); Brooks Decl. ¶ 8.

OIG's Office of Investigations has a law enforcement database, which houses records for all investigations conducted by that Office, including complaints as well as documents related to

civil and criminal cases.  Brooks Decl. ¶ 11.  The Office of Investigations searched that database and located the case file where Plaintiff Anand was the subject of investigation.  *Id.*  The Office reviewed every document contained in that case file and identified those documents pertaining to Plaintiff Anand, the Institute of Advanced Medicine and Surgery, or the Pill Mill Doctor Project. *Id.* ¶¶ 11, 18.

OIG also conducted a supplemental search of its law enforcement database in June 2022 to locate any records regarding the "Pill Mill Doctor Project."  *Id.* ¶ 18.  OIG located closed investigative reports comprising 774 pages.  OIG released the reports to Plaintiff on July 31, 2022, with portions ultimately withheld pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E).  *Id.*  OIG also located and fully withheld two reports totaling 74 pages pursuant to Exemptions 5, 6, 7(A), and 7(C) as those reports pertain to open and ongoing investigations.  *Id.*

In addition, CMS located the statement of work and official contract of Qlarant Corporation, which OIG produced subject to certain withholdings.  *Id.* ¶ 17.

Because OIG reports are indexed by the subject of the investigation, not submitter, OIG cannot retrieve all reports from Blue Cross Blue Shield Corporation to OIG concerning improper prescribing of opiates by specific physicians.  *Id.* ¶ 10.  Plaintiff Anand's request would effectively require HHS to review every single case file and identify whether any reports from Blue Cross Blue Shield Corporation exist within that case file.  *See id.*  FOIA does not require HHS to search every case file to identify whether any reports from Blue Cross Blue Shield Corporation exist therein.  *See Elec. Priv. Info. Ctr. v. DEA*, 192 F. Supp. 3d 92, 102 (D.D.C. 2016) ("An agency is not obligated to search every record system.") (citing *Meeropol*, 790 F.2d at 952–53); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) ("[A]n agency need not conduct research in response to a FOIA request.").  Indeed, Plaintiff Anand's request is effectively an

interrogatory disguised as a document request, seeking to have HHS identify the list of cases in which Blue Cross Blue Shield Corporation provided reports.  FOIA does not require HHS to answer an interrogatory.  *See Landmark*, 272 F. Supp. 2d at 64 ("[A]n agency is not required to 'answer questions disguised as a FOIA request.'") (quoting *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985)).[2]  In sum, HHS performed a reasonable search.

### C.   DEA's Searches for Plaintiff Anand's Request Were Reasonable and Legally Sufficient.

DEA conducted a reasonable and legally sufficient search for records responsive to Plaintiff Anand's FOIA request.  Plaintiff Anand requested "all [DEA] documents concerning Neil Anand, Institute of Advanced Medicine and Surgery, Anand Medical Investment, [and] Paul Soccio."  Anand's DEA FOIA Request (Ex. A) at 1; Hertel Decl. ¶ 8.

In order to locate all investigative records about Plaintiff Anand, DEA searched its centralized electronic data index system using the term "Neil Anand."  *Id.* ¶ 14.  The search resulted in the identification of three investigative case numbers.  *Id.*  Plaintiff Anand, however, is the subject of a pending federal criminal proceeding involving health care fraud and conspiracy to distribute controlled substances in violation of the Controlled Substances Act.  *Id.*; *see generally United States v. Anand*, Crim. A. No. 19-0518 (E.D. Pa.).  Because of this still-pending criminal law enforcement proceeding, DEA withheld in full all responsive records pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption 7(A), and also asserted FOIA Exemptions 5, 6, 7(C), 7(D), 7(E), and 7(F) for certain information within the records.  Hertel Decl. ¶ 14.

In order to locate all investigative records about Plaintiff Anand's companies—Institute of Advanced Medicine and Anand Medical Investment—DEA searched that same centralized

---

[2]     If HHS were required to search and dissect every case file to look for any reports, Plaintiff Anand would need to comply with HHS's fee schedule and pay substantial fees.  *See generally* 45 C.F.R. § 5.52.

electronic data index system, using the terms "Institute of Advanced Medicine and Surgery" and "Anand Medical Investment." *Id.* ¶ 15. Each search resulted in a "no results found" response. *Id.* Therefore, DEA located no records responsive to this request. *Id.* As DEA searched using the terms Plaintiff Anand provided, its search was reasonably constructed to locate responsive records.

For investigative records about Mr. Soccio, DEA did not conduct a search because it is DEA standard practice to deny the request for investigative records about a third party, neither affirming nor denying the existence of records. *Id.* ¶ 16. DEA thus issued a *Glomar* response pursuant to FOIA Exemptions 6 and 7(C). *Id.*; *supra* at 6 (given evidence neither of Soccio's death or authorization for Anand to receive any such records (if they exist), nor acknowledgement of such an investigation, any such records were withheld). In sum, DEA's search was reasonable.

**D.    DEA's Searches for Plaintiff Pompy's Request Were Reasonable and Legally Sufficient.**

DEA conducted a reasonable and legally sufficient search for records responsive to Plaintiff Pompy's FOIA request. Plaintiff Pompy requested "DEA Administrative audit done on 9/26/2016 at 730 N. Macomb St, Monroe Michigan 48162[;] DEA investigation of Lesly Pompy regarding DEA and X-DEA registration[;] [i]nvestigation of investigation involving DEA registration BP 2527058, FP 2665478[;] [and] contractual relationship, statement of works between Blue Cross Blue Shield of Michigan Mutual Insurance C[o]mpany and the DEA." Pompy's FOIA Request to DEA (Ex. F) at 1; Hertel Decl. ¶ 18. DEA confirmed that 730 N. Macomb Street is an address associated with Plaintiff Pompy in DEA's centralized electronic data index system, and the two registration numbers are likewise associated with Plaintiff Pompy in that index system. Hertel Decl. ¶ 24 n.3.

In order to locate all investigative records about Plaintiff Pompy, DEA searched its index system, using the term "Lesly Pompy." *Id.* ¶ 25. The search resulted in the identification of active

investigative cases.  *Id.*  Additionally, Plaintiff Pompy is the subject of a pending federal criminal proceeding involving the distribution of controlled substances in violation of the Controlled Substances Act and health care fraud. *Id.*; *see generally United States v. Pompy*, Crim. A. No. 18-20454 (E.D. Mich.).  Because of the active investigations and pending criminal law enforcement proceeding, DEA withheld in full all responsive records pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption 7(A), as well as asserted FOIA Exemptions 5, 6, 7(C), 7(D), 7(E), and 7(F) for certain information within the records.  Hertel Decl. ¶ 25.

In order to locate all contracts or statements of work between DEA and Blue Cross Blue Shield of Michigan Mutual Insurance Company, DEA's Office of Acquisition & Relocation conducted a search of its records.  *Id.* ¶ 26.  DEA determined that that Office would have all responsive records because it is responsible for planning, developing, and managing DEA acquisition activities worldwide.  *Id.*  That includes the overall planning, solicitation, evaluation, award, administration, and close out of contracts and purchase orders.  *Id.*  That Office searched its acquisition database using the terms "Blue Cross," "Blue," "BCBS," "Michigan," "Mutual," and "Insurance" and located no records or any information to indicate any contract between DEA and that entity.  *Id.*  This search was reasonably calculated to uncover all potentially responsive records, and DEA has averred that all files likely to contain relevant documents were searched.  *Id.* ¶ 27.  Accordingly, DEA has performed a reasonable search.

## II.    **Defendants Properly Applied FOIA Exemptions to the Records.**

FOIA does not allow the public to have unfettered access to government files.  *McCutchen v. HHS*, 30 F.3d 183, 184 (D.C. Cir. 1994).  Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements.  *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994).   FOIA requires that an agency release all records

responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions.   5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989).   To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions.   *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).   "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"   *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

Although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"   *CREW*, 478 F. Supp. 2d at 80 (quoting *Mil. Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994)).

In particular, when an agency invokes Exemption 7(A), as is the case here for the three FOIA requests at issue, a "*Vaughn* index would have served no purpose since . . . Exemption 7(A), which excludes from required disclosure 'investigatory records . . . to the extent that the production of such records would . . . interfere with enforcement proceedings,' 5 U.S.C. § 552(b)(7)(A), d[oes] not require a showing that each individual document would produce such interference, but could rather be applied generically, to classes of records such as witness statements." *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986) (alterations in original); *see also Agrama v. IRS*, 272 F. Supp. 3d 42, 49 (D.D.C. 2017) ("While Mr. Agrama calls for further detailed

descriptions of the documents as well as a *Vaughn* Index, such detailed descriptions of withheld documents are not required under Exemption 7(A)[.]").

As shown in the attached declarations, Defendants properly and judiciously applied FOIA Exemptions 3, 4, 5, 6, 7(A), 7(C), 7(D), 7(E), and 7(F).   Each of these exemptions and the bases for their application are described below.

### A.    Defendants' Withholdings Pursuant to Exemption 7(A) Are Appropriate.

To justify the withholding of information under Exemption 7(A), an agency must demonstrate that disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.  *CREW v. Dep't of Just.*, 746 F.3d 1082, 1096 (D.C. Cir. 2014); *see also* 5 U.S.C. § 552(b)(7)(A).   "[A]n ongoing criminal investigation typically triggers Exemption 7(A): '[S]o long as [an] investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.'"  *CREW*, 746 F.3d at 1098 (quoting *Juarez v. Dep't of Just.*, 518 F.3d 54, 59 (D.C. Cir. 2008)).

Here, Plaintiffs are both subject to ongoing criminal investigations, which have not yet been resolved.  *United States v. Anand*, Crim. A. No. 19-0518 (E.D. Pa.) (Anand's mot. to dismiss indictment denied Aug. 15, 2022); *United States v. Pompy*, Crim. A. No. 18-20454 (E.D. Mich.) (jury trial as to Pompy set for Nov. 22, 2022); Brooks Decl. ¶ 6; Hertel Decl. ¶¶ 14, 25.  Defendants determined that disclosure of all records pertaining to Plaintiffs' investigations could reasonably be expected to interfere with Plaintiffs' criminal proceedings.  Brooks Decl. ¶ 28; Hertel Decl. ¶ 40.   In particular, "[d]isclosures concerning the details of the investigation risk witness intimidation and the possible silencing of other information sources," as well as "the concealment of damaging evidence and the fabrication of false evidence."  Brooks Decl. ¶ 28; *see also* Hertel

Decl. ¶ 40.   Accordingly, Defendants properly applied Exemption 7(A) to withhold responsive records pertaining to Plaintiffs' investigations.

Additionally, HHS properly applied Exemption 7(A) to withhold responsive records pertaining to certain investigative reports that contained the term "Pill Mill Drug Project" and that are open and ongoing.[3]   Brooks Decl. ¶ 18.   As is the case with the investigation into Plaintiffs, premature disclosure of investigative reports for ongoing investigations is reasonably expected to interfere with pending proceedings, as it would disclose: "evidence; witness information; prospective testimony; identification of the evidence likely to be relied upon by the government; the activity under continuing investigation during the litigation; the direction of the government so far; government strategy; the presence or absence of whistleblowers or other undisclosed sources; the scope and limits of the government's investigation; and attorney work product; along with other confidential information." *Id.* ¶ 28.

Because Exemption 7(A) applies to shield any records regarding the open investigations of Plaintiffs (or the persons subject to the open investigative reports described in the preceding paragraph), this Court need go no further when assessing the additional exemptions Defendants have invoked for these records.   Nevertheless, to avoid waiver of any other exemptions and because Defendants do not urge Exemption 7(A) for records not pertaining to open investigations,[4] Defendants provide further information below regarding additional reasons why various records are subject to other exemptions, as well.   *See Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d

---

[3]      If these investigations close during the pendency of this case, HHS would assert Exemptions 3, 6, 7(C), and 7(E), as it has for the closed investigative reports containing the term "Pill Mill Drug Project."   *See* Brooks Decl. ¶¶ 24–27.

[4]      Specifically, HHS does not invoke Exemption 7(A) for the Qlarant statement of work and contract (redactions made per Exemptions 3, 4, and 6) and for the closed OIG reports (redactions made per Exemptions 3, 6, 7(C), and 7(E)).   Brooks Decl. ¶¶ 20, 24.   DEA invokes a *Glomar* response for Plaintiff Anand's request regarding Paul Soccio.   Hertel Decl. ¶ 42.

918, 925 (D.C. Cir. 2003) ("Finding the [withholdings] protected under 7(A), we need not address the other exemptions invoked by the government and reserve judgment on whether they too would support withholding[.]").

**B.      DEA's Withholdings Pursuant to 5 U.S.C. § 552a(j) Are Appropriate.**

The Privacy Act permits the head of an agency to promulgate rules to exempt any system of records within the agency from an individual right of access if the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . and which consists of information compiled for the purpose of" a criminal investigation. 5 U.S.C. § 552a(j)(2)(B). A Department of Justice regulation exempts information that is maintained as part of IRFS from the access provision of the Privacy Act (5 U.S.C. § 552a(d)), as authorized by 5 U.S.C. § 552a(j)(2). 28 C.F.R. § 16.98(i). Thus, an individual who is the subject of an investigative case maintained as part of IRFS does not have an individual right of access to their investigative records under the Privacy Act. *Id.*; *see also* Hertel Decl. ¶ 28.

Plaintiffs both requested from DEA investigative records about themselves. Hertel Decl. ¶ 32. Investigative records are subject to the Privacy Act and are maintained as part of IRFS. *Id.*; *see also Djenasevic v. Exec. Office for U.S. Attorneys*, 319 F. Supp. 3d 474, 484 (D.D.C. 2018) ("DEA has exempted pursuant to Exemption (j)(2) investigative case files maintained in its Investigative Reporting and Filing System from access. *See* 28 C.F.R. § 16.98(i). As already discussed, the plaintiff's request for access under the Privacy Act pertain to the criminal investigations in his case. The Court agrees, therefore, that the documents were compiled for law enforcement purposes and are exempt from disclosure under the Privacy Act."), *aff'd*, No. 18-5262, 2019 WL 5390964 (D.C. Cir. Oct. 3, 2019) (per curiam). Thus, pursuant to 28 C.F.R

§ 16.98(i), Plaintiffs do not have an individual right of access to any records maintained as part of IRFS.  Hertel Decl. ¶¶ 31–32.

C. **HHS's Withholdings Pursuant to Exemption 3 Are Appropriate.**

FOIA Exemption 3 exempts from disclosure information that is specifically exempted from disclosure by statute.  5 U.S.C. § 552 (b)(3).   Here, HHS is applying this exemption in conjunction with Federal Rule of Criminal Procedure 6(e), I.R.C. § 6103, and 42 U.S.C. § 1306c.  Brooks Decl. ¶¶ 21, 25, 29.   DEA has not applied this exemption, as it did not have similar records in its possession.  *See generally* Hertel Decl.

Rule 6(e).   Congress affirmatively enacted Rule 6(e) in such a way as to qualify it as a provision under which an agency may claim Exemption 3 withholdings.  *Labow v. Dep't of Just.*, 278 F. Supp. 3d 431, 442 (D.D.C. 2017).  The law of this Circuit has long settled that "the rule's ban on disclosure is for FOIA purposes absolute" because the Rule satisfies the first of the two subparts of the FOIA that allow for such withholdings.  *Fund for Const'l Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981) ("[Rule 6(e)] makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule.  It further sets forth in precise terms to whom, under what circumstances and on what conditions grand jury information may be disclosed.").   Any disclosure to persons outside of the government may be made only pursuant to a court order.  Fed. R. Crim. P. 6(e)(3)(C).  In other words, Rule 6(e) requires that grand jury matters "be withheld from the public in such a manner as to leave no discretion." 5 U.S.C. § 552(b)(3)(A)(i); *Borda v. Dep't of Just.*, 306 F. Supp. 3d 306, 317 (D.D.C. 2018).

Here, HHS withheld grand jury material contained within the casefile to protect both the substance of what was said to the grand jury and any references to any particular witnesses who testified before the grand jury.  Brooks Decl. ¶ 30.  HHS protected the questions and answers to

and from witnesses, as well as the surveillance reports and notes.  *Id.*  Disclosing these records risks leading to witness tampering and the destruction of evidence and would reveal protected grand jury procedures.  *Id.*  This is quintessential Rule 6(e) material that must not be disclosed. *See Fund for Const'l Gov't*, 656 F.2d at 868.  Accordingly, HHS properly invoked Exemption 3 for this material.

I.R.C. §§ 6103.  Section 6103 of the Internal Revenue Code is a qualifying statute under FOIA Exemption 3.  *See Castro v. IRS*, Civ. A. No. 20-1843 (CKK), 2022 WL 1085245, at *11 (D.D.C. Mar. 22, 2022) ("That [section] 6103 is the sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond dispute.") (quoting *Sea Shepherd Conserv. Soc'y v. IRS*, 89 F. Supp. 3d 81, 98 (D.D.C. 2015)).  HHS is withholding only Taxpayer Identification Numbers from disclosure under this prong of Exemption 3.  Brooks Decl. ¶¶ 21, 25.  This withholding is in connection with the disclosure of the Qlarant statement of work and contract and closed OIG reports, for which HHS does not invoke Exemption 7(A).  *Id.*

The Taxpayer Identification Number is defined as one of the materials protected from disclosure by I.R.C. § 6103.  *See, e.g.*, I.R.C. § 6103(a) (prohibiting disclosure of "return or return information"); I.R.C. § 6109(f)(3) (prohibiting disclosure of employer identification numbers); *Leonard v. Dep't of Treasury*, 590 F. App'x 141, 144 (3d Cir. 2014) ("Nor did [Plaintiff] allege or present any evidence showing that the third parties had consented to having their taxpayer identification numbers disclosed to him.  In light of that, the District Court did not err in upholding the IRS's refusal to release the redacted information pursuant to Exemption 3.").  Accordingly, HHS properly invoked Exemption 3 for this material.

42 U.S.C. § 1306c.  Section 1306c prohibits the disclosure of any "information contained on the Death Master File with respect to any deceased individual at any time during the 3-calendar-

year period beginning on the date of the individual's death, unless [the person to whom the disclosure is being made] is certified under" a Department of Commerce program.  42 U.S.C. § 1306c(a).  The "Death Master File" includes social security numbers of deceased individuals.  *Id.* § 1306c(d).  Congress explicitly included in the statutory text language dictating that the statute is a qualifying statute under Exemption 3.  *Id.* § 1306c(e).  Here, in connection with a closed OIG report, for which HHS does not invoke Exemption 7(A), HHS is withholding the Social Security Number of a deceased individual pursuant to this statute.  Brooks Decl. ¶ 25.  Accordingly, HHS properly invoked Exemption 3 for this material.

    **D.    HHS's Withholdings Pursuant to Exemption 4 Are Appropriate.**

    Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  HHS asserts Exemption 4 to contract amounts, including Total Estimated Cost, Total Award Fee, Costs, Base Fees, Award Fees, Billing Rate, and Indirect Cost Ceiling Rate, in the Qlarant statement of work or contract.  Brooks Decl. ¶ 22.

    Exemption 4 is intended to protect the interests of both the government and submitters of information.  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019).  The exemption covers two distinct categories of information in federal agency records: (1) trade secrets; and (2) information that is (a) commercial or financial, and (b) obtained from a person, and (c) privileged or confidential.  *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  The courts in this Circuit have long held that "commercial or financial information" are broad terms to be given their "ordinary meanings" and protected so long as the submitter of the information has a "commercial interest" in them.  *Id.*; *see also Tokar v. Dep't of Just.*, 304 F. Supp. 3d 81, 94 n.3 (D.D.C. 2018); *Soghoian v. Office of Mgmt. & Budget*, 932 F.

Supp. 2d 167, 174–75 (D.D.C. 2013).  Courts have further held that the "commercial or financial information" may be in regard to a business, corporation, or single person.  *Nadler v. Fed. Deposit Ins. Corp.*, 92 F.3d 93, 95 (2nd Cir. 1996); *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 15 (D.D.C. 2004) (information regarding an individual's separation from employment).

Government summaries or reformulations of commercial or financial information supplied by a source outside the government are also protected.  *Gulf & W. Indus. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir. 1979) (contractor information contained in agency audit report); *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 63 (D.D.C. 2015) (holding that identities of corporations were "obtained from a person," even when those names appeared in wholly intra-agency emails, because corporations' names "originated with the corporations which provided their identities to [the government] in order to participate in the program"); *see also OSHA Data/C.I.H., Inc. v. Dep't of Labor*, 220 F.3d 153, 162 n.23 (3d Cir. 2000) (ratio calculated by agency, but based upon "individual components" supplied by private-sector employers).

Just as "commercial or financial information" are to be given their "ordinary meanings" in a broad sense, so too is the "confidential" requirement.  *Food Mktg.*, 139 S. Ct. at 2362.  The Supreme Court has explained that the ordinary meaning of the term is that the information is "private" or "secret," and it suggested two conditions that indicate that information is "confidential."  *Id.* at 2363.  First, "information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it."  *Id.* This condition is mandatory, and it applies whether the information was provided to a government agency, voluntarily or otherwise.  *Id.*  Second, "information might be considered confidential only if the party receiving it provides some assurance that it will remain secret."  *Id.*  The Court did not "need to resolve" whether the second condition was necessary in every case, but Courts in this

jurisdiction that have since addressed the issue have held that this prong is at least relevant to determining whether commercial information is "confidential." *Shapiro v. Dep't of Just.*, Civ. A. No. 12-0313 (BAH), 2020 WL 3615511, at *26 (July 2, 2020); *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 109 (D.D.C. 2019).

Here, the contract amounts are commercial or financial information obtained from a nonparty that is intended to be confidential. Brooks Decl. ¶ 22. The bid amounts incorporated into the contract are commercial information that bidders submit to HHS but that are otherwise kept confidential. *Id.* Accordingly, HHS has properly invoked Exemption 4 to shield this information from disclosure.

### E.      Defendants' Withholdings Pursuant to Exemption 5 Are Appropriate.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001).

Defendants' Exemption 5 withholdings are fully encompassed by Defendants' Exemption 7(A) withholdings. Brooks Decl. ¶¶ 28, 32–33, 37, 39–40, 44–45; Hertel Decl. ¶¶ 34–35. Given that Defendants have properly invoked Exemption 7(A) for these records, the Court need not rule on Defendants' Exemption 5 claims at this time. *See Ctr. for Nat'l Sec. Studies*, 331 F.3d at 925 ("Finding the [withholdings] protected under 7(A), we need not address the other exemptions invoked by the government and reserve judgment on whether they too would support

withholding[.]").   Defendants' Exemption 5 withholdings invoke the attorney-client and deliberative-process privileges.  Brooks Decl. ¶¶ 32–33, 37, 39–40, 44–45; Hertel Decl. ¶ 35.

### 1.    *Defendants' Withholdings Invoking the Attorney-Client Privilege.*

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).   This privilege protects "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'"  *Tax Analysts*, 117 F.3d at 618 (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).   Courts may infer confidentiality where communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *see also Tax Analysts*, 117 F.3d at 618 ("In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer.").   The privilege "protects only those disclosures necessary to obtain informed legal advice which  might not have been made absent the privilege."  *Fisher v. United States*, 425 U.S. 391, 403 (1976).

Here, Defendants are withholding attorney-client communications reflecting legal advice from the Department of Justice and agency counsel regarding the legal theories and litigation strategy of the case against Plaintiffs, the disclosure of which would handicap the government's ability to prosecute him.  Brooks Decl. ¶ 45; Hertel Decl. ¶ 35.  The communications between Defendants and Department of Justice attorneys were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship, and were made for the purpose of securing or providing legal assistance or advice in relation to the case against Plaintiffs.  *See, e.g.*, Brooks Decl. ¶ 45; Hertel Decl. ¶ 35.

Release of this information would cause harm to Defendants.  *See, e.g.*, Brooks Decl. ¶ 45; Hertel Decl. ¶ 35.   For example, it could call into question Defendants' commitment to withhold confidential information shared between agency clients and attorneys, or potentially dissuade parties from fully sharing information required for attorneys to provide the best possible legal representation for their clients.    Brooks Decl. ¶ 45.  Furthermore, it would provide an advantage to individuals seeking legal action against the government or those targeted for prosecution by the government, because disclosure would allow access to information related to the government's potential legal strategies.  *Id.*   Accordingly, Defendants properly withheld these privileged communications pursuant to Exemption 5.

> 2.    *Defendants' Withholdings Invoking the Deliberative Process Privilege.*

The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative."  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).   The D.C. Circuit has held:

> A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made.  Material is deliberative if it reflects the give-and-take of the consultative process.  Our recent decisions on the deliberativeness inquiry have focused on whether disclosure of the requested material would tend to discourage candid discussion within an agency.

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).  "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'"  *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States*, 617 F.2d at 866).

The deliberative process privilege protects materials that would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citation omitted). This privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021). The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears*, 421 U.S. at 151–53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petroleum Info.*, 976 F.2d at 1433–34 (internal quotations omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

First, HHS asserts Exemption 5 as to the HHS-OIG agent notes on witness statements, which meet the requirements of being inter- or intra-agency, deliberative, and predecisional. Brooks Decl. ¶ 33.  HHS has not shared these notes outside the federal government, and the notes represent the thoughts and impressions of the HHS-OIG agents as they built their case against Plaintiff Anand.  *Id.*  Releasing these notes would reveal aspects of the government's strategy in its case against Plaintiff Anand and would impede the government's ability to prosecute him.  *Id.*

Second, HHS asserts Exemption 5 as to communications with Qlarant and as to Qlarant's analysis of claims data.  *Id.* ¶ 37.  Qlarant served as a consultant to HHS, *id.*, which satisfies the inter-agency threshold of Exemption 5.  *See, e.g.*, *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 336–39 (D.C. Cir. 2011) (using the consultant corollary to conclude that the "withheld material constitutes 'intra-agency memorandums or letters' under FOIA Exemption 5"); *Nat'l Inst. of Mil. Just. v. Dep't of Defense*, 512 F.3d 677, 680-82 (D.C. Cir. 2008) (using the consultant corollary to find that documents withheld under Exemption 5 were "intra-agency" documents); *100Reporters LLC v. Dep't of Just.*, 248 F. Supp. 3d 115, 149 (D.D.C. 2017) (explaining that, because the third-party with whom the relevant records were shared exercised independent judgment, "the consultant corollary applies and the [ ] documents are intra-agency documents within the meaning of Exemption 5").  Qlarant analyzed Medicare and Medicaid claims information to look for trends in billing information and to determine outlier providers that were potentially overbilling.  Brooks Decl. ¶ 37.  This analysis and associated communications are part of OIG's deliberations in deciding how best to use its resources to root out waste, fraud, and abuse. *Id.*  Revealing this analysis would reveal aspects of the government's strategy in its case against Plaintiff Anand and others and would impede the government's ability to prosecute individuals who defraud the government.  *Id.*

Third, HHS asserts Exemption 5 as to deliberative and predecisional communications with the Department of Justice and within OIG regarding the results of surveillance reports, bank records, and information gleaned from consensual monitoring. *Id.* ¶ 40. These communications reflect the analytical stage of an investigation that precedes a decision to charge an individual with a crime. *Id.* They reflect deliberations as to the importance and persuasiveness of individual pieces of evidence, the release of which would handicap the government's ability to present its case against Plaintiff Anand at trial. *Id.*

Lastly, Defendants assert Exemption 5 as to deliberative and predecisional communications with the Department of Justice and internally regarding Plaintiffs' cases. *Id.* ¶ 45; Hertel Decl. ¶ 35. These communications reflect the analytical stage of an investigation that precedes a decision to charge an individual with a crime. Brooks Decl. ¶ 45; Hertel Decl. ¶ 35. They reflect deliberations as to the import and persuasiveness of individual pieces of evidence, the release of which would handicap the government's ability to present its case against Plaintiff Anand at trial. Brooks Decl. ¶ 45; Hertel Decl. ¶ 35. This category also contains attorney-client communications reflecting legal advice from the Department of Justice and agency counsel regarding the legal theories and litigation strategy of the case against Mr. Anand, which would similarly handicap the government's ability to prosecute. Brooks Decl. ¶ 45; Hertel Decl. ¶ 35.

### 3.    *Defendants Performed a Foreseeable Harm Analysis.*

In applying these deliberative process privilege withholdings, Defendants conducted a foreseeable harm analysis for each category of records and segregated non-deliberative facts, to the extent required, withholding such material only when it found it was inextricably intertwined with agency deliberations.    5 U.S.C. § 552(a)(8)(A)(i)(I); *see, e.g.*, Brooks Decl. ¶¶ 33, 37, 40, 45; Hertel Decl. ¶ 35.    These documents withheld pursuant to Exemption 5 as part of the

deliberative process privilege reflect pre-decisional and deliberative versions of Defendants' work products, and they show the internal development of the final positions taken by Defendants' decisionmakers. *See, e.g.*, Brooks Decl. ¶¶ 33, 37, 40, 45; Hertel Decl. ¶ 35.   The disclosure of any of these deliberative materials would reveal the evolving thought process of all levels of Defendants' employees when providing guidance, recommendations, and other types of feedback. *See, e.g.*, Brooks Decl. ¶¶ 33, 37, 40, 45; Hertel Decl. ¶ 35.   Disclosure of documents that contain this information would hamper Defendants' employees' ability to engage in the candid "give and take" to further refine agency actions.   *See, e.g.*, Brooks Decl. ¶¶ 33, 37, 40, 45; Hertel Decl. ¶ 35.

In short, releasing the redacted information would chill or deter Defendants' employees from engaging in the candid and frank discussions that are so important and necessary to the full and proper development process of important law enforcement policies.   The Court has held that this type of chilling effect adequately fulfills the requirements of 5 U.S.C. § 552(a)(8)(A)(i)(I). *See Amadis v. Dep't of State*, 971 F.3d 364, 370–73 (D.C. Cir. 2020).   Because the materials are pre-decisional and deliberative, Defendants properly protected the information withheld under Exemption 5 based on the deliberative process privilege.

F.   **Defendants' Withholdings Pursuant to Exemptions 6 and 7(C) Are Appropriate.**

1.   *Exemption 7 Threshold.*

FOIA provides that certain records or information compiled for law enforcement purposes are exempt from disclosure.   5 U.S.C. § 552(b)(7)(A)–(F).   FOIA Exemption 7 protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption.   *See* 5 U.S.C. § 552(b)(7).   In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy, Exemption 7(C).

DEA meets the requirements of a law enforcement agency.  *See, e.g.*, *Cooper v. Dep't of Just.*, Civ. A. No. 99-2513 (RBW), 2022 WL 602532, at *28 (D.D.C. Mar. 1, 2022) ("Here, each of the defendant agencies—Customs, the DEA, the Marshals Service, and the ATF—are law enforcement agencies, whose 'principal function is law enforcement[.]'") (quoting *Codrea v. ATF*, 239 F. Supp. 3d 128, 132 (D.D.C. 2017)); *Lewis v. Dep't of Just.*, 867 F. Supp. 2d 1, 18 (D.D.C. 2011) ("The defendant thus meets the threshold showing that the relevant DEA records are law enforcement records for purposes of Exemption 7."); *Rodrequez v. U.S. Postal Serv.*, Civ. A. No. 90-1886, 1991 WL 212202, at *6 (D.D.C. Oct. 2, 1991) ("The DEA, FBI and Marshals Service are law enforcement agencies[.]").  And while HHS is not a law enforcement agency, *Adams v. United States*, 78 Fed. Cl. 556, 561 (Fed. Cl. 2007), it may likewise assert Exemption 7 to protect records or information compiled for law enforcement purposes.  *McCutchen*, 30 F.3d at 189.

Here, HHS has withheld witness statements and associated HHS-OIG agent notes.  Brooks Decl. ¶ 34.  These records were prepared for the purpose of investigating possible health care fraud.  *Id.* ¶ 33.  HHS has also withheld Medicare and Medicaid claims information as well as information provided by Qlarant to HHS.  *Id.* ¶ 38.  This information was compiled for purposes of HHS's investigation into possible health care fraud.  *Id.* ¶ 37.  Defendants withheld the names and identifying information of case agents involved in the investigations.  *Id.* ¶¶ 41, 46; Hertel Decl. ¶¶ 41–47.  Thus, these records were compiled for law enforcement purposes and meet the threshold.

### 2.    *Exemptions 6 and 7(C) Withholdings*

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   The term "similar files" is broadly construed and

includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").    In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46.   "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"   *Id.* at 47 (quoting *Fed. Labor*, 510 U.S. at 497) (alterations in original).   "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose[.]"   *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).

Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency." *Amuso v. Dep't of Just.*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 479, 763–65 (1989).   And "the concept of personal privacy . . . is not some limited or 'cramped notion' of that idea," *NARA v. Favish*, 541 U.S. 157, 165–70 (2004) (construing analogous Exemption 7(C)), but rather is grounded in "both the common law and the literal understandings of privacy [that] encompass the individual's control of information concerning his or her person."   *Reps. Comm.*, 489 U.S. at 763.   An individual's privacy interest "is not limited to [personal information] of an embarrassing or intimate nature."   *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007).   Moreover, "[w]here there is a substantial probability that disclosure will cause an interference with personal

privacy, it matters not that there may be two or three links in the causal chain." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989).   Under FOIA, any personal privacy interest greater than *de minimis* is "substantial."   *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

Here, Defendants invoked Exemption 6 to withhold the personally identifiable information of: (1) "Key Personnel" listed in the Qlarant statement of work or contract, Brooks Decl. ¶ 23; (2) beneficiaries, federal agents, investigators, complainants, witnesses, and other investigation subjected included in the closed OIG reports, *id.* ¶ 26; (3) witness statements and references to witness in OIG agent notes, *id.* ¶ 34; (4) medical information for individuals that was compiled for purposes of the investigations, *id.* ¶ 38; (5) names of case agents and agents involved in the digital analysis and examination of digital devices for Plaintiff Anand's investigation, *id.* ¶ 41; (6) names and contact information of OIG agents, *id.* ¶ 46; (7) names, address, dates of birth, and similar personally identifying information about non-law enforcement individuals contained in DEA's investigative case records, including doctors, patients, and witnesses, Hertel Decl. ¶ 44; and (8) similar personally identifying information about DEA Special Agents and Diversion Investigators conducting criminal and regulatory investigations, *id.* ¶ 48. The information's release would be a clearly unwarranted invasion of these persons' privacy, thus "impair[ing] a substantial privacy interest." Brooks Decl. ¶¶ 23, 26, 34, 38, 41, 46; Hertel Decl. ¶¶ 41–51; *Telematch, Inc. v. Dep't of Agric.*, No. 20-5378, --- F.4th ---, 2022 WL 3330101, at *5 (D.C. Cir. Aug. 12, 2022).

The burden is on Plaintiffs to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests.   *See, e.g.*, *Carter v. Dep't of Comm.*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Def.*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Office of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It

is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant") (citing *Favish*, 541 U.S. at 172).   Here there is no countervailing public interest that would be served by the disclosure of this personal information.   Brooks Decl.¶¶ 23, 26, 34, 38, 41, 46; Hertel Decl. ¶¶ 41–51; *see Am. Fed'n of Gov't Emps. v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 156 (D.D.C. 2010) (upholding redaction of names and other information relating to another individual pursuant to Exemption 6).   Moreover, release of this personally identifiable information would not shed light on how Defendants conduct business.   Brooks Decl.¶¶ 23, 26, 34, 38, 41, 46; Hertel Decl. ¶¶ 41–51; *accord Telematch*, 2022 WL 3330101, at *6.   In sum, because there is no countervailing public interest that can overcome the privacy interest of these individuals, Defendants properly redacted personally identifiable information for various categories of third parties and agents via Exemption 6.   *See Beck*, 997 F.2d at 1494 (stating that when there is no public interest at all, the court "'need not linger over the balance; something outweighs nothing every time'") (quoting *Horner*, 879 F.2d at 879).

Similarly, for information compiled for law enforcement purposes, FOIA Exemption 7(C) protects personal privacy when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C).   An agency need not link its collection of material to a specific or ongoing investigation.   *See, e.g.*, *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002).

Here, Defendants properly invoked Exemption 7(C) to withhold this same information. Brooks Decl.¶¶ 23, 26, 34, 38, 41, 46; Hertel Decl. ¶¶ 41–51.   *First*, third parties maintain substantial and legitimate privacy interests in not being connected to a law enforcement matter, whether they are merely mentioned or are the person being investigated and implicated in a criminal matter, due to potential negative connotations.  Release of the personally identifiable information

of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention, resulting in potential professional and social repercussions.   Brooks Decl. ¶¶ 23, 28, 35–36.   *Second*, agents whose information was withheld were responsible for conducting, supervising, and maintaining activities related to the ongoing law enforcement proceeding. These agents have many privacy concerns: avoiding publicity to stay neutral on topics and remain effective in conducting investigations, working on projects, and performing day-to-day work; avoiding unnecessary, unofficial questioning as to the conduct of investigative or other activities, regardless of current employment; and avoiding any hostility from persons associated with investigations they conduct.   Hertel Decl. ¶ 49.

Persons targeted in investigations and their supporters could seek to harass or harm an agent based on his or her participation in an investigation.   *Id.*   This same logic applies to administrative personnel assigned to these tasks.   These employees could be targeted for reprisal based on their involvement due to their positions of access to information. *Id.* ¶¶ 45, 49.

Lastly, there is no public interest served by disclosing the any of this information because the withheld information would not significantly increase the public's understanding of Defendants' operations and activities or shed light on how Defendants carry out their missions. *Id.* ¶¶ 45–46.   There is no showing that this information needs to be released to meet a significant public interest, and given the significant privacy interests at stake, Exemption 7(C) was properly invoked to protect the privacy of these individuals.  *See SafeCard*, 926 F.2d at 1206.

## G.    DEA's Withholdings Pursuant to Exemption 7(D) Are Appropriate.

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure could reasonably be expected to disclose "the identity of a confidential source," which furnished information on a confidential basis, and

"information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  Exemption 7(D)'s

"paramount objective . . . is to keep open the Government's channels of confidential information."

*Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).  When invoking Exemption 7(D),

the agency must demonstrate that the information was compiled for a law enforcement purpose,

that an informant provided the information under either an express or an implied promise of

confidentiality and, under the first clause of Exemption 7(D), that disclosure could reasonably be

expected to disclose the source's identity.  *Dep't of Just. v. Landano*, 508 U.S. 165, 171–72 (1993).

If an individual has not been given an express promise of confidentiality, the agency may

demonstrate that a source has been given an implied promise of confidentiality based upon the

circumstances of the case.  *Id.* at 179–80.

   The term "confidential source" is very broad.  *See, e.g.*, *Gula v. Meese*, 699 F. Supp. 956,

960 (D.D.C. 1988) (crime victims); *Putnam v. Dep't of Just.*, 873 F. Supp. 705, 716 (D.D.C. 1995)

(medical personnel).  Moreover, the term "confidential" signifies that the information was

provided in confidence or in trust, with the assurance that it would not be disclosed to others.  *Dow

Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 575–76 (D.C. Cir. 1990).  As such, "the question is

not whether the requested document is of the type that the agency usually treats as confidential,

but whether the particular source spoke with an understanding that the communication would

remain confidential."  *Landano*, 508 U.S. at 172.

   Here, DEA is withholding the identity of its confidential source(s) and all information that

the confidential source(s) provided to DEA.  Hertel Decl. ¶¶ 54–55.  While this information is also

separately protected from disclosure under Exemption 7(A), DEA properly invokes Exemption

7(D) in the alternative.  DEA and the confidential source(s) entered into a written agreement that

explicitly states that the federal government generally and DEA specifically will protect their

identity. *Id.* ¶ 54. Disclosing the identity of the source(s), or the information provided by the source(s), would risk serious bodily harm to the source and even to the source's family members. *Id.* ¶ 55. The identity of the source(s) may be revealed if DEA were to disclose the information provided. *Id.* Accordingly, DEA properly invoked Exemption 7(D) to shield the source and to honor its commitments. *Id.* ¶¶ 54–55.

### H.    Defendants' Withholdings Pursuant to Exemption 7(E) Are Appropriate.

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* (alterations omitted).

Within the responsive records, Defendants applied Exemption 7(E) to: (1) DEA investigative case numbers; Hertel Decl. ¶ 58; (2) Geo-Drug Enforcement Program identifiers, *id.* ¶ 59; (3) NADDIS numbers, *id.* ¶ 60; (4) DEA controlled substance codes, *id.* ¶ 61; (5) Qualitative Characterization codes, *id.* ¶ 62; (6) DEA registration numbers, *id.* ¶ 63; Brooks Decl. ¶ 27; and (7) the questions and answers to and from witnesses, the types of surveillance used, the surveillance reports, and the types of software used to examine digital media and the name of the internal HHS-OIG law enforcement database, Brooks Decl. ¶ 43.

First, DEA investigative case numbers are a series of numbers and letters, which are solely internal to DEA practices and can be legitimately used only by DEA employees.  Hertel Decl. ¶ 58.  Case numbers reveal the specific DEA office that initiated the investigation, the year the investigation was established, and the total number of cases initiated by the DEA office in a particular fiscal year.  *Id.*  Disclosure of the investigative case number identifies the investigative interest or priority given to the investigation.  *Id.*  Disclosing the information could reasonably be expected to create a risk of circumvention of the law by revealing how DEA's law enforcement databases work and render them vulnerable to manipulation. *Id.*  Additionally, investigations of associates and criminal business enterprises are linked to the same investigative case number.  *Id.* For example, the records of DEA civil proceedings, such as an administrative forfeiture proceeding, include reference to the related criminal investigative case number, if any.  *Id.* Disclosure of the investigative case number could be used to determine the scope of a target's criminal operation.  *Id.*  The release of investigative case numbers would allow a suspect to change their patterns of drug trafficking and develop enforcement countermeasures to avoid detection and apprehension.  *Id.*

Second, a Geo-Drug Enforcement Program identifier, which is similar to the investigative case number, is a series of letters and numbers that indicates the classification of the subject of an investigation, the types and amount of suspected controlled substances that are involved, the priority of the investigation, and the suspected location and scope of criminal activity. *Id.* ¶ 59. All DEA investigations are assigned such an identifier at the time an investigation is opened. *Id.* As with the investigative case numbers, this identifier can be legitimately used only by DEA employees and solely for investigative purposes. *Id.* Disclosing the information could reasonably be expected to create a risk of circumvention of the law by revealing how DEA's law enforcement databases work and render them vulnerable to manipulation. *Id.* Disclosure of this identifier would reveal to the public, and more importantly, the subjects of investigation, the priority given to specific narcotics investigations and the scope of investigatory operations. *Id.* It would allow targets of current and future investigations to circumvent the law and would reduce the effectiveness of law enforcement investigative procedures. *Id.* Additionally, disclosure of the identifier would reveal sensitive, non-public references to the DEA Agents Manual, which is not available to the public and would reveal DEA law enforcement techniques. *Id.*

Third, NADDIS generates and assigns a system-generated number to an individual based on a specific algorithm. *Id.* ¶ 60. Disclosure of NADDIS numbers would reveal, for example, when DEA first became aware of the subject of an investigation or became aware of a known associate. *Id.* Such disclosures would enable the subjects of investigations, and individuals conducting criminal activity but not yet on DEA's radar, to identify the timing and circumstances of when DEA became aware of the individual or began investigating the individual. *Id.* This would provide valuable information to investigative targets, especially to individuals who are not

yet aware that they are the subject of an investigation, allowing the individuals to take evasive actions or countermeasures to circumvent investigation.  *Id.*

Fourth, the controlled substance code represents the controlled substance or commodity being trafficked by the subject of an investigation or drug trafficking organization.  *Id.* ¶ 61.  While the code by itself is used to identify specific controlled substances, it is more importantly used as part of the Geo-Drug Enforcement Program identifier and, therefore, can be legitimately used only by DEA employees.  *Id.*  Revealing the controlled substance code would give investigation targets information into the scope of DEA's investigations and would reduce or negate the effectiveness of DEA's investigative procedures.  *Id.*  Disclosure of this information would allow criminals to decode DEA's internal data, determine what drug was being investigated by DEA, and then change their methods of drug trafficking to evade detection.  *Id.*

Fifth, the Qualitative Characterization code provides information about the primary role or criminal activity conducted within a drug trafficking organization by the subject or target of an investigation.  *Id.* ¶ 62.  This code represents DEA's understanding of the level of involvement of the subject or target within a drug trafficking organization or their involvement in the alleged criminal activity being investigated, and allows DEA to tailor the scope of its investigation accordingly.  Disclosing the information could reasonably be expected to create a risk of circumvention of the law because it would reveal the scope of DEA's investigation and its understanding of the roles of the individuals involved.  *Id.*

Sixth, the DEA registration number is a unique number issued to regulated persons authorized to handle controlled substances or chemicals.  *Id.* ¶ 63; *see also* Brooks Decl. ¶ 27. These regulated persons include any entity or individual who manufacturers, distributes, imports, exports, or prescribes controlled substances.  Hertel Decl. ¶ 63.  The registration number is a series

of letters and numbers that indicate the type of registrant, the initials of the registrant, and a unique code that DEA uses to confirm the validity of the number.  *Id.*  The ability to confirm that a registration number is valid prevents the public from creating fake registration numbers to illegally obtain or otherwise have unauthorized access to controlled substances.  *Id.*  Additionally, the release of registration numbers to the public could result in the "reverse engineering" of the code. *Id.*

Seventh, HHS withheld the methods by which HHS-OIG investigated Plaintiff Anand, which are not well-known to the public and which, if revealed, would allow similar individuals to evade detection, thereby nullifying the effectiveness of those methods.  Brooks Decl. ¶ 43. Disclosing these non-public methods would likely reduce or even nullify the effectiveness of the methods and provide a roadmap for circumvention.  *Id.*

The disclosure of any of these categories of information would reveal techniques and practices used in DEA or HHS investigations and could provide information to individuals seeking to violate or circumvent the law to take proactive steps to counter operations and investigative actions taken during drug enforcement operations.  Hertel Decl. ¶ 64.  By using discrete pieces of information and applying a mosaic analysis, individuals of the public looking to violate or circumvent the law could use the information to change their pattern of activity to avoid detection, apprehension, create alibis for criminal activities, and illegally obtain controlled substances.  *Id.* Accordingly, Defendants' withholdings under Exemption 7(E) are appropriate.

## I.       Defendants' Withholdings Pursuant to Exemption 7(F) Are Appropriate.

FOIA Exemption 7(F) protects information that "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  "The exemption does not require that a particular kind of individual be at risk of harm; 'any individual' will do.  Disclosure

need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Pub. Emps. for Envtl. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 205 (D.C. Cir. 2014). "The Court of Appeals interprets Exemption 7(F) broadly and does not require the government 'to identify the specific individuals at risk from disclosure.'" *Nat'l Pub. Radio, Inc. v. FBI*, 539 F. Supp. 3d 1, 9 (D.D.C. 2021) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015)). The government need provide only "reasonable detail" explaining "why withholding the [records] under Exemption 7(F) is appropriate." *Id.*

Defendants' Exemption 7(F) withholdings are fully encompassed by their Exemption 7(A) withholdings, and, therefore, the Court need not consider Defendants' Exemption 7(F) arguments at this time. Defendants assert Exemption 7(F) to protect the names and contact information of HHS-OIG agents and DEA Special Agents and Diversion Investigators conducting criminal and regulatory investigations. Brooks Decl. ¶¶ 41, 46; Hertel Decl. ¶¶ 48–51. Such agents have received threats, and disclosure of their identifying information risks jeopardizing their lives. Brooks Decl. ¶ 46; Hertel Decl. ¶ 49. Accordingly, Defendants properly invoke Exemption 7(F).

## J. Defendants Released All Reasonably Segregable Information.

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must generally be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567

F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). A key exception to this rule is that "an agency withholding documents under Exemption 7(A) does not need to justify its segregability determination document by document, as the exemption allows agencies to justify withholding based on categories of documents." *Stein v. SEC*, 266 F. Supp. 3d 326, 353 (D.D.C. 2017).

To the extent required by law, Defendants properly considered each record and released all reasonably segregable information. *See, e.g.*, Brooks Decl. ¶ 47 ("I have reviewed the records line by line and determined that no nonexempt information is reasonably segregable. After extensive review of the records at issue, [HHS] has determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information."); Hertel Decl. ¶ 65 ("Every effort is made to release all segregable information without disclosing law enforcement techniques or procedures. No additional information may be segregable for disclosure without revealing the protected information."). Accordingly, Defendants complied with their segregability obligations under FOIA.

## III. DEA Properly Invoked *Glomar* in Responding to Plaintiff Anand's Request for Information Regarding His Former Business Partner.

DEA invoked a *Glomar* response as to Plaintiff's request for all DEA documents concerning Paul Soccio. Hertel Decl. ¶ 42. An agency "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception." *Wolf*, 473 F.3d at 374 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). "Such an agency response . . . is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Id.* "In determining whether the existence of

agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Id.* The "D.C. Circuit has advised courts to accord substantial deference to an agency's *Glomar* response and avoid 'searching judicial review' when the information requested 'implicat[es] national security, a uniquely executive purview.'" *Schaerr v. Dep't of Just.*, 435 F. Supp. 3d 99, 111 (D.D.C. 2020) (quoting *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926–27).

Because Exemption 7(C) is broader than Exemption 6, there is no need to consider Exemption 6 for law enforcement records. *See CREW v. Dep't of Just.*, 854 F.3d 675, 681 (D.C. Cir. 2017); *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). Exemption 7(C) provides protection for law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In assessing an agency's invocation of Exemption 7(C), the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

That said, the D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard*, 926 F.2d at 1206. Indeed, "it is by now well established that, under Exemption 7(C), 'a *Glomar* response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records would associate the individual named in the request with criminal activity.'" *Donato v. Exec. Office for U.S. Attorneys*, 308 F. Supp. 3d 294, 310 (D.D.C.

2018) (granting summary judgment on *Glomar* response under Exemption 7(C)) (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)).

Here, Plaintiff Anand asks for records concerning a non-party to this suit, and any response to that request may associate that non-party with a law enforcement investigation. No such investigation has been confirmed or denied. The Court should not permit Plaintiff Anand to force it do so under the guise of FOIA. This is especially so in this instance, given the acrimonious and litigious nature of his relationship with Mr. Soccio. Accordingly, DEA has properly invoked *Glomar* for this portion of Plaintiff Anand's request.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant summary judgment in favor of Defendants as to all claims in this case.

Dated:  August 16, 2022

Respectfully submitted,

MATTHEW M. GRAVES, DC Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   /s/ *Douglas C. Dreier*
      DOUGLAS C. DREIER, DC Bar No. 1020234
      Assistant United States Attorney – Civil Division
      U.S. Attorney's Office for the District of Columbia
      601 D Street, N.W.
      Washington, D.C.  20530
      (202) 252-2551
      douglas.dreier@usdoj.gov

      *Counsel for Defendants*