**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| NEIL ANAND, *et al.*, Plaintiffs, v. U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, Defendants. | Civil Action No. 21-1635 (CKK) |
|---|---|

**MEMORANDUM OPINION**
(March 27, 2023)

This lawsuit arises from Freedom of Information Act ("FOIA") requests made by *pro se* Plaintiffs Neil Anand and Lesly Pompy to Defendants United States Department of Health and Human Services ("HHS") and Drug Enforcement Administration ("DEA"). Plaintiffs Anand and Pompy are physicians who were indicted on multiple criminal counts, including health care fraud and the distribution of controlled substances. *See* Compl., ECF No. 1 at 8; Defs.' Mot. at 1. To aid in defense of their criminal prosecutions, Plaintiff Anand submitted FOIA requests to both HHS and DEA, and Plaintiff Pompy submitted a FOIA request just to DEA. After the agencies conducted their searches and made numerous withholdings, Plaintiffs then filed a Complaint seeking declaratory and injunctive relief to compel Defendants to produce certain records. *See* Compl. at 8, 11.

Before the Court is Defendants' [59] Motion for Summary Judgment. Plaintiffs oppose Defendants' Motion but have not filed a cross-motion for summary judgment. As indicated in their [80] Notice, Defendants partially withdrew their [59] Motion for Summary Judgment as it related to exemptions claimed for Plaintiff Pompy's FOIA request. *See* ECF No. 80 at 1. The Court will separately address Plaintiff Anand's FOIA request in another opinion. Accordingly, the only issue

presently before the Court is the [59] Motion for Summary Judgment as it relates to the reasonableness of the DEA's search in response to Plaintiff Pompy's FOIA request. *See id.* at 2.

Upon review of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that Defendants have carried their burden of demonstrating that they have conducted an adequate search for records responsive to Plaintiff Pompy's FOIA request. The Court shall therefore **GRANT** Defendants' Motion for Summary Judgment only on the issue of the reasonableness of the DEA's search in response to Plaintiff Pompy's FOIA request.

## I. BACKGROUND

On June 26, 2018, a grand jury indicted Plaintiff Lesly Pompy on multiple criminal counts, including health care fraud and the distribution of controlled substances. *See* Defs.' Mot. at 1; *United States v. Pompy*, Crim. A. No. 18-20454 (E.D. Mich.). On April 17, 2021, Plaintiff Pompy submitted a FOIA request to the DEA seeking:

> DEA Administrative audit done on 9/26/2016 at 730 N. Macomb St, Monroe Michigan 48162[;] DEA investigation of Lesly Pompy regarding DEA and X-DEA registration[;] Investigation of investigation involving DEA registration BP 2527058, FP 2665478[;] contractual relationship, statement of works between Blue Cross Blue Shield of Michigan Mutual Insurance C[o]mpany and the DEA.

Defs.' Mot. Ex. F. The address and registration numbers listed in the FOIA request are associated with Pompy. *See* Defs.' Mot. at 6–7.

To search for investigative records about Lesly Pompy, the DEA searched the appropriate database using the term "Lesly Pompy", which resulted in the identification of active investigative

---

[1] The Court's consideration has focused on the following:

- Defendants' Motion for Summary Judgment, ECF No. 59 ("Defs.' Mot.");
- Plaintiffs' Response and Opposition to Defendants' Motion for Summary Judgment, ECF No. 64 ("Pls.' Opp'n");
- Defendants' Reply Memorandum in Support of Motion for Summary Judgment, ECF No. 69 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

cases. Defs.' Mot. at 7 (citing Defs.' Ex. 11 (hereinafter "Hertel Decl.") ¶ 25). Because of Pompy's ongoing criminal proceeding, DEA withheld in full all responsive records pursuant to various exemptions. *Id.* To locate all contracts or statements of work between DEA and Blue Cross Blue Shield of Michigan Mutual Insurance Company, DEA tasked its Office of Acquisition & Relocation. *Id.* (citing Hertel Decl. ¶ 26). That Office searched its acquisition database and located no responsive records.

Plaintiff Neil Anand filed separate FOIA requests to the DEA and HHS's Office of the Inspector General ("OIG") in April 2021. *See* Defs.' Mot. Exs. A, 1. On June 11, 2021, Plaintiffs Anand and Pompy filed the Complaint in this action. *See* Compl., ECF No. 1. Plaintiffs state that they are physicians interested in "all data analytics algorithms used in Pill Mill Doctor Project, Waste Fraud and Abuse, Medicare Opiate Risk Tool 'Pill Mill Risk Analysis' software and other Health Care Fraud Prevention and Enforcement Action Team… initiatives" as well as "all reports and work products generated by contractor Qlarant Corporation concerning the Pill Mill Doctor Project" and "all reports from Blue Cross Blue Shield Corporation to [Office of the Inspector General] concerning improper prescribing of opiates by specific physicians," among other information. Compl. ¶ 4–5. The Court has twice denied Plaintiffs' Motions for Leave to File an Amended Complaint. *See* Order, ECF No. 26; Mem. Op. & Order, ECF No. 38.

Defendants filed the pending [59] Motion for Summary Judgment. In their Motion, Defendants explain that throughout the course of this litigation, there has been confusion regarding which FOIA requests are at issue. Defs.' Mot. at 1. The only FOIA request referenced in Plaintiff's "Complaint for Declaratory and Injunctive Relief (Addendum)" or discussed in the Complaint's exhibits is the one submitted by Plaintiff Anand to HHS. *Id.* at 1–2 (citing Compl. at 7–11, 19–22). Nevertheless, Defendants state that "[g]iven Plaintiffs' *pro se* status and given that Plaintiffs did name DEA as a defendant, Defendants will address all three FOIA requests and agree

to treat all three FOIA requests as at issue in the Complaint." *Id.* at 2. Defendants' [59] Motion was then fully briefed for the Court's consideration.

On February 8, 2023, Defendants filed the [80] filing titled "Notice Regarding Plaintiff Lesly Pompy's Acquittal and Partial Withdrawal of Defendants' Motion for Summary Judgment." *See* ECF No. 80 at 1. In this Notice, Defendants informed the Court that Pompy was acquitted in his criminal trial in January 2023. Therefore, they state that "[i]n light of Plaintiff Pompy's acquittal, DEA no longer advocates Exemption 7(A) for Plaintiff Pompy's FOIA request and will reprocess the records responsive to Plaintiff Pompy's FOIA request." *Id.* Defendants will not be doing another search, but rather just reprocessing responsive records. They indicated that they "anticipate filing a renewed motion for summary judgment vis-à-vis the exemptions claimed for Plaintiff Pompy's FOIA request" but "continue to urge that the Court grant Defendants' pending motion for summary judgment regarding the reasonableness of DEA's search in response to Plaintiff Pompy's FOIA request." *Id.* at 1–2.

The Court ordered Plaintiff Pompy to file a status report indicating whether he plans to continue with this litigation given his acquittal. *See* Minute Order, Feb. 21, 2023. Plaintiff Pompy filed the [82] Status Report, in which he "requests to remain in the instant litigation and for the DEA to reprocess the records responsive to [his] FOIA request." ECF No. 82 at 1. Per the Court's prompting, Defendants filed the [83] Status Report providing information about their timeline for the reprocessing of such records and a proposed schedule for a renewed motion for summary judgment. In its [84] Order, the Court set a briefing schedule for that motion regarding any exemptions asserted regarding Plaintiff Pompy's FOIA request to DEA. This renewed motion regarding withholdings, if any, remains forthcoming.

The Court now turns to address the pending [59] Motion for Summary Judgment only as it relates to the reasonableness of DEA's search in response to Plaintiff Pompy's FOIA request.

## II. LEGAL STANDARD

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552, to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (citation omitted), *cert. denied*, 507 U.S. 984 (1993). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material." *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1261–62 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 131 S. Ct. at 1262 (citations omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (PLF) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007) (PLF)). "The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (RC) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in

the record or by evidence of agency bad faith." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted).

## III. DISCUSSION

Defendants seek summary judgment against Plaintiff Lesly Pompy as to the adequacy of the DEA's search. Plaintiff Pompy opposes Defendants' motion but has not filed any cross-motion for summary judgment. For the reasons below, the Court concludes that the DEA has carried its burden of demonstrating that it has conducted an adequate search for records responsive to Plaintiff Pompy's FOIA request.

The Court first begins with a discussion of Plaintiff Anand and Pompy's opposition to Defendants' Motion for Summary Judgment, which they filed together. The Court then turns to addressing the adequacy of the DEA's search.

### A. Plaintiffs' Briefing

The Court finds that Plaintiffs' opposition to Defendants' Motion for Summary Judgment violates numerous rules and Court orders. Plaintiffs' violative conduct has been a pattern throughout this entire litigation. *See, e.g.*, Mem. Op. & Order, ECF No 79 at 2–6, 12–13 (describing numerous motions and filings that have been in violation of Court order or rule or have otherwise been submitted in a frivolous or harassing nature). Although *pro se* litigants are held to a

more lenient standard than those represented by counsel, they must nevertheless comply with the Federal Rules of Civil Procedure, Local Rules of Civil Procedure, and court orders. *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993) (citation and internal quotation marks omitted); *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987) (Penn, J.); *Garlington v. D.C. Water & Sewer Auth'y*, 62 F. Supp. 3d 23, 27 (D.D.C. 2014) (BAH). The Court will now address numerous violations and deficiencies related to the Plaintiffs' briefing.

**1. Forty-Five Page Limit on Memorandum**

First, Plaintiffs have attempted to circumvent the forty-five page limit on a responsive memorandum as imposed by Local Civil Rule 7(e) and the Court's [44] Scheduling and Procedures Order. Local Rule 7(e) states that "[a] memorandum of points and authorities in support of or in opposition to a motion shall not exceed 45 pages… without prior approval of the Court." LCvR 7(e). The Court's Scheduling and Procedures Order, which set forth requirements for the parties' briefing on Defendants' Motion for Summary Judgment, states that "[m]emoranda of points and authorities filed in support of or in opposition to any motion may not, without leave of the Court, exceed forty-five (45) pages." ECF No. 44. at 2.

Plaintiffs Anand and Pompy filed together a response to Defendants' Motion for Summary Judgment. *See generally* Pls.' Opp'n. Such filing includes numerous documents, including a 45-page "Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment." In this Memorandum, Plaintiffs do not specifically address or respond to any of the arguments raised in Defendants' Motion. Instead, Plaintiffs relitigate motions the Court has already decided, *see, e.g.*, *id.* at 7–8, discuss irrelevant legal standards, *see, e.g.*, *id.* at 12–13, and make conclusory remarks such as, among others, that they "have identified specific facts that would create a genuine material-fact dispute" without then enumerating such facts, *id.* at 10. They spend the vast majority of their briefing explaining their planned uses of the information they requested

via FOIA: to aid in defense of their criminal prosecutions. *See id.* at 18–44; *see also* Defs.' Reply at 1 ("Plaintiffs have filed a 45-page opposition that is little more than an airing of purported grievances with the criminal proceedings initiated against them"). The closest Plaintiffs come in their Memorandum to responding to Defendants' Motion is when they claim that "DEA [] searches were unreasonable and legally insufficient," Pls.' Opp'n at 3; however, they then fail to explain why. In other words, Plaintiffs do not make any pertinent legal arguments or raise genuinely disputed material facts in their Memorandum.

Plaintiffs also include in their filing a 28-page section titled "Defendants' Specific Statements of Material Fact That Are Opposed by Plaintiffs" (hereinafter referred to as "Plaintiffs' Opposing Responses"). *See* Pls.' Opp'n at 53–80. In these pages, Plaintiffs include various excerpts from Defendants' Motion and present an "Opposing Response" for each. It is in this section—*not* Plaintiffs' Memorandum—that Plaintiffs finally address some of Defendants' arguments. For example, in statement "E", Plaintiffs include numerous citations to case law and talk about "well settled" legal principles, Pls.' Opp'n at 56, and in statement "J", they outline and discuss requirements for a certain claimed exemption, *id.* at 60. In reply, Defendants contend that they "harbor serious concerns that Plaintiffs' inclusion of legal arguments in their addendum that were omitted from Plaintiffs' 45-page brief constitutes an improper attempt to circumvent the 45-page limit for their brief." Defs.' Reply at 6. The Court agrees.

Courts in this Circuit have condemned briefing for comparable reasons. For example, where a *pro se* plaintiff "attempt[ed] to incorporate 129 pages of external documents to supply the factual information necessary to support her allegations, bringing her Opposition and its attachments up to a total of 173 pages in length," the court found that to "violate the 45-page limit on briefs." *Spence v. U.S. Dep't of Veterans Affs.*, No 19-1947 (JEB), 2022 WL 3354726, at *4 (D.D.C. Aug. 12, 2022). Where parties "respond[ed] to important substantive issues in footnotes,"

the court held that "to be an attempt to circumvent the page limits set forth in the Local Civil Rules." *Ohio Head Start Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.*, 873 F. Supp. 2d 335, 344 (D.D.C. 2012) (CKK). In another instance, a plaintiff filed a responsive statement of facts as well as a separate statement of additional facts that together totaled 402 pages and included legal arguments; the court wrote that it "declines to permit Plaintiff to circumvent the page limit for responsive memoranda established in this Court's [] Scheduling Order by way of the submission of such extensive statements." *Hajjar-Nejad v. George Washington Univ.*, No. 10-626 (CKK), 2013 WL 12407402, at *1–*2 (D.D.C. May 13, 2013). And in a case where the defendant addressed plaintiff's arguments in an unauthorized 44-page addendum rather than its memorandum, the court "warned" defendant that "it must strictly follow both the Federal Rules of Civil Procedure and the Local Civil Rules." *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 211 n. 14 (D.D.C. 2018) (EGS/GMH).

Here, Plaintiffs present relevant and responsive legal arguments only in their filing titled "Defendants' Specific Statements of Material Fact That Are Opposed by Plaintiffs." The Court finds that where Plaintiffs present such legal arguments *only* in attachments *outside* of their Memorandum, that constitutes an attempt to circumvent the 45-page limit imposed by Local Rule 7(e) and affirmed by the Court's [44] Order. Therefore, to the extent that the Court could consider incorporating Plaintiffs' Opposing Responses to be part of, or even an addendum to, Plaintiff's Memorandum, such responses would be in violation of Local Rule 7(e) and the Court's [44] Order. This problem is less significant here, where the Court does not read anything in Plaintiffs' Opposing Responses to present legal arguments responsive to the issue presently before the Court regarding the adequacy of the DEA's search responsive to Pompy's FOIA request.

**2. Statement of Genuine Issues**

Plaintiffs have also failed to comply with requirements governing their Statement of Genuine Issues. Local Civil Rule 7(h) requires "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h)(1). The Rule continues that "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id.* Courts have made clear that "when faced with a motion for summary judgment, a *pro se* plaintiff, just like a represented party, must comply with a court's rules regarding responses to statements of material fact and the need to identify record evidence that establishes each element of his claim for relief." *MacLeod v. U.S. Dep't of Homeland Sec.*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *7 (D.D.C. Sept. 21, 2017) (citing *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015)).

The Court emphasized in its Scheduling and Procedures Order that it "strictly adheres to the dictates of Local Civil Rule 7(h)." ECF No. 44 at 2. The Court continued that "[t]he party responding to a statement of material facts must respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied." *Id.* at 3. "The responding party must include any information relevant to its response in its correspondingly numbered paragraph, with specific citations to the record. However, if the responding party has additional facts that are not directly relevant to its response, it must identify such facts in consecutively numbered paragraphs at the end of its responsive statement of facts." *Id.* Finally, "[t]he parties must furnish precise citations to the portions of the record on which they rely; the Court need not consider materials not specifically identified." *Id.* (citing Fed. R. Civ. P.

56(c)(1)(A), (c)(3)).

The Court also reiterated some of these requirements in its [60] Order apprising *pro se* Plaintiffs Anand and Pompy of the consequences of failing to respond to a dispositive motion. *See* ECF No. 60 (citing *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988)). In the [60] Order, the Court included relevant portions of Federal Rules of Civil Procedure, specifically Rules 56(c) and (e). *Id.* at 2 (citing Fed. R. Civ. P. 56(c), (e)). Rule 56(c) states that "[a] party asserting that a fact… is genuinely disputed must support the assertion by: [] citing to particular parts of materials in the record…; or [] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). According to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact… the court may… [] consider the fact undisputed for purposes of the motion; [] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." *Id.* 56(e).

Here, Plaintiffs present a Statement of Genuine Issues titled "Plaintiffs' Responses and Answers to Defendants' 'Statement of Material Facts as to Which There is No Genuine Dispute.'" *See* Pls.' Opp'n at 53. Plaintiffs admit to eight of Defendants' nine statements in their entirety. *Id.* Plaintiffs deny only Defendants' final statement, in which Defendants state, before citing to two affidavits, that "[t]hroughout the administrative processing of Plaintiffs' FOIA request, Defendants carefully reviewed all the documents responsive to the request for reasonable segregation of nonexempt information and released all non-exempt information." Defs.' Mot., Statement of Material Facts. In response, Plaintiffs write: "Denied in whole. Plaintiffs vehemently disagree that Defendants carefully reviewed all the documents responsive to the request for reasonable

segregation of non-exempt information, and in good faith, released all non-exempt information." Pls.' Opp'n at 53.

Plaintiffs' denial fails to adhere to Local Rule 7(h), Federal Rule of Civil Procedure 56, the Court's [44] Order, and the Court's [60] Order because it does not include specific citations to parts of the record (or even vague references), nor does it set forth any facts to support this claim (or any evidence at all). Plaintiffs instead present only one conclusory sentence.

Plaintiffs' deviation from Local Civil Rule 7(h) undermines the Rule's purpose, which is to assist the Court in quickly determining if any facts are actually in dispute. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996). Without this Rule, courts would be "obligated to sift through hundreds of pages of [documents] in order to make [their] own analysis and determination of what may, or may not, be a genuine issue of material disputed fact." *Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002). And that is the case here—without any citations to the record nor suggested factual support, the Court is left with the task of weeding through Plaintiffs' lengthy filings to identify any disputed facts and make sense of Plaintiffs' briefing, which, as noted above, is devoid of responsive legal argumentation in the sections it should be present.

As Plaintiffs have failed to properly dispute Defendants' assertion, the Court can take Defendants' statement as undisputed. *See* LCvR 7(h)(1); Fed. R. Civ. P. 56(e).

**3. Plaintiffs' Opposing Responses**

After its short Statement of Genuine Issues, Plaintiff includes a section titled "Defendants' Specific Statements of Material Fact That Are Opposed by Plaintiffs," to which the Court is referring as "Plaintiffs' Opposing Responses." *See* Pls.' Opp'n at 53–81. To the extent the Court could consider Plaintiffs' Opposing Responses to be part of its Memorandum, it would be wildly over the 45-page limit, as addressed above. To the extent the Court could generously consider

Plaintiffs' Opposing Responses to be part of its Statement of Genuine Issues, such responses would also fail to comply with the relevant rules.

First, considering Plaintiffs' Opposing Responses to be part of its Statement of Genuine Issues, the responses impermissibly blend law with fact. As the Court explained earlier, it is in these pages that Plaintiffs present some legal arguments addressing Defendants' Motion. For example, in statement "D", they go so far as to write that "Plaintiffs *argue* that Defendants are acting in bad faith…", thereby plainly making an argument rather than presenting facts. Pls.' Opp'n at 55 (emphasis added). Adding to the confusion, some parts of Plaintiffs' Opposing Responses contain legal arguments responsive to Defendants' Motion, while others include legal arguments that are nonresponsive and irrelevant to the Motion before the Court. Per the strictures of Local Rule 7(h), a statement of genuine issues should only include factual references. "[B]lending factual assertions with legal argument… does not satisfy the purposes of [Rule 7(h)]." *Jackson*, 101 F.3d at 153. Accordingly, Plaintiffs' Opposing Responses violate Local Rule 7(h) by blending facts with legal argument.

Second, Plaintiffs' Opposing Responses fail to include citations to particular parts of the record, as is required by Local Rule 7(h) and Federal Rule of Civil Procedure 56(c) as well as the Court's [44] Order. For statements "A" and "D", Plaintiffs generally reference "Joint Status Reports [f]iled… and… one hundred and twenty one (121) Exhibits" but do not cite to any specific exhibits. *See* Pls.' Opp'n at 53. 55. For statements "E", "F", "G", "I", and "N", Plaintiffs cite to specific exhibits but do not provide citations to particular pages. *See id.* at 55–59, 65–67. Finally, for statements "B", "H", "J", "K", "L", "M", "O", "P", "Q", "R", "S", "T", Plaintiffs do not include any mention of exhibits or any other information in the record at all. *See id.* at 54–55, 58–65, 67–80. Plaintiffs' failure to provide specific citations to the record is plainly insufficient under the required standards. *See, e.g., Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 123, 127

(D.D.C. 2010) (CKK); *Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 8 (D.D.C. 2002) (RMU).

Finally, Plaintiffs' Opposing Responses fail to adhere to the requirement of concision, as required by Local Rule 7(h). The Court acknowledges that there is no page limit on a parties' filings in responding to a motion, including for their statement of genuine issues. *See Taylor v. Mills*, 892 F. Supp. 2d 124, 135 n.16 (D.D.C. 2012) (BAH) (noting that the 45-page limit refers only to the "memorandum" of law and not any other attachments). And the Court does not take great issue with the fact that Plaintiffs offer twenty-eight pages of Opposing Responses in comparison to Defendants' three-page Statement of Material Facts. However, the rules do require a "*concise* statement of genuine issues." LCvR 7(h)(1) (emphasis added); *see Hajjar-Nejad*, No. 10-626 at *1 ("While it is true that the Local Rules of this Court do not stipulate a page limit for the responding party's statement of facts, the rules do require that the statement be 'concise' and set forth only the 'facts' as to which it is contended there exists a 'genuine' issue necessary to be litigated."). This statement is not an opportunity to flood the Court with facts or argumentation extraneous to the claims at issue in the case. *See Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs or the record.") (citation and internal quotes omitted). As noted above, these rules are in place to ensure that the Court is directed to any disputed or undisputed facts—easily identifiable based on citations to the record—upon which to make its ruling.

Here, Plaintiffs' Opposing Responses are far from concise. Instead, they include long strings of addresses and phone numbers for government agencies, Pls.' Opp'n at 54; musings on "[a] bedrock principle of our democracy," *id.* at 56, and "core values of the Republic," *id.* at 63; testimony from an unrelated criminal trial that does not respond to Defendants' assertions, *id.* at 57, discussion of the Fourth Amendment, *id.* at 70, and much more.

All in all, Plaintiffs' Opposing Responses, whether considered part of Plaintiffs'

Memorandum or Statement of Genuine Issues, are in contravention of various rules. This supports the same outcome as reached above: because Plaintiffs have failed to properly dispute Defendants' assertion about their "review[] [of] all the documents responsive to the request," the Court can take Defendants' statement as undisputed. *See* LCvR 7(h)(1); Fed. R. Civ. P. 56(e).

**4. Plaintiffs' "Affidavits"**

Finally, Plaintiffs did not submit affidavits sufficient to rebut those offered by Defendants. The Court provided Plaintiffs with notice—using language written specifically for *pro se* litigants––explaining that they "must rebut the moving party's affidavits with other affidavits or sworn statements." ECF No. 60 at 1. The Court's [60] Order further explains that "any factual assertions in the movant's affidavits will be accepted by the district judge as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Id.* (quoting *Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982))). The Order also included relevant portions of Federal Rule of Civil Procedure 56, including that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Plaintiff Pompy and Anand both submitted filings titled as affidavits and to which they refer as affidavits. *See* Pls.' Opp'n Exs. 2, 3. Pompy's document is electronically signed by Pompy, Pls' Opp'n Ex. 3 at 40, as well as in ink by a notary, *id.* at 41. The notary stated that "before me… personally appeared, Lesly Pompy, personally known to me, or proven on the basis of satisfactory evidence, to be Lesly Pompy. He has acknowledged to me to have executed, and that it is his signature on the instrument, the person who has executed the instrument." *Id.* at 41. Anand's document is signed in ink by both himself and a notary. Pls.' Opp'n Ex. 2 at 36. The notary included a similar statement as to that in Pompy's document. *Id.* The Court finds that these filings

do not adhere to the requirements for an affidavit or any other sworn statement.

An unsworn declaration may be treated as an affidavit if the person, in writing, certifies under penalty of perjury that the allegations contained in the complaint are true and correct. *See* 28 U.S.C. § 1746. Here, although captioned as "affidavits," Plaintiffs' statements are unsworn and contain no affirmation that they were offered under penalty of perjury. Other courts have found similar documents to not be considered affidavits nor any other form of sworn document for consideration at the summary judgment stage. *See, e.g.*, *Asia N. Am. Eastbound Rate Agreement v. Amsia Int'l Corp.*, 884 F. Supp. 5, 6 (D.D.C. 1995) (Harris, J.); *Kirkland v. McAleenan*, No 13-194 (RDM), 2019 WL 7067046, at *19–*20 (D.D.C. Dec. 23, 2019).

As a result, Plaintiffs' statements cannot aid them in rebutting Defendants' Motion for Summary Judgment. More specifically, their failure to provide the proper affidavits bars them from disputing Defendants' sworn affidavits. *See Oviedo v. Wash. Metro. Area Transp. Auth.*, 948 F.3d 386, 397 (D.C. Cir. 2020) (citing Fed. R. Civ. P. 56(c), (e); *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) ("[L]ike the district court, we treat as admitted all facts not controverted in [the plaintiff's] Verified Statement.")). In other words, the Court may, pursuant to Federal Rule of Civil Procedure 56(e), consider any facts raised in Defendants' affidavits to be undisputed because Plaintiffs failed to properly rebut them. The Court notes that because it provided notice of the potential repercussions to Plaintiffs in the [60] Order, it would be acting "perfectly within its authority" to do so without giving *pro se* Plaintiffs a second warning. *Oviedo*, 948 F.3d at 398.

Finally, the Court notes that even if it could rely on Plaintiffs' statements, the statements do not include information that rebuts or even casts into doubt the pertinent parts of Defendants' affidavits. Instead, Plaintiffs' statements rehash and explain other topics, including Plaintiffs' desire for the materials requested via FOIA, as is a recurrent theme throughout Plaintiffs' briefing.

*See, e.g.*, Pls.' Opp'n Ex. 3 at 13 (explaining that "[t]he plaintiff seeks to understand the compelling or legitimate interest of the government, whether the government primarily seeks opioid control first, and then pain control second"), 14 (stating that "Plaintiff Pompy needs the timely release of discovery" to assist him in his criminal trial).

* * *

The Court's above discussion of Plaintiffs' briefing lays important groundwork for the analysis that now follows. As explained numerous times, Federal Rule of Civil Procedure 56(e) "allows a court to "consider [a] fact undisputed" if it has not been properly supported or addressed as required by Rule 56(c)." *Grimes*, 794 F.3d at 92. The United States Court of Appeals for the District of Columbia Circuit has explained that "for the evidentiary burden that Rule 56(c) places on nonmovant plaintiffs to function, a court must be able to evaluate an inadequately supported assertion of material fact and deem it not materially disputed, such that summary judgment is warranted in whole or in part." *Id.* The Court now moves forward with this in mind.

**B. Adequacy of DEA's Search**

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal citation and quotation marks omitted). "At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* at 326 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also DiBacco v. U.S Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (same). Summary judgment must be denied "if a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of

overlooked materials." *DiBacco*, 795 F.3d at 188 (internal citation and quotation marks omitted).

Defendants state—and, as explained thoroughly above, the Court can take as undisputed—that "[t]hroughout the administrative processing of Plaintiffs' FOIA request, Defendants carefully reviewed *all* the documents responsive to the request…." Defs.' Mot., Statement of Material Facts (emphasis added). In their Memorandum, Defendants contend that "DEA conducted a reasonable and legally sufficient search for records responsive to Plaintiff Pompy's FOIA request." Defs.' Mot. at 14. To support this contention, they include the sworn declaration of Angela D. Hertel, the Unit Chief of the Legal and External Affairs Sub-Unit, Freedom of Information/Privacy Act Unit, of the United States Department of Justice Drug Enforcement Administration. *See* Hertel Decl. ¶ 1.

Hertel states that the DEA considered Pompy's FOIA request to be for two categories of information: (1) investigative records about himself, and (2) any contract or statements of work between DEA and the BCBS of Michigan. Hertel Decl. ¶ 24. As for the first category, Hertel explains that

> Mr. Pompy requested investigative records about 'DEA administrative audit done on 9/26/2016 at 730 N. Macomb St, Monroe, MI,' which was an address associated with Mr. Pompy in NADDIS. He also requested records 'involving DEA registration BP2527058 and FP2665478,' which were also associated with Mr. Pompy in NADDIS. A DEA search for all investigative records about Mr. Pompy would include a search for records responsive to these specific requests.

*Id.* n.3. After making this determination, DEA began its search to locate all investigative records about Pompy. Hertel explains that all DEA criminal law enforcement investigative records are maintained as part of the DEA Investigative Reporting and Filing System ("IRFS"). *Id.* ¶ 6. DEA locates records that are maintained as part of IRFS using the DEA Narcotics and Dangerous Drugs Information System ("NADDIS"), which is a centralized electronic data index system. *Id.* ¶ 7. Hertel states that "[a] NADDIS search is a worldwide, comprehensive search because all DEA intelligence and investigative records are indexed into NADDIS for purposes of being maintained

as part of IRFS." *Id.* DEA searched IRFS by querying NADDIS using the term "Lesly Pompy." *Id.* ¶ 25. This search resulted in the identification of active investigative cases; the DEA withheld in full all responsive records pursuant to exemptions not presently at issue before the Court. *Id.*

As for the second category of Pompy's request—any contract or statements of work between DEA and the BCBS of Michigan—the DEA determined that its Office of Acquisition and Relocation ("FA") would "have all potentially responsive records" because it is responsible for planning, developing, and managing DEA acquisition activities worldwide, which includes activities related to contracts. *Id.* ¶ 26. FA searched its acquisition database using the terms "Blue Cross," "Blue," "BCBS," "Michigan," "Mutual," and "Insurance". *Id.* This search did not locate any records or information to indicate any contract between DEA and BCBS of Michigan. *Id.*

In Plaintiffs' opposition brief, they state that they "possess Blue Cross Blue Shield, Corporate & Financial Investigations Department (CFID) documents that allude to quid pro-quo corruption." Pls.' Opp'n at 9. To the extent that this could be construed as an argument that DEA failed to locate and/or turn over "any contract or statements of work between DEA and the BCBS of Michigan" (which the Court acknowledges is questionable, but it is engaging in a lenient reading as Plaintiffs are *pro se*), that would not necessarily make the DEA's search inadequate. "[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (citations omitted). "Rather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde*, 315 F.3d at 315 (citing *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

Aside from this generous interpretation, Plaintiffs do not anywhere in their filing—Memorandum or otherwise—challenge the adequacy of the DEA's search. As Defendants explain,

"Plaintiffs have failed to engage with the text of their requests and failed to articulate why Defendants' searches were purportedly inadequate." Defs.' Reply at 7. While the burden is on the agency to justify its response to the plaintiff's request, 5 U.S.C. § 552(a)(4)(B), the Court nevertheless calls attention to Plaintiffs' failure to respond to Defendants' argument.

The Court finds that the DEA conducted an adequate search in response to Pompy's FOIA request. An agency must provide a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials… were searched." *Oglesby*, 920 F.2d at 68. Here, the DEA offered Hertel's sworn declaration, which is "accorded a presumption of good faith." *SafeCard Servs., Inc., v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The Hertel declaration avers that all files likely to contain responsive materials were searched: DEA searched NADDIS, the centralized system that indexes all records maintained in IRFS, which houses all of the DEA's criminal law enforcement investigative records; and DEA searched the acquisition database of FA, the office that is responsible for all activities related to contracts. Additionally, the Hertel affidavit explains the search terms that were utilized, reflecting a systematic approach to locating potentially responsive documents, as is required. *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980); *Oglesby*, 920 F.2d at 68. The Court therefore finds that the DEA has satisfactorily demonstrated that they conducted an adequate search for responsive records.

## IV. CONCLUSION

The Court shall therefore **GRANT** Defendant's [59] Motion for Summary Judgment only on the issue of the reasonableness of the DEA's search in response to Plaintiff Pompy's FOIA request. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge