**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| NEIL ANAND, *et al.*,<br>          Plaintiffs,<br><br>     v.<br><br>U.S. DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES, *et al.*,<br>          Defendants. |

Civil Action No. 21-1635 (CKK)

**MEMORANDUM OPINION**
(March 27, 2023)

This lawsuit arises from Freedom of Information Act ("FOIA") requests made by *pro se* Plaintiffs Neil Anand and Lesly Pompy to Defendants United States Department of Health and Human Services ("HHS")' Office of the Inspector General ("OIG") and Drug Enforcement Administration ("DEA").  Plaintiffs Anand and Pompy are physicians who were indicted on multiple criminal counts, including health care fraud and the distribution of controlled substances. *See* Compl., ECF No. 1 at 8; Defs.' Mot. at 1.  To aid in defense of their criminal prosecutions, Plaintiff Anand submitted FOIA requests to both HHS and DEA, and Plaintiff Pompy submitted a FOIA request just to DEA.  After the agencies conducted their searches and made numerous withholdings, Plaintiffs then filed a Complaint seeking declaratory and injunctive relief to compel Defendants to produce certain records.  *See* Compl. at 8, 11.

Before the Court is Defendants' [59] Motion for Summary Judgment against both Plaintiffs Pompy and Anand.  This Opinion addresses only Defendants' Motion as against Plaintiff Anand. Plaintiff Anand opposes Defendants' Motion but has not filed a cross-motion for summary judgment.

Upon review of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion for Summary Judgment as against Plaintiff Anand. The Court will **GRANT** the Motion as to Anand's FOIA request to OIG for "[a]ll information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation… [and] all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery," having found OIG's search to be adequate and withholdings justified. The Court will **GRANT** the Motion as to Anand's FOIA request to DEA. However, the Court will **DENY** the Motion as to Anand's FOIA request to OIG for "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians" because OIG did not notify Anand that his request did not reasonably describe the records sought, as required by regulation or, alternatively, did not provide sufficient explanation as to why a search for this request would be burdensome.

## I.  BACKGROUND

On September 19, 2019, a grand jury indicted Plaintiff Neil Anand on multiple criminal counts, including health care fraud and the distribution of controlled substances. *See* Defs.' Mot. at 1; *United States v. Anand*, Crim. A. No. 19-0518 (E.D. Pa.). Anand thereafter filed two FOIA requests, described below.

### A.  Anand's FOIA Request to HHS OIG

---

[1] The Court's consideration has focused on the following:
- Defendants' Motion for Summary Judgment, ECF No. 59 ("Defs.' Mot.");
- Plaintiffs' Response and Opposition to Defendants' Motion for Summary Judgment, ECF No. 64 ("Pls.' Opp'n");
- Defendants' Reply Memorandum in Support of Motion for Summary Judgment, ECF No. 69 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

On April 17, 2021, Plaintiff Anand submitted a FOIA request to HHS's Office of the

Inspector General ("OIG") seeking:

> All information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation, all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians, all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery.

Defs.' Mot. Ex. 1.  Anand requested this information from October 1, 2015 to September 25, 2019.

*Id.*  OIG concluded that Anand's request for "all reports from Blue Cross Blue Shield corporation

to OIG concerning improper prescribing of opiates by specific physicians" was too vague and

therefore did not search for this material.  Defs.' Mot. at 2–3 (citing Defs.' Mot. Ex. 4 (hereinafter

"Brooks Decl.") ¶ 10).  OIG considered the remaining portions of Anand's request and determined

that OIG's Office of Investigations could possess responsive records; therefore, OIG sent the

request to that Office.  *Id.* at 3 (citing Brooks Decl. ¶¶ 10–11).  The Office of Investigations located

one case file where Anand was the subject of investigation and then reviewed all documents in that

electronic case file for documents pertaining to Anand's request.  *Id.* (citing Brooks Decl. ¶ 10).

On April 23, 2021, OIG withheld all responsive documents in that case file under FOIA Exemption

7(A).  *Id.*  (citing Brooks Decl. ¶ 13).

While this action was pending, the Centers for Medicaid and Medicare, a separate

component of HHS, located responsive records and released them to Anand on June 15, 2022 with

certain portions withheld pursuant to FOIA Exemptions 3, 4, and 6.  *Id.* at 4 (citing Brooks Decl. ¶

17).  In June 2022, OIG conducted a supplemental search of its law enforcement database to locate

any records that its initial search had excluded by using the term "the Pill Mill Doctor Project"

instead of "Pill Mill Doctor Project."  *Id.* (citing Brooks Decl. ¶ 18).  After locating responsive

investigative reports, OIG released closed investigative reports with certain portions withheld

pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E), and withheld open investigative reports entirely

pursuant to Exemptions 5, 6, 7(A), and 7(C).  *Id.*  OIG also released sixty-one pages of publicly

available documents from Anand's case file in their entirety.  *Id.*

**B.  Anand's FOIA Request to DEA**

The same day Anand submitted his request to OIG, he also submitted a FOIA request to the

DEA seeking "all drug enforcement agency documents concerning Neil Anand, Institute of

Advanced Medicine and Surgery, Anand Medical Investment, Paul Soccio."  Defs.' Mot. Ex. A.

All DEA criminal law enforcement investigative records are maintained as part of the DEA

Investigative Reporting and Filing System ("IRFS"), and DEA uses its Narcotics and Dangerous

Drugs Information System ("NADDIS") to locate records maintained as part of IRFS.  Defs.' Mot.

at 5 (citing Defs.' Ex. 11 (hereinafter "Hertel Decl." ¶¶ 6–7)).  Upon receiving Anand's FOIA

request, DEA searched IRFS by querying NADDIS using the term "Neil Anand", which resulted in

the identification of three investigative case numbers.  *Id.* (citing Hertel Decl. ¶ 14).  Because of

Anand's ongoing criminal proceeding, DEA withheld in full all responsive records pursuant to

Privacy Act Exemption (j)(2) and FOIA Exemption 7(A), and also asserted FOIA Exemptions 5, 6,

7(C), 7(D), 7(E), and 7(F) for information within those records.  *Id.*

DEA also searched IRFS by querying NADDIS using the terms "Institute of Advanced

Medicine and Surgery" and, separately, "Anand Medical Investment."  *Id.* (citing Hertel Decl. ¶

15).  DEA located no records responsive to this request.  *Id.*

As for Anand's request for records concerning Paul Soccio, DEA did not conduct a search

because it is standard practice to deny the request for investigative records about a third party.  *Id.*

(citing Hertel Decl. ¶ 16).  DEA therefore issued a *Glomar* response pursuant to Exemptions 6 and

7(C).  *Id.*

### C. Present Litigation

Plaintiff Lesly Pompy filed a separate FOIA request to the DEA in April 2021.  *See* Defs.'
Mot. Ex. F.  On June 11, 2021, Plaintiffs Anand and Pompy filed the Complaint in this action.  *See*
Compl., ECF No. 1.  Plaintiffs state that they are physicians interested in "all data analytics
algorithms used in Pill Mill Doctor Project, Waste Fraud and Abuse, Medicare Opiate Risk Tool
'Pill Mill Risk Analysis' software and other Health Care Fraud Prevention and Enforcement Action
Team… initiatives" as well as "all reports and work products generated by contractor Qlarant
Corporation concerning the Pill Mill Doctor Project" and "all reports from Blue Cross Blue Shield
Corporation to [Office of the Inspector General] concerning improper prescribing of opiates by
specific physicians," among other information.  Compl. ¶ 4–5.  The Court has twice denied
Plaintiffs' Motions for Leave to File an Amended Complaint.  *See* Order, ECF No. 26; Mem. Op. &
Order, ECF No. 38.

Defendants filed the pending [59] Motion for Summary Judgment.  In their Motion,
Defendants explain that throughout the course of this litigation, there has been confusion regarding
which FOIA requests are at issue.  Defs.' Mot. at 1.  The only FOIA request referenced in
Plaintiff's "Complaint for Declaratory and Injunctive Relief (Addendum)" or discussed in the
Complaint's exhibits is the one submitted by Plaintiff Anand to HHS.  *Id.* at 1–2 (citing Compl. at
7–11, 19–22).  Nevertheless, Defendants state that "[g]iven Plaintiffs' *pro se* status and given that
Plaintiffs did name DEA as a defendant, Defendants will address all three FOIA requests and agree
to treat all three FOIA requests as at issue in the Complaint."  *Id.* at 2.

Defendants' [59] Motion was then fully briefed for the Court's consideration.  This Opinion
decides the Motion only as to Plaintiff Anand.

## II.  LEGAL STANDARD

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552, to "pierce the veil of

administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (citation omitted), *cert. denied*, 507 U.S. 984 (1993). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material." *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1261–62 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 131 S. Ct. at 1262 (citations omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (PLF) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007) (PLF)). "The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (RC) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). "If an agency's affidavit describes the justifications

for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted).  "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted).

### III.  DISCUSSION

Defendants HHS and DEA seek summary judgment against Plaintiff Neil Anand.  The Court concludes that Defendant HHS carried their burden of demonstrating that they conducted an adequate search for records responsive to certain parts of Plaintiff Anand's FOIA request to HHS OIG—specifically, his request for "[a]ll information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation… [and] all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery."  The Court also concludes that OIG withheld responsive records appropriately.

However, the Court finds that Defendant HHS did *not* carry their burden of demonstrating that they conducted an adequate search for Anand's request for "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians." OIG did not notify Anand that his request did not reasonably describe the records sought, as required by regulation or, alternatively, did not provide sufficient explanation as to why a search for this request would be burdensome.

As for Defendant DEA, the Court concludes that they carried their burden of demonstrating that they conducted an adequate search for Plaintiff Anand's FOIA request to DEA and asserted

proper withholdings.  For these reasons, as explained further below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion for Summary Judgment as against Plaintiff Anand.

The Court first begins with a discussion of Plaintiff Anand and Pompy's opposition to Defendants' Motion for Summary Judgment, which they filed together.  The Court then turns to addressing the merits of Defendants' Motion as to Plaintiff Anand.

### A. Plaintiffs' Briefing

The Court finds that Plaintiffs' opposition to Defendants' Motion for Summary Judgment violates numerous rules and Court orders.  Plaintiffs' violative conduct has been a pattern throughout this entire litigation.  *See, e.g.*, Mem. Op. & Order, ECF No 79 at 2–6, 12–13 (describing numerous motions and filings that have been in violation of Court order or rule or have otherwise been submitted in a frivolous or harassing nature).  Although *pro se* litigants are held to a more lenient standard than those represented by counsel, they must nevertheless comply with the Federal Rules of Civil Procedure, Local Rules of Civil Procedure, and court orders.  *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993) (citation and internal quotation marks omitted); *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987) (Penn, J.); *Garlington v. D.C. Water & Sewer Auth'y*, 62 F. Supp. 3d 23, 27 (D.D.C. 2014) (BAH).  The Court will now address numerous violations and deficiencies related to the Plaintiffs' briefing.

#### 1. Forty-Five Page Limit on Memorandum

First, Plaintiffs have attempted to circumvent the forty-five page limit on a responsive memorandum as imposed by Local Civil Rule 7(e) and the Court's [44] Scheduling and Procedures Order.  Local Rule 7(e) states that "[a] memorandum of points and authorities in support of or in opposition to a motion shall not exceed 45 pages… without prior approval of the Court."  LCvR 7(e).  The Court's Scheduling and Procedures Order, which set forth requirements for the parties' briefing on Defendants' Motion for Summary Judgment, states that "[m]emoranda of points and

authorities filed in support of or in opposition to any motion may not, without leave of the Court, exceed forty-five (45) pages."  ECF No. 44. at 2.

Plaintiffs Anand and Pompy filed together a response to Defendants' Motion for Summary Judgment.  *See generally* Pls.' Opp'n.  Such filing includes numerous documents, including a 45-page "Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment."  In this Memorandum, Plaintiffs do not specifically address or respond to any of the arguments raised in Defendants' Motion.  Instead, Plaintiffs relitigate motions the Court has already decided, *see, e.g.*, *id.* at 7–8, discuss irrelevant legal standards, *see, e.g.*, *id.* at 12–13, and make conclusory remarks such as, among others, that they "have identified specific facts that would create a genuine material-fact dispute" without then enumerating such facts, *id.* at 10.  They spend the vast majority of their briefing explaining their planned uses of the information they requested via FOIA: to aid in defense of their criminal prosecutions.  *See id.* at 18–44; *see also* Defs.' Reply at 1 ("Plaintiffs have filed a 45-page opposition that is little more than an airing of purported grievances with the criminal proceedings initiated against them").  The closest Plaintiffs come in their Memorandum to responding to Defendants' Motion is when they claim that "DEA [] searches were unreasonable and legally insufficient," Pls.' Opp'n at 3; however, they then fail to explain why.  In other words, Plaintiffs do not make any pertinent legal arguments or raise genuinely disputed material facts in their Memorandum.

Plaintiffs also include in their filing a 28-page section titled "Defendants' Specific Statements of Material Fact That Are Opposed by Plaintiffs" (hereinafter referred to as "Plaintiffs' Opposing Responses").  *See* Pls.' Opp'n at 53–80.  In these pages, Plaintiffs include various excerpts from Defendants' Motion and present an "Opposing Response" for each.  It is in this section—*not* Plaintiffs' Memorandum—that Plaintiffs finally address some of Defendants' arguments.  For example, in statement "E", Plaintiffs include numerous citations to case law and

talk about "well settled" legal principles, Pls.' Opp'n at 56, and in statement "J", they outline and discuss requirements for a certain claimed exemption, *id.* at 60.  In reply, Defendants contend that they "harbor serious concerns that Plaintiffs' inclusion of legal arguments in their addendum that were omitted from Plaintiffs' 45-page brief constitutes an improper attempt to circumvent the 45-page limit for their brief."  Defs.' Reply at 6.  The Court agrees.

Courts in this Circuit have condemned briefing for comparable reasons.  For example, where a *pro se* plaintiff "attempt[ed] to incorporate 129 pages of external documents to supply the factual information necessary to support her allegations, bringing her Opposition and its attachments up to a total of 173 pages in length," the court found that to "violate the 45-page limit on briefs."  *Spence v. U.S. Dep't of Veterans Affs.*, No 19-1947 (JEB), 2022 WL 3354726, at *4 (D.D.C. Aug. 12, 2022).  Where parties "respond[ed] to important substantive issues in footnotes," the court held that "to be an attempt to circumvent the page limits set forth in the Local Civil Rules."  *Ohio Head Start Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.*, 873 F. Supp. 2d 335, 344 (D.D.C. 2012) (CKK).  In another instance, a plaintiff filed a responsive statement of facts as well as a separate statement of additional facts that together totaled 402 pages and included legal arguments; the court wrote that it "declines to permit Plaintiff to circumvent the page limit for responsive memoranda established in this Court's [] Scheduling Order by way of the submission of such extensive statements."  *Hajjar-Nejad v. George Washington Univ.*, No. 10-626 (CKK), 2013 WL 12407402, at *1–*2 (D.D.C. May 13, 2013).  And in a case where the defendant addressed plaintiff's arguments in an unauthorized 44-page addendum rather than its memorandum, the court "warned" defendant that "it must strictly follow both the Federal Rules of Civil Procedure and the Local Civil Rules."  *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 211 n. 14 (D.D.C. 2018) (EGS/GMH).

Here, Plaintiffs present relevant and responsive legal arguments only in their filing titled

"Defendants' Specific Statements of Material Fact That Are Opposed by Plaintiffs." The Court finds that where Plaintiffs present such legal arguments *only* in attachments *outside* of their Memorandum, that constitutes an attempt to circumvent the 45-page limit imposed by Local Rule 7(e) and affirmed by the Court's [44] Order. Therefore, to the extent that the Court could consider incorporating Plaintiffs' Opposing Responses to be part of, or even an addendum to, Plaintiff's Memorandum, such responses would be in violation of Local Rule 7(e) and the Court's [44] Order.

### 2. Statement of Genuine Issues

Plaintiffs have also failed to comply with requirements governing their Statement of Genuine Issues. Local Civil Rule 7(h) requires "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h)(1). The Rule continues that "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id.* Courts have made clear that "when faced with a motion for summary judgment, a *pro se* plaintiff, just like a represented party, must comply with a court's rules regarding responses to statements of material fact and the need to identify record evidence that establishes each element of his claim for relief." *MacLeod v. U.S. Dep't of Homeland Sec.*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *7 (D.D.C. Sept. 21, 2017) (citing *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015)).

The Court emphasized in its Scheduling and Procedures Order that it "strictly adheres to the dictates of Local Civil Rule 7(h)." ECF No. 44 at 2. The Court continued that "[t]he party responding to a statement of material facts must respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied." *Id.* at 3. "The

responding party must include any information relevant to its response in its correspondingly numbered paragraph, with specific citations to the record. However, if the responding party has additional facts that are not directly relevant to its response, it must identify such facts in consecutively numbered paragraphs at the end of its responsive statement of facts." *Id.* Finally, "[t]he parties must furnish precise citations to the portions of the record on which they rely; the Court need not consider materials not specifically identified." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A), (c)(3)).

The Court also reiterated some of these requirements in its [60] Order apprising *pro se* Plaintiffs Anand and Pompy of the consequences of failing to respond to a dispositive motion. *See* ECF No. 60 (citing *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988)). In the [60] Order, the Court included relevant portions of Federal Rules of Civil Procedure, specifically Rules 56(c) and (e). *Id.* at 2 (citing Fed. R. Civ. P. 56(c), (e)). Rule 56(c) states that "[a] party asserting that a fact… is genuinely disputed must support the assertion by: [] citing to particular parts of materials in the record…; or [] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). According to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact… the court may… [] consider the fact undisputed for purposes of the motion; [] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." *Id.* 56(e).

Here, Plaintiffs present a Statement of Genuine Issues titled "Plaintiffs' Responses and Answers to Defendants' 'Statement of Material Facts as to Which There is No Genuine Dispute.'" *See* Pls.' Opp'n at 53. Plaintiffs admit to eight of Defendants' nine statements in their entirety. *Id.* Plaintiffs deny only Defendants' final statement, in which Defendants state, before citing to two

affidavits, that "[t]hroughout the administrative processing of Plaintiffs' FOIA request, Defendants carefully reviewed all the documents responsive to the request for reasonable segregation of nonexempt information and released all non-exempt information."  Defs.' Mot., Statement of Material Facts.  In response, Plaintiffs write: "Denied in whole.  Plaintiffs vehemently disagree that Defendants carefully reviewed all the documents responsive to the request for reasonable segregation of non-exempt information, and in good faith, released all non-exempt information." Pls.' Opp'n at 53.

Plaintiffs' denial fails to adhere to Local Rule 7(h), Federal Rule of Civil Procedure 56, the Court's [44] Order, and the Court's [60] Order because it does not include specific citations to parts of the record (or even vague references), nor does it set forth any facts to support this claim (or any evidence at all).  Plaintiffs instead present only one conclusory sentence.

Plaintiffs' deviation from Local Civil Rule 7(h) undermines the Rule's purpose, which is to assist the Court in quickly determining if any facts are actually in dispute. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996).  Without this Rule, courts would be "obligated to sift through hundreds of pages of [documents] in order to make [their] own analysis and determination of what may, or may not, be a genuine issue of material disputed fact." *Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002).  And that is the case here— without any citations to the record nor suggested factual support, the Court is left with the task of weeding through Plaintiffs' lengthy filings to identify any disputed facts and make sense of Plaintiffs' briefing, which, as noted above, is devoid of responsive legal argumentation in the sections it should be present.

As Plaintiffs have failed to properly dispute Defendants' assertion, the Court can take Defendants' statement as undisputed.  *See* LCvR 7(h)(1); Fed. R. Civ. P. 56(e).

### 3. Plaintiffs' Opposing Responses

After its short Statement of Genuine Issues, Plaintiff includes a section titled "Defendants' Specific Statements of Material Fact That Are Opposed by Plaintiffs," to which the Court is referring as "Plaintiffs' Opposing Responses." *See* Pls.' Opp'n at 53–81. To the extent the Court could consider Plaintiffs' Opposing Responses to be part of its Memorandum, it would be wildly over the 45-page limit, as addressed above. To the extent the Court could generously consider Plaintiffs' Opposing Responses to be part of its Statement of Genuine Issues, such responses would also fail to comply with the relevant rules.

First, considering Plaintiffs' Opposing Responses to be part of its Statement of Genuine Issues, the responses impermissibly blend law with fact. As the Court explained earlier, it is in these pages that Plaintiffs present some legal arguments addressing Defendants' Motion. For example, in statement "D", they go so far as to write that "Plaintiffs *argue* that Defendants are acting in bad faith…", thereby plainly making an argument rather than presenting facts. Pls.' Opp'n at 55 (emphasis added). Adding to the confusion, some parts of Plaintiffs' Opposing Responses contain legal arguments responsive to Defendants' Motion, while others include legal arguments that are nonresponsive and irrelevant to the Motion before the Court. Per the strictures of Local Rule 7(h), a statement of genuine issues should only include factual references. "[B]lending factual assertions with legal argument… does not satisfy the purposes of [Rule 7(h)]." *Jackson*, 101 F.3d at 153. Accordingly, Plaintiffs' Opposing Responses violate Local Rule 7(h) by blending facts with legal argument.

Second, Plaintiffs' Opposing Responses fail to include citations to particular parts of the record, as is required by Local Rule 7(h) and Federal Rule of Civil Procedure 56(c) as well as the Court's [44] Order. For statements "A" and "D", Plaintiffs generally reference "Joint Status Reports [f]iled… and… one hundred and twenty one (121) Exhibits" but do not cite to any specific

14

exhibits.  *See* Pls.' Opp'n at 53. 55.  For statements "E", "F", "G", "I", and "N", Plaintiffs cite to

specific exhibits but do not provide citations to particular pages.  *See id.* at 55–59, 65–67.  Finally,

for statements "B", "H", "J", "K", "L", "M", "O", "P", "Q", "R", "S", "T", Plaintiffs do not

include any mention of exhibits or any other information in the record at all.  *See id.* at 54–55, 58–

65, 67–80.  Plaintiffs' failure to provide specific citations to the record is plainly insufficient under

the required standards.  *See, e.g.*, *Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 123, 127

(D.D.C. 2010) (CKK); *Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 8 (D.D.C. 2002) (RMU).

 Finally, Plaintiffs' Opposing Responses fail to adhere to the requirement of being concise,

as required by Local Rule 7(h).  The Court acknowledges that there is no page limit on a parties'

filings in responding to a motion, including for their statement of genuine issues.  *See Taylor v.*

*Mills*, 892 F. Supp. 2d 124, 135 n.16 (D.D.C. 2012) (BAH) (noting that the 45-page limit refers

only to the "memorandum" of law and not any other attachments).  And the Court does not take

great issue with the fact that Plaintiffs offer twenty-eight pages of Opposing Responses in

comparison to Defendants' three-page Statement of Material Facts.  However, the rules do require a

"*concise* statement of genuine issues."  LCvR 7(h)(1) (emphasis added); *see Hajjar-Nejad*, No. 10-

626 at *1 ("While it is true that the Local Rules of this Court do not stipulate a page limit for the

responding party's statement of facts, the rules do require that the statement be 'concise' and set

forth only the 'facts' as to which it is contended there exists a 'genuine' issue necessary to be

litigated.").  This statement is not an opportunity to flood the Court with facts or argumentation

extraneous to the claims at issue in the case.  *See Potter v. District of Columbia*, 558 F.3d 542, 553

(D.C. Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs or the record.")

(citation and internal quotes omitted).  As noted above, these rules are in place to ensure that the

Court is directed to any disputed or undisputed facts—easily identifiable based on citations to the

record—upon which to make its ruling.

Here, Plaintiffs' Opposing Responses are far from concise.  Instead, they include long strings of addresses and phone numbers for government agencies, Pls.' Opp'n at 54; musings on "[a] bedrock principle of our democracy," *id.* at 56, and "core values of the Republic," *id.* at 63; testimony from an unrelated criminal trial that does not respond to Defendants' assertions, *id.* at 57, discussion of the Fourth Amendment, *id.* at 70, and much more.

All in all, Plaintiffs' Opposing Responses, whether considered part of Plaintiffs' Memorandum or Statement of Genuine Issues, are in contravention of various rules.  This supports the same outcome as reached above: because Plaintiffs have failed to properly dispute Defendants' assertion that "[t]hroughout the administrative processing of Plaintiffs' FOIA request, Defendants carefully reviewed all the documents responsive to the request for reasonable segregation of nonexempt information and released all non-exempt information," the Court can take Defendants' statement as undisputed.  *See* LCvR 7(h)(1); Fed. R. Civ. P. 56(e).

### 4. Plaintiffs' "Affidavits"

Finally, Plaintiffs did not submit affidavits sufficient to rebut those offered by Defendants. The Court provided Plaintiffs with notice—using language written specifically for *pro se* litigants––explaining that they "must rebut the moving party's affidavits with other affidavits or sworn statements."  ECF No. 60 at 1.  The Court's [60] Order further explains that "any factual assertions in the movant's affidavits will be accepted by the district judge as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion."  *Id.* (citing *Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982))).  The Order also included relevant portions of Federal Rule of Civil Procedure 56, including that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

Plaintiff Pompy and Anand both submitted filings titled as affidavits and to which they refer as affidavits.  *See* Pls.' Opp'n Exs. 2, 3.  Pompy's document is electronically signed by Pompy, Pls' Opp'n Ex. 3 at 40, as well as in ink by a notary, *id.* at 41.  The notary stated that "before me… personally appeared, Lesly Pompy, personally known to me, or proven on the basis of satisfactory evidence, to be Lesly Pompy.  He has acknowledged to me to have executed, and that it is his signature on the instrument, the person who has executed the instrument."  *Id.* at 41.  Anand's document is signed in ink by both himself and a notary.  Pls.' Opp'n Ex. 2 at 36.  The notary included a similar statement as to that in Pompy's document.  *Id.*  The Court finds that these filings do not adhere to the requirements for an affidavit or any other sworn statement.

An unsworn declaration may be treated as an affidavit if the person, in writing, certifies under penalty of perjury that the allegations contained in the complaint are true and correct.  *See* 28 U.S.C. § 1746.  Here, although captioned as "affidavits," Plaintiffs' statements are unsworn and contain no affirmation that they were offered under penalty of perjury.  Other courts have found similar documents to not be considered affidavits nor any other form of sworn document for consideration at the summary judgment stage.  *See, e.g.*, *Asia N. Am. Eastbound Rate Agreement v. Amsia Int'l Corp.*, 884 F. Supp. 5, 6 (D.D.C. 1995) (Harris, J.); *Kirkland v. McAleenan*, No 13-194 (RDM), 2019 WL 7067046, at *19–*20 (D.D.C. Dec. 23, 2019).

As a result, Plaintiffs' statements cannot aid them in rebutting Defendants' Motion for Summary Judgment.  More specifically, their failure to provide the proper affidavits bars them from disputing Defendants' sworn affidavits.  *See Oviedo v. Wash. Metro. Area Transp. Auth.*, 948 F.3d 386, 397 (D.C. Cir. 2020) (citing Fed. R. Civ. P. 56(c), (e); *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) ("[L]ike the district court, we treat as admitted all facts not controverted in [the plaintiff's] Verified Statement.")).  In other words, the Court may, pursuant to Federal Rule of Civil Procedure 56(e), consider any facts raised in Defendants' affidavits to be

undisputed because Plaintiffs failed to properly rebut them.  The Court notes that because it

provided notice of the potential repercussions to Plaintiffs in the [60] Order, it would be acting

"perfectly within its authority" to do so without giving *pro se* Plaintiffs a second warning.  *Oviedo*,

948 F.3d at 398.

Finally, the Court notes that even if it could rely on Plaintiffs' statements, the statements do

not include information that rebuts or even casts into doubt the pertinent parts of Defendants'

affidavits.  Instead, Plaintiffs' statements rehash and explain other topics, including Plaintiffs'

desire for the materials requested via FOIA, as is a recurrent theme throughout Plaintiffs' briefing.

*See, e.g.*, Pls.' Opp'n Ex. 3 at 13 (explaining that "[t]he plaintiff seeks to understand the compelling

or legitimate interest of the government, whether the government primarily seeks opioid control

first, and then pain control second"), 14 (stating that "Plaintiff Pompy needs the timely release of

discovery" to assist him in his criminal trial).

\*     \*     \*

The Court's above discussion of Plaintiffs' briefing lays important groundwork for the

analysis that now follows.  As explained numerous times, if a fact has not been properly supported

or addressed pursuant to Federal Rule of Civil Procedure 56(c), a court can consider it undisputed

under Rule 56(e).  *See Grimes*, 794 F.3d at 92.  The United States Court of Appeals for the District

of Columbia Circuit has explained that "for the evidentiary burden that Rule 56(c) places on

nonmovant plaintiffs to function, a court must be able to evaluate an inadequately supported

assertion of material fact and deem it not materially disputed, such that summary judgment is

warranted in whole or in part."  *Id.*  The Court moves forward with this in mind.

The Court now turns to the merits of Defendants' Motion for Summary Judgment.  Plaintiff

Anand submitted two FOIA requests: one to HHS OIG and the other to DEA.  The Court will

consider each one in turn, beginning with Anand's FOIA request to OIG.

**B. Plaintiff Anand's FOIA Request to HHS OIG**

The Court finds that OIG satisfied its burden only for some parts of Anand's FOIA request. Specifically, the Court finds that OIG's search was adequate and withholdings justified for Anand's FOIA request to OIG for "[a]ll information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation… [and] all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery."  However, OIG's search was not adequate for Anand's request for "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians" because OIG did not notify Anand that his request did not reasonably describe the records sought, as required by regulation or, alternatively, did not provide sufficient explanation as to why a search for this request would be burdensome.

The Court begins by addressing the adequacy of the agency's search before turning to withholdings.

**1. Adequacy of Search**

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal citation and quotation marks omitted).  "At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'"  *Id.* at 326 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also DiBacco v. U.S Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (same).  Summary judgment must be denied "if a review of the record raises

substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials." *DiBacco*, 795 F.3d at 188 (internal citation and quotation marks omitted).

Defendants state—and, as explained thoroughly above, the Court can take as undisputed—that "[t]hroughout the administrative processing of Plaintiffs' FOIA request, Defendants carefully reviewed *all* the documents responsive to the request…." Defs.' Mot., Statement of Material Facts (emphasis added). In their Memorandum, Defendants contend that "HHS conducted a reasonable and legally sufficient search for records responsive to Plaintiff Anand's FOIA request." Defs.' Mot. at 11. To support this contention, they include the sworn declaration of Robin Brooks, Director of the Freedom of Information Act Division of HHS OIG. *See* Defs.' Ex. 4 ("Brooks Decl."). Robin Brooks' affidavit is "accorded a presumption of good faith." *SafeCard Servs., Inc., v. Secs. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Anand's FOIA request to OIG can be separated into five categories: (1) "all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery"; (2) "[a]ll information concerning data analytics algorithms used in the Pill Mill Doctor Project"; (3) "all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project"; (4) "statement of work and official contract of Qlarant corporation"; and (5) "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians.

### i.    Anand's Request for Documents About Pill Mill Doctor Project, Neil Anand, or Institute of Advanced Medicine and Surgery

For the purposes of analysis, the Court groups together categories (1), (2), and (3) as delineated above. Brooks explains that after receiving and reviewing Anand's FOIA request, OIG determined that the OIG Office of Investigations ("OI") was the only OIG office reasonably likely to possess responsive records regarding the Pill Mill Doctor Project, Neil Anand, and/or the

Institute of Advanced Medicine and Surgery.  Brooks Decl. ¶ 10.  OIG therefore sent Anand's FOIA request to OI.  *Id.* ¶ 11.  OI then conducted a search of its law enforcement database, which "houses all investigations conducted by OI, including complaints as well as documents related to civil and criminal cases."  *Id.*

An agency need only search the record system most likely to contain the requested information; it need not search every one of its record systems.  *Oglesby*, 920 F.2d at 67; *see also Huntington v. U.S. Dep't of Com.*, 234 F. Supp. 3d 94, 103 (D.D.C. 2017) (JEB).  Therefore, OIG's determinations that OI was the only office reasonably likely to possess responsive records regarding the Pill Mill Doctor Project, Neil Anand, and/or the Institute of Advanced Medicine and Surgery was reasonable, as was the fact that OI confined its subsequent search to its law enforcement database, which houses all investigations conducted by OI.

OI searched its law enforcement database for records containing the terms "Anand," the "Institute of Advanced Medicine and Surgery," "Qlarant," or "the Pill Mill Doctor Project."  Brooks Decl. ¶ 11.  This search located one responsive case file, in which Anand was the subject of investigation (hereinafter referred as "Anand case file").  *Id.*  OI then "reviewed all the documents in the electronic case file for documents pertaining to Mr. Anand, the Institute of Advanced Medicine and Surgery, Qlarant, or the Pill Mill Doctor Project."  *Id.*  OI located records regarding Neil Anand and the Institute of Advanced Medicine and Surgery; however, they failed to locate any records regarding the Pill Mill Doctor Project nor any documents from Qlarant.  *Id.* ¶ 12.  OIG withheld the responsive records pursuant to FOIA exemptions, which will be discussed later.  *Id.* ¶ 13.

OIG conducted a supplemental search of its law enforcement database in June 2022 using the term "Pill Mill Doctor Project" instead of "the Pill Mill Doctor Project," which was the search term used previously.  *Id.* ¶ 18.  This supplemental search yielded closed investigative reports

comprising 774 pages; OIG released these pages with portions withheld pursuant to various FOIA exemptions, which will be discussed later. *Id.* The search also yielded open investigative reports totaling 74 pages, which OIG fully withheld pursuant to exemptions discussed later. *Id.*

These descriptions, as sworn to in the Brooks affidavit, denote which files were searched, by whom, and what search terms were utilized, and reflect a systematic approach to locating potentially responsive documents, as is required. *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980); *Oglesby*, 920 F.2d at 68.

Accordingly, the Court finds that OIG's search related to these three categories of Anand's request was adequate under the legal standard.

> ## ii.   Anand's Request for Statement of Work and Official Contract of Qlarant Corporation

The Court next turns to category (4) as delineated above. Per Brooks' affidavit, "a statement of work and/or contract with Qlarant, to the extent they exist, would be outside the scope of OIG's investigative work." Brooks Decl. ¶ 12. In other words, OIG determined that it would not be likely to have any records responsive to this part of Anand's request.

In June 2022, the Centers for Medicaid and Medicare ("CMS")—a separate component of HHS and one to which Anand did not submit his FOIA request—located 151 pages related to the statement of work and official contract of Qlarant that it had previously released in response to unrelated FOIA requests. *Id.* ¶ 17. OIG released these pages to Anand with portions withheld pursuant to various FOIA exemptions, which will be discussed later. *Id.*

The Court finds that OIG's initial determination regarding this category of Anand's request was reasonable. FOIA requires only that the agency search for and produce documents in its possession, not search for records across the entire federal government. *See, e.g., McGhee v. C.I.A.*, 697 F.2d 1095, 1109 (D.C. Cir. 1983). In other words, there is no "affirmative obligation to

search for records in all agencies." *Ryan v. FBI*, 113 F. Supp. 3d 356, 364 (D.D.C. 2015) (TSC).

### iii.   Anand's Request Related to Blue Cross Blue Shield

Finally, the Court turns to category (5) as delineated above: "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians' was too vague and did not reasonably describe the records he sought." The Court reads Defendants' briefing as providing two different explanations for why OIG did not conduct a search for this information: first, that Anand's did not reasonably describe the records sought; second, that Anand's request would be too burdensome. The Court finds that neither explanation is sufficient.

First, Defendants claim that "[u]pon receiving the FOIA request, OIG concluded that [this part of Anand's request] was too vague and did not reasonably describe the records sought." Defs.' Mot. at 2 (citing Brooks Decl. ¶ 10). It is well-established that "a request which fails to 'reasonably describe [ ]' the documents sought does not trigger a search of agency records." *Truitt v. Dep't of State*, 897 F.2d 540, 544 (D.C. Cir. 1990) (citing 5 U.S.C. § 552(a)(3) (1988)). "The linchpin inquiry" is "whether 'the agency is able to determine precisely what records are being requested.'" *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454 (D.D.C. 2014) (RCL) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)). "Broad, sweeping requests lacking specificity are not sufficient." *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (Bates, J.).

Plaintiff Anand requested "*all* reports from Blue Cross Blue Shield corporation to OIG *concerning improper* prescribing of opiates by specific physicians." Defs.' Mot. Ex. 1 (emphasis added). Courts in this Circuit routinely hold that similar requests seeking all documents or reports concerning a particular topic or person do not reasonably describe the records sought. For example, in *Hunt v. Commodity Futures Trading Comm'n*, 484 F. Supp. 47 (D.D.C. 1979) (Green, J.), the plaintiffs sought information that "concerned" them, *id.* at 51. The court found that "[p]laintiffs had the duty to specify more carefully the information they were seeking." *Id.*

Similarly, in *Fonda v. CIA*, 434 F. Supp. 498 (D.D.C. 1977) (Pratt, J.), the plaintiff sought documents that "concern her," *id.* at 501. The court explained that "[t]he difficulties in such an open-ended search are apparent[] [because] [p]laintiff offers no criterion by which defendants can determine which documents 'concern her.'" *Id.*

The same is true for requests seeking information "pertaining to" or "relating to" a person or topic. *See Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (CRC) (considering FOIA requests "seeking records 'pertaining to,' 'relating to,' or 'concerning' [a specified person or topic]" to be similarly vague). In *Sack v. CIA*, 53 F. Supp. 3d 154 (D.D.C. 2014) (EGS), the plaintiff sought all "documents *pertaining* in whole or in part… to a list of closed Inspector General investigations and reports," *id.* at 163 (emphasis added). The court held that because "a record may pertain to something without specifically mentioning it," the request's "lack of clarity leaves the agency to guess at the plaintiff's intent." *Id.* at 164. The agency "would [] have needed to devise a method to search for records that do not mention a list of closed Inspector General investigations and reports, but still somehow pertain to such a list," which, the court found, "borders on the all-encompassing fishing expedition on which a FOIA requester cannot embark." *Id.* (quotation and citation omitted). There are numerous examples of courts coming to the same conclusions in like cases. *See Shapiro*, 170 F. Supp. 3d at 155 n.3 (compiling cases).

Finally, the Court believes there is latitude in what constitutes "*improper* prescribing of opiates" such that it would not allow HHS to identify the records sought. Defs.' Mot. Ex. 1 (emphasis added); *see U.S. v. Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991) (when discussing 18 U.S.C. § 1505, stating that a "[w]ord[] like… 'improper'" is not specific); *United Food & Commercial Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1213 (D. Ariz. 2013) (finding a state labor statute "unconstitutionally vague because of the phrase 'improper purpose'").

The Court agrees with Defendants that Plaintiff's FOIA request for "*all* reports from Blue

24

Cross Blue Shield corporation to OIG *concerning improper* prescribing of opiates by specific physicians" does not reasonably describe the records sought.  However, OIG did not follow the proper protocol to notify Plaintiff of this deficiency.  Although the Court has previously explained that it cannot consider Plaintiffs' Opposing Responses to be part of, or even an addendum to, Plaintiff's Memorandum because the Responses would violate various local and civil rules, the Court does acknowledge that Plaintiff raises a meritorious legal argument therein.  It does not matter that Plaintiff cannot be considered to have raised this argument, because Defendants bear the burden in a FOIA case to show that their search was reasonable

Plaintiff claims that "[n]either… HHS nor OIG, nor any administrative appeal agency mention[ed] that Plaintiff[']s requests were 'vague and did not reasonably describe the records sought.'"  Pls.' Opp'n at 54.  Defendants do not contest the fact that they did not inform Plaintiff that his request was too vague during the course of their processing of records.  *See* Defs.' Reply at 7–8.  Instead, they say that "Plaintiffs have pointed to no statute or regulation that prohibits HHS from arguing this issue in connection with its first motion for summary judgment" and that "HHS has timely raised this issue in its opening motion for summary judgment."  *Id.* at 8.  The Court disagrees.

HHS's processing of FOIA requests is governed by 45 C.F.R. § 5.24.  As a component of HHS, the regulation also governs OIG.  That regulation states, in part, that "[r]equests must reasonably describe the records sought and contain sufficient information to enable the FOIA office to contact you and transmit records to you.  *If we determine that a request does not meet these requirements, we will attempt to contact you if possible*."  45 C.F.R. § 5.24(b)(2) (emphasis added). This requirement to attempt to contact a FOIA requester is in place to ensure that the requester will have "an opportunity to cooperate with the agency to narrow the scope of [their] request" or otherwise tailor it so that it reasonably describes the records sought "without judicial intervention."

*Wright v. U.S. Dep't of Health & Human Servs.*, No. 22-1378, 2022 WL 18024624, at *4 (RC) (D.D.C. Dec. 30, 2022).

However, despite this "clear procedure," *id.* at *3, no one at OIG ever contacted Anand that his request did not reasonably describe the records sought.  Instead, Defendants mentioned this for the first time in their Motion for Summary Judgment.  Other courts faced with similar factual circumstances have found that "HHS's failure to follow its own regulation is fatal to its motion." *Wright*, 2022 WL 18024624, at *4.  The same is true here.  By neglecting the regulation and raising this issue for the first time in a dispositive motion, the Court cannot find that OIG's search was adequate as to this part of Anand's FOIA request.

Defendants offer what the Court interprets as a second reason for their failure to conduct a search for this information.  Defendants explain that "[b]ecause OIG reports are indexed by the subject of the investigation, not submitter, OIG cannot retrieve all reports *from* Blue Cross Blue Shield Corporation to OIG concerning improper prescribing of opiates by specific physicians." Defs.' Mot. at 12 (citing Brooks Decl. ¶ 10) (emphasis added).  According to Brooks, "[a] search for 'Blue Cross Blue Shield' in the OIG database would have returned a voluminous amount of non-responsive claims information." Brooks Decl. ¶ 10.  Defendants claim that as a result, "Plaintiff Anand's request would effectively require HHS to review every single case file and identify whether any reports from Blue Cross Blue Shield Corporation exist within that case file." Defs.' Mot. at 12.  The Court reads Defendants' statements to be a claim that a search for "Blue Cross Blue Shield" would be unreasonably burdensome.  *Cf. Shapiro*, 170 F. Supp. 3d at 156 (considering the agency's argument that documents could not be "locate[d]… with a reasonable amount of effort" to "plainly [be] an argument that a satisfactory response would be too burdensome").

Agencies are not required to conduct searches that would impose unreasonable burdens.

*Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995).

Searching through unindexed files could impose such a burden. *See id.* However, the agency

"bears the burden to 'provide [a] sufficient explanation as to why such a search would be

unreasonably burdensome.'" *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (RC)

(quoting *Nation Mag.*, 71 F.3d at 892). Courts have consistently found that "merely claiming that a

search would be 'costly and take many hours to complete' is insufficient." *Anderson v. U.S. Dep't*

*of State*, 661 F. Supp. 2d 6, 12 n.3 (D.D.C. 2009) (ESH) (quoting *Pub. Citizen, Inc. v. Dep't of*

*Educ.*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003) (ESH)). Instead, courts require a "substantial"

showing," *Tereshchuk*, 67 F. Supp. 3d at 455, that includes "a detailed explanation by the agency

regarding the time and expense of a proposed search in order to assess its reasonableness," *Wolf v.*

*CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (RJL). Where the agency does not produce any

explanation of the time and expense of a proposed search, but rather relies on conclusory

statements from a declarant, a court cannot conclude that such a search would be unduly

burdensome. *See, e.g.*, *Prop. of the People, Inc. v. U.S. Dep't of Justice*, 530 F. Supp. 3d 57, 64

(D.D.C. 2021) (CJN); *Shapiro*, 170 F. Supp. 3d at 155–56.

      Here, Defendants have not included any information regarding the time and expense of

conducting this search, nor any additional details to support that it would be burdensome. Rather,

they rely on Brooks' conclusory statement that there would be a "voluminous amount" of non-

responsive records, Brooks Decl. ¶ 10, to argue that Plaintiff's search "would effectively require

HHS to review every single case file," Defs.' Mot. at 12. Based on these assertions, the Court

cannot find that HHS's search was adequate as to this part of Anand's request on these grounds

either.

*   *   *

      In sum, the Court finds that OIG's search was adequate as to Plaintiff's request for "[a]ll

27

information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation… [and] all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery." However, the Court finds that OIG's search was not adequate as to Plaintiff's request for "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians" and, therefore, the Court will deny in part Defendants' Motion for Summary Judgment as to this part of Anand's request.

The Court now moves on to discuss the withholdings asserted by OIG.

### 2. Withholdings

OIG withheld information under FOIA Exemptions 7(A), 3, 4, 5, 6, 7(C), 7(E), and 7(F). The Court addresses each exemption separately.

### i. FOIA Exemption 7(A)

OIG withheld all responsive documents in the Anand case file under Exemption 7(A). To determine if this was proper, judicial review of an agency's withholding under FOIA Exemption 7 "requires a two-part inquiry": first, whether the relevant information was in fact compiled for law enforcement purposes, and second, whether it fits one of the enumerated standards, *CBP v. Abramson*, 456 U.S. 615, 622 (1982), which here is 7(A).

Regarding the first prong, to show that the disputed documents were "compiled for law enforcement purposes," the agency need only "establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *see also Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987).

Defendants explain that "while HHS is not a law enforcement agency… it may [] assert Exemption 7 to protect records or information compiled for law enforcement purposes."  Defs.' Mot. at 31.  Per the Brooks Declaration, the Anand case file included witness statements and associated HHS-OIG agent notes, Medicare and Medicaid claims information, and information provided by Qlarant to HHS, all of which were prepared or the purpose of investigating possible health care fraud.  *Id.* (citing Brooks Decl. ¶¶ 33–37).  HHS had also compiled records including names and identifying information of case agents involved in the investigation, which was done for law enforcement purposes.  *Id.* (citing Brooks Decl. ¶¶ 41–47).  As HHS is "entitled to deference in its determination that the records were compiled for a law enforcement purpose," *Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 19 (D.D.C. 2014) (BAH)), the Court finds that the documents withheld were in fact compiled for law enforcement purposes. With this threshold matter addressed, the Court now turns to the second prong and discusses 7(A) specifically.

Under Exemption 7(A), "records or information compiled for law enforcement purposes" are exempt from disclosure under FOIA to the extent the disclosure of those materials "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  The principal purpose of this exemption is to "prevent disclosures which might prematurely reveal the government's cases in courts, its evidence and strategies, or the nature, scope, and focus of investigations."  *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000).  "Another recognized goal of Exemption 7(A) is to prevent litigants from identifying and intimidating or harassing witnesses."  *Id.* (citation omitted).

To properly withhold records under 7(A), the government must first identify either "'a concrete prospective law enforcement proceeding'" or an enforcement proceeding that is "pending or reasonably anticipated."  *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 386 (D.C. Cir. 2007) (quoting *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)).  Defendants

explain that Plaintiff Anand is subject to an ongoing criminal investigation that has not yet been resolved.  Defs.' Mot. at 17; *see also* Defs.' [80] Notice ("Plaintiff Neil Anand's criminal proceeding remains ongoing"); Defs.' [81] Notice (providing update on criminal proceeding against Anand).  Specifically, Anand is facing a criminal prosecution in *United States v. Anand*, Crim. A. No. 19-0518 (E.D. Pa.).  The Court therefore finds this first requirement for 7(A) is satisfied.

Second, the government must show that disclosure "could reasonably be expected perceptibly to interfere" with the enforcement proceeding.  *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989).  The agency is not required to make a "specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." *Agrama v. IRS*, 282 F. Supp. 3d 264, 273–74 (D.D.C. 2017) (RMC) (internal citation and quotation marks omitted).  "Rather, federal courts may make generic determinations that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings."  *Id.* (internal citation and quotation marks omitted).

Defendants contend that they "determined that disclosure of all records pertaining to Plaintiffs' investigations could reasonably be expected to interfere with Plaintiffs' criminal proceedings."  Defs.' Mot. at 17.  In particular, Brooks explains that the "premature disclosure of: evidence; witness information; prospective testimony; identification of the evidence likely to be relied upon by the government; the activity under continuing investigation during the litigation; the direction of the government so far; government strategy; the presence or absence of whistleblowers or other undisclosed sources; the scope and limits of the government's investigation; and attorney work product; along with other confidential information" could interfere with these proceedings.  Brooks Decl. ¶ 28.  Brooks continues that "[d]isclosures concerning the details of the investigation risk witness intimidation and the possible silencing of other information sources," and that

"[d]isclosure of these records also risks the concealment of damaging evidence and the fabrication of false evidence." *Id.*

Plaintiff Anand has provided no basis to doubt this representation, and the Court concludes that the agency has shown that the release of responsive documents in the Anand case file could reasonably be expected to interfere with the ongoing criminal proceedings against Anand. Accordingly, the Court concludes that the OIG's withholding of all of the responsive materials in the Anand case file was properly justified on the basis of Exemption 7(A).

Not only did OIG assert FOIA Exemption 7(A) to shield disclosure of the Anand case file in its entirety, but they also asserted other FOIA exemptions for certain materials within the case file. Brooks Decl. ¶ 28. Having found that OIG's withholdings under 7(A) were proper, the Court need not address any additional withholdings asserted for the Anand case file. *Center for Nat'l Sec. Stud. v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003). Nevertheless, for a complete analysis, the Court discusses OIG's additional justifications for withholding documents in the Anand case file where appropriate.

### ii.    FOIA Exemption 3

FOIA Exemption 3 applies to matters that are "specifically exempted from disclosure by [another] statute" if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

OIG withheld Taxpayer Identification Numbers in the Qlarant statement of work and official contract pursuant to 26 U.S.C. § 6103. Brooks Decl. ¶ 21. OIG also withheld Tax Identification Numbers located in closed investigative reports that were responsive to its June 2022 search for "Pill Mill Doctor Project" pursuant to the same statute. *Id.* ¶ 25. It is "beyond dispute" that 26 U.S.C. § 6103 "is the sort of nondisclosure statute contemplated by FOIA Exemption 3,"

which "leave[s] [agencies] with no discretion to reveal those matters publicly." *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997). In addition, § 6103 provides that tax returns and return information "shall be confidential" and prohibits any "officer or employee of the United States" from disclosing such information, subject to certain exceptions. *See Judicial Watch, Inc. v. Soc. Sec. Admin.*, 701 F.3d 379, 380 (D.C. Cir. 2012). Accordingly, the Court finds that OIG properly invoked Exemption 3 for these withholdings pursuant to § 6103.

OIG also withheld the Social Security Number of a deceased individual, located in closed investigative reports responsive to its June 2022 "Pill Mill Doctor Project" search, pursuant to 42 U.S.C. § 1306c. Brooks Decl. ¶ 25. That statute exempts from FOIA disclosure information contained in the Death Master File during the three-year period beginning on the date of that person's death. *See generally* 42 U.S.C. § 1306c. Brooks avers that said individual's death occurred within the past three years. Brooks Decl. ¶ 25. The Court finds that OIG properly invoked Exemption 3 for this withholding pursuant to 42 U.S.C. § 1306c.

Finally, although OIG withheld in full the Anand case file pursuant to Exemption 7(A), they also asserted Exemption 3 for grand jury material contained within that case file. Brooks Decl. ¶ 30. Specifically, the material withheld included "the substance of what was said to the grand jury," "any references to any particular witnesses who testified before the grand jury, "questions and answers to and from witnesses[,] as well as the surveillance reports and notes." *Id.* Brooks explains that this grand jury material is subject to the disclosure restrictions of Rule 6(e) of the Federal Rules of Criminal Procedure, which was enacted by the Act of July 30, 1977, Pub L. No. 95-78, 91 Stat. 319. *Id.* at ¶ 29.

As Rule 6(e) is a statute within the meaning of Exemption 3, grand jury information within the scope of Rule 6(e) would be exempt. *Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868 & n.28 (D.C. Cir. 1981). Here, the information described by Brooks falls within

the scope of 6(e), which is "necessarily broad" and "encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.'" *Id.* at 869 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980)).  The Court finds that OIG properly withheld grand jury material under FOIA Exemption 3.

### iii.   FOIA Exemption 4

FOIA Exemption 4 shields from disclosure "trade secrets and commercial or financial information [that are] obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "Unlike many other types of information subject to an agency's control, materials implicating Exemption 4 are generally not developed within the agency."  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 148 (D.C. Cir. 2006).  Instead, the agency typically has procured the "information from third parties, either by requirement or by request."  *Id.*  "If the requested documents constitute 'trade secrets,' they are exempt from disclosure, and no further inquiry is necessary."  *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1286 (D.C. Cir. 1983). But, where documents instead constitute "commercial or financial information," records are exempt from disclosure only if they are "(1) commercial or financial, (2) obtained from a person, and (3) privileged and confidential." *Id.* at 1289–90.

OIG withheld certain information in the Qlarant statement of work and official contract under Exemption 4, specifically "contract amounts, including Total Estimated Costs, Total Award Fee, Costs, Base Fees, Award Fees, Billing Rate, and Indirect Cost Ceiling Rate."  Brooks Decl. ¶ 22.  According to Brooks, "[t]he bid amounts incorporated into the contract are commercial information that bidders submit to the agency but otherwise keep confidential."  *Id.*  Because OIG withheld commercial information obtained from Qlarant that was confidential, *see* Defs.' Mot. at

24, the three requirements for exemption, as articulated above, are satisfied.  The Court finds that OIG properly withheld this information under FOIA Exemption 4.

### iv.    FOIA Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  It applies to materials that would be privileged in the civil discovery context, such as materials protected by the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  In order to "justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context."  *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996).

The deliberative process privilege "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.'"  *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government[.]"  *Klamath*, 535 U.S. at 8–9 (internal citations and quotation marks omitted).  The privilege "helps to prevent premature disclosure of proposed policies and protects against public confusion through the disclosure of documents suggesting reasons for policy decisions that were ultimately not taken."  *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 258–59 (D.D.C. 2004) (HHK).

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (emphasis in original).  A record qualifies for withholding only if it is both "predecisional" and "deliberative." *Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991).  "A document is predecisional if it is 'generated before the adoption of an agency policy.'" *McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  It is "deliberative" if it reflects "the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866; *see also Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975) ("[T]o come within the privilege and thus within Exemption 5, the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.").  The key question in determining whether the material is deliberative "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Commc'ns Corp. v. U.S. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C. Cir. 1987)).

To meet its burden, an "agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Senate of the Commonwealth of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal States Gas Corp.*, 617 F.2d at 868). However, an agency need not "identify a specific decision in connection with which [materials were] prepared." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975).  Rather, the agency must show that "the document was generated as part of a definable decision-making process." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011) (ESH).

Here, OIG withheld HHS-OIG agent notes about witness statements under Exemption 5, claiming that such notes fell under the deliberative process privilege.  Brooks asserts that these notes are "inter-agency, deliberative, and predecisional" and that they "represent the thoughts and impressions of the HHS-OIG agents as they built their case against Mr. Anand."  Brooks Decl. ¶ 33.  Brooks explains that "[r]eleasing these notes would reveal aspects of the government's strategy in its case against Mr. Anand and would impede the government's ability to prosecute him."  *Id.* The Court finds that OIG has satisfactorily shown that these notes were predecisional in that they were created before they began their case against Anand.  OIG has also satisfactorily shown that the notes were deliberative, as they express "thoughts and impressions" on the government's case against Anand.  Finally, the deliberative decision-making process of which these notes were a part was building the case against, and ultimately prosecuting, Anand.  Therefore, this withholding was proper under Exemption 5.  *Cf. Abtew v. U.S. Dep't of Homeland Sec.*, 47 F. Supp. 3d 98, 103–05 (D.D.C. 2014) (ABJ) (discussing the deliberate process privilege and upholding Exemption 5 application to USCIS document containing author's "personal thoughts about the merits of the asylum case").

OIG also asserted Exemption 5 for Qlarant's analysis of claims data and communications with Qlarant.  Brooks Decl. ¶ 37.  Brooks claims that because Qlarant served as a consultant to the Department, the inter-agency threshold of Exemption 5 is satisfied.  *Id.*  Certain communications between an agency and an outside consultant can be considered "inter-agency or intra-agency" records under FOIA Exemption 5 if the records of communications were "created for the purpose of aiding the agency's deliberative process."  *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990).  Here, Defendants assert that "Qlarant analyzed Medicare and Medicaid claims information to look for trends in billing information and to determine outlier providers that were potentially overbilling."  Brooks Decl. ¶ 37.  The analysis that Qlarant

conducted was certainly created for the purpose of aiding OIG in determining how to proceed with

certain investigations; accordingly, the Court finds that these communications satisfy the

Exemption 5 threshold.  Brooks then explains that this analysis was "part of OIG's deliberations in

deciding how best to use its resources" which, if disclosed, would "reveal aspects of the

government's strategy in its case against Mr. Anand and others and would impede the

government's ability to prosecute individuals who defraud the government."  Brooks Decl. ¶ 37.

The Court finds that this satisfies the deliberative process privilege as well and therefore the

withholding was proper under Exemption 5.

Lastly, OIG applied Exemption 5 to "deliberative and predecisional communications with

[DOJ] and within OIG regarding the results of surveillance reports, bank records, and information

gleaned from consensual monitoring" as well as "regarding the Anand case" more generally.

Brooks Decl. ¶¶ 40, 45.  According to Brooks, "[t]hese communications reflect the analytical stage

of an investigation that precedes a decision to charge an individual with a crime" and "reflect

deliberations as to the import and persuasiveness of individual pieces of evidence, the release of

which would handicap the government's ability to present its case against Mr. Anand at trial."  *Id.* ¶

40.  The Court again finds that these communications fall squarely within the deliberative process

privilege to justify withholding under Exemption 5.  Brooks also notes that these withholdings also

included attorney-client communications reflecting legal advice from DOJ and agency counsel

about litigation theories and strategies, *id.* ¶ 45, which would be an additional layer of privilege.

### v.   FOIA Exemption 6

Exemption 6 protects information contained in "personnel and medical files and similar

files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).

The term "similar files" is construed broadly and is "intended to cover detailed Government

records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted). "The threshold is fairly minimal, such that all information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained." *Concepcion v. FBI*, 606 F. Supp. 2d 14, 35 (D.D.C. 2009) (RMU) (citations and internal quotation marks omitted).

The Court finds that all information withheld by OIG under Exemption 6 constituted a "similar file." The "similar files" qualification pertains not only to entire records, but also "bits of personal information, such as names and addresses," the disclosure of which would create "a palpable threat to privacy." *Judicial Watch, Inc.*, 449 F.3d at 152–53 (quoting *Carter v. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987)). So, for example, even when the requested records do not themselves qualify as personnel or medical files, "[t]he names and contact information of federal employees are the type of information that is eligible for withholding under Exemption 6." *Long v. Immigr. & Customs Enf't*, 279 F. Supp. 3d 226, 243 (D.D.C. 2017) (APM). The same can be true for the names and personal information of third parties, notes about individuals, or sensitive medical information that relates to specific individuals.

Next, in considering whether an agency has properly invoked Exemption 6 to those files, courts must balance the privacy interest in nondisclosure against the public interest in the release of the information. *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).

Pursuant to Exemption 6, OIG withheld names and identifying information of various individuals: the "Key Personnel" list under the task order in the the Qlarant statement of work and official contract, Brooks Decl. ¶ 23; the names and contact information of various case agents, *id.* ¶¶ 41, 46; and "names, dates of birth, contact information, and other Personally Identifiable

Information [] of beneficiaries, federal agents, investigators, complainants, witnesses, and other investigation subjects" found in closed investigative reports that were responsive to its June 2022 search for "Pill Mill Doctor Project," *id.* ¶ 26.  Defendants claim that the privacy interests in nondisclosure for each of these groups of information outweighed the public interest in disclosure. For example, as for the "Key Personnel" list, Brooks explains that the "disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.  Releasing the identities of individuals investigating possible Medicare/Medicaid fraud would invade their privacy by exposing them to harassment from the targets of their investigation." *Id.* ¶ 23.[2]  Regarding the names and information of agents, Brooks avers that some "agents have received threats."  *Id.* ¶ 46. Brooks claims that the agents' privacy interest in avoiding harassment outweighs any public interest in knowing the names of individuals serving in sensitive government positions.  *Id.* ¶ 41.

The Court finds that there is a significant privacy interest in nondisclosure of this information.  *See Judicial Watch, Inc.*, 449 F.3d at 153 (finding that individuals have a privacy interest in the nondisclosure of their names so as to avoid physical danger); *Wash. Post Co.*, 456 U.S. at 600 ("Information such as place of birth, date of birth, date of marriage, employment history, and comparable data… would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy."); *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant, as several other circuits have held."); *Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 56, 83 (D.D.C. 2016) (RC) ("employee names may be properly withheld if there is no genuine public interest in such information or if the

---

[2] Instead of releasing these names, Defendants released the "titles of those individuals," as Brooks determined that doing so would "satisfy[y] the public's interest in knowing how the agency is maintaining the integrity of its programs" without jeopardizing those individuals' privacy.  Brooks Decl. ¶ 23.

information's release will endanger a staff member's safety").  On the other side of the balancing

equation, courts have held again and again in similar circumstances that there is little public interest

in disclosure of the names of certain individuals involved in an investigation as it would "reveal[]

little or nothing about an agency's own conduct."  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493

(D.C. Cir. 1993).  The Court finds the same is true here: there is little if any public interest in this

personal information of the various individuals whose names and information OIG withheld.  Even

if looking at Plaintiffs' Opposing Responses, Plaintiff has failed to identify a significant public

interest in the release of this specific information.  Therefore, these withholdings under Exemption

6 were proper.

OIG also withheld "witness statements and any references to witnesses in the HHS-OIG

agent notes" under Exemption 6.  Brooks Decl. ¶ 34.  Brooks explains that while disclosure could

lead to harassment of those individuals and therefore implicates a "significant privacy interest,"

"there is no public interest in disclosure because [the statements and notes] do not shed light on the

government's actions."  *Id.* ¶ 35.  For the same reasons as above, the Court finds these withholdings

justified.

Finally, OIG withheld communications with Qlarant as well as Qlarant's analysis of claims

data under Exemption 6.  Brooks Decl. ¶ 38.  Brooks avers that the "claims information contains

sensitive medical information about individuals that the Department compiled for purposes of its

investigations."  *Id.*  The release of this information "could cause embarrassment both independent

and by virtue of a link to a criminal investigation," and [t]he public does not have an interest in this

sensitive medical information."  *Id.*  Again, the Court finds for the same reasons that the privacy

interests at stake far outweigh a public interest in disclosure and therefore OIG's assertion of

Exemption 6 was proper.

### vi.    FOIA Exemption 7(C)

Exemption 7(C) protects records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Judicial review of an agency's withholding under FOIA Exemption 7 "requires a two-part inquiry": first, whether the relevant information was in fact compiled for law enforcement purposes, and second, whether it fits one of the enumerated standards, *CBP v. Abramson*, 456 U.S. 615, 622 (1982), which, here, is 7(C).

The Court already found the first prong to be satisfied when discussing Exemption 7(A) above. Next, when assessing an agency's claim under Exemption 7(C), the district court must look to the balance of the privacy interests asserted and the public interest in disclosure. *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006) (RCL). Once an agency has shown a logical connection between the withheld information and this exemption, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome Exemption 7(C)'s protection for personal privacy under the test outlined" in *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004). *Voinche*, 412 F. Supp. 2d at 68.

Under the *Favish* test, a plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the [withheld] information is likely to advance that interest." *Favish*, 541 U.S. at 172. "It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). When the requester advances revealing government misconduct as the relevant public interest, the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. For the public interest to prevail, the requester must provide

"compelling evidence that the agency is engaged in illegal activity," *SafeCard Servs., Inc.*, 926 F.2d at 1205–06, far "more than a bare suspicion" of official misconduct, *Favish*, 541 U.S. at 174.

OIG withheld information regarding third parties—witness statements, as well as agency notes regarding those witnesses—under Exemption 7(C). Defendants contend that "[r]elease of the personally identifiable information of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention, resulting in potential professional and social repercussions." Defs.' Mot. at 34 – 35. As Brooks explains, these witnesses have a strong privacy interest in not being associated with possible health care fraud and there is no public interest in disclosure because the documents do not shed light on the government's actions. Brooks Decl. ¶¶ 34, 36. The Court agrees that there are significant private interests at stake. As a general matter, the identification of a third party individual such as a witness "in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987) (Richey, J.); *see also Isiwele v. U.S. Dep't of Health & Human Servs.*, 85 F. Supp. 3d 337, 359 (D.D.C. 2015) (ABJ) (explaining that third parties include witnesses). Therefore, "[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names... of third parties," as such information is not probative of an agency's performance of its statutory responsibilities. *Mays v. Drug Enf't Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000); *see also Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 38 (D.D.C. 2013) (RMC) (quoting *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995)). Even if looking at Plaintiffs' Opposing Responses, Plaintiff does not present any argument that this withheld information regarding third parties would advance any public interest. Accordingly, the Court finds that the private interest outweighs any public interest and, therefore, OIG properly withheld this information under Exemption 7(C).

OIG also withheld "the names of the case agents as well as the agents involved in the digital

analysis/examination of the digital devices" under Exemption 7(C).  Brooks explains that the agents' privacy interest in avoiding harassment outweighs any public interest in knowing the names of individuals serving in sensitive government positions.  Brooks Decl. ¶ 41.  It is well settled that law enforcement personnel and government employees have a substantial interest in anonymity. *See Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 216–17 (D.D.C. 2018) (RDM) (discussing Exemption 7(C) and noting that "government investigators and employees 'have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives' ") (quoting *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980)); *see also Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 299 (D.D.C. 2011) (RJL).  Accordingly, where Plaintiff again does not present any argument as to why this withheld information would advance any public interest, and considering this significant privacy interest, the Court finds that OIG properly withheld the names of these agents under Exemption 7(C).

### vii.    FOIA Exemption 7(E)

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information... would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Per the D.C. Circuit, this "exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).  Exemption 7(E)

sets a relatively low bar for the agency to justify withholding: "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* at 1194 (internal quotation marks and alterations omitted).

The Court again incorporates its analysis regarding the threshold for any Exemption 7, finding that the materials at issue were compiled for law enforcement purposes. OIG withheld DEA "registration numbers, which the government uses to regulate the prescription of controlled substances," that were located in closed investigative reports responsive to its June 2022 search for "Pill Mill Doctor Project." Brooks Decl. ¶ 27. Brooks explains that "the release of the numbers is reasonably expected to risk circumvention of law as individuals could use these numbers to forge prescriptions." *Id.* The Court finds that these registration numbers fall within the scope of 7(E). *See Ortiz v. U.S. Dep't of Justice*, 67 F. Supp. 3d 109, 123 (D.D.C. 2014) (TFH) (finding that NADDIS "violator identifier codes," which are "multi-digit numbers assigned to drug violators and suspected drug violators" fall under 7(E)); *Adionser v. Dep't of Justice*, 33 F.Supp.3d 23, 25–26 (D.D.C. 2014) (RJL) (withholding G–DEP codes that "identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings" fall under under 7(E)). Brooks' statements logically explain how this information could help others circumvent the law, which suffices to justify invocation of Exemption 7(E).

OIG also withheld information regarding investigational techniques under Exemption 7(E) including questions and answers from witnesses, types of surveillance used, surveillance reports, types of software used to examine digital media, and more. Brooks Decl. ¶ 43. This information falls squarely within the scope of 7(E). Brooks explains that "[t]he methods by which HHS-OIG investigated Mr. Anand are not well-known to the public and revealing them could result in similar individuals purposely evading detection, thereby nullifying the effectiveness of those methods" and

even "provid[ing] a roadmap for circumvention.." *Id.* The Court finds the same is true here as above, and this withholding was also appropriate.

### viii.   FOIA Exemption 7(F)

Finally, Exemption 7(F) protects from mandatory disclosure information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). In general, this exemption has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester. *See Durham v. U.S. Dep't of Justice*, 829 F. Supp. 428, 434 (D.D.C. 1993) (CRR); *Pub. Emps. for Env'tal Resp. (Peer), Rocky Mountain Chapter v. U.S. E.P.A.*, 978 F. Supp. 955, 961 (D. Colo. 1997) (citing cases). Moreover, "[d]isclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014). In reviewing claims under exemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm. *Albuquerque Pub. Co. v. U.S. Dep't. of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989) (Pratt, J.). "Within limits, courts defer to the agency's assessment of danger." *Pinson v. Dep't of Justice*, 236 F. Supp. 3d 338, 368 (D.D.C. 2017) (RC) (citation omitted).

The Court again incorporates its analysis regarding the threshold for any Exemption 7, finding that the materials at issue were compiled for law enforcement purposes. Under Exemption 7(F), OIG withheld "the names of the case agents," the names of "agents involved in the digital analysis/examination of the digital devices," and "names and contact information, including email addresses and phone numbers, of OIG agents." Brooks Decl. ¶¶ 41, 46. Brooks explains that "OIG field agents have been subject to violent threats, and disclosing their identity could put them in

harm's way." *Id.* ¶ 41; *see also id.* ¶ 46.  The Court finds that there is a connection between disclosure and possible harm such that the information was properly withheld under Exemption 7(F).

### ix.    Segregability

FOIA requires that "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  An agency must provide a "detailed justification" and not just make "conclusory statements" to support its segregability determination.  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  At the same time, however, agencies, "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which can be overcome by contrary evidence produced by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

OIG withheld some records responsive to Anand's FOIA request in their entirety under Exemption 7(A).  *See* Brooks Decl. ¶ 13.  "[A]n agency withholding documents under Exemption 7(A) does not need to justify its segregability determination document by document, as the exemption allows agencies to justify withholding based on categories of documents."  *Stein v. U.S. Secs. & Exchange Comm'n*, 266 F. Supp. 3d 326, 353 (D.D.C. 2017) (JDB).  OIG also released some information to Anand with portions withheld pursuant to various FOIA exemptions.  *See* Brooks Decl. ¶¶ 4, 18.  Outside of the partially withheld records, Brooks avers that she "reviewed the records line by line" and, "[a]fter extensive review of the records at issue, [HHS OIG] has determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information."  Brooks Decl. ¶ 47.  Courts in this Circuit have found that where the agency conducted a document-by-document review of all responsive records––or here, an even more specific line-by-line review—and determined that nothing within those

records was reasonably segregable, the agency has demonstrated its compliance with FOIA's

segregability requirement.  *See, e.g.*, *Center for Pub. Integrity v. U.S. Dep't of Def.*, 486 F. Supp.

3d 317, 330 (D.D.C. Aug. 28, 2020) (CKK) (finding DOD's segregability obligation satisfied after

looking to DOD's declaration regarding Exemption 3 that they conducted a page-by-page and line-

by-line review and determined that non further segregation could be made); *Manning v. U.S. Dep't

of Justice*, 234 F. Supp. 3d 26, 38 (D.D.C. 2017) (APM); *Dillon v. U.S. Dep't of Justice*, 102 F.

Supp. 3d 272, 298–99 (D.D.C. 2015) (RBW) (finding the FBI's segregability obligation satisfied

when affidavit stated that the FBI could not segregate some materials because they were exempt in

their entirety under 7(A) and the FBI "carefully reviewed" the remaining materials and determined

that no additional nonexempt information could be released); *DiBacco v. U.S. Dep't of the Army*,

983 F. Supp. 2d 44, 65–66 (D.D.C. 2013) (CKK) (finding that agency met segregability

requirement when it performed document-by-document review and Plaintiffs offered no evidence

to rebut the assertion that it produced all reasonably segregable material), *aff'd in part, remanded in

part sub nom. DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015).  This Court finds the same

here and that OIG complied with its segregability obligations.

*     *     *

In sum, the Court finds that all withholdings asserted by OIG were done so properly and

with justification.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment

as to Anand's FOIA request to OIG for "[a]ll information concerning data analytics algorithms used

in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant

corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant

corporation… [and] all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and

Surgery."

As explained above, due to the deficiencies in OIG's search for "all reports from Blue Cross

47

Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians," the Court denies Defendants' Motion as to this part of Anand's FOIA request.

### C. Plaintiff Anand's FOIA Request to DEA

The Court now addresses Anand's FOIA request to DEA.  The Court finds that DEA's search for records responsive to Anand's request was adequate and they applied withholdings appropriately.  Therefore, the Court will grant Defendants' Motion for Summary Judgment as to Anand's FOIA request to DEA.

The Court begins by addressing the adequacy of the agency's search before turning to withholdings.

#### 1.  Adequacy of Search

The same standard articulated in Section III.B.1 regarding the adequacy of an agency's search under FOIA applies here.

Defendants state—and, as explained thoroughly above, the Court can take as undisputed— that "[t]hroughout the administrative processing of Plaintiffs' FOIA request, Defendants carefully reviewed *all* the documents responsive to the request…." Defs.' Mot., Statement of Material Facts (emphasis added).  Defendants contend that "DEA conducted a reasonable and legally sufficient search for records responsive to Plaintiff Anand's FOIA request."  Defs.' Mot. at 13.  To support this contention, they include the sworn declaration of Angela D. Hertel, the Unit Chief of the Legal and External Affairs Sub-Unit, Freedom of Information/Privacy Act Unit, of the United States Department of Justice Drug Enforcement Administration.  *See* Hertel Decl. ¶ 1.

Plaintiff Anand requested from the DEA "all drug enforcement agency documents concerning Neil Anand, Institute of Advanced Medicine and Surgery, Anand Medical Investment, Paul Soccio."  Defs.' Mot. Ex. A.  The DEA separated this request into the four categories.  Hertel Decl. ¶ 13.  The Court will consider the first three categories together before turning to the last

48

request.

        **i.**   **Anand's Request for Documents About Neil Anand, Institute of Advanced Medicine and Surgery, and Anand Medical Investment**

Hertel explains that all DEA criminal law enforcement investigative records are maintained as part of the DEA Investigative Reporting and Filing System ("IRFS"). Hertel Decl. ¶ 6. DEA locates records that are maintained as part of IRFS using the DEA Narcotics and Dangerous Drugs Information System ("NADDIS"), which is a centralized electronic data index system. *Id.* ¶ 7. Hertel states that "[a] NADDIS search is a worldwide, comprehensive search because all DEA intelligence and investigative records are indexed into NADDIS for purposes of being maintained as part of IRFS." *Id.*

For the first category of Anand's request, Defendants explain that the DEA searched IRFS by querying NADDIS using the term "Neil Anand." Defs.' Mot. at 13 (citing Hertel Decl. ¶ 14). This search resulted in the identification of three investigative case numbers; the DEA withheld in full all responsive records under exemptions that will be discussed later. Hertel Decl. ¶ 14.

As for the second and third categories, Anand requested "documents concerning… Institute of Advanced Medicine and Surgery [and] Anand Medical Investment." The Institute of Advanced Medicine and Surgery and Anand Medical Investment are both owned by Anand. Defs.' Mot. at 5 (citing Indictment ¶ 2, *United States v. Anand*, Crim. A. No. 19-0518 (E.D. Pa. Sept. 10, 2019)). Defendants explain that in response to this request, the DEA searched IRFS by querying NADDIS first using the term "Institute of Advanced Medicine and Surgery" and then separately using the term "Anand Medical Investment." Defs.' Mot. at 13–14 (citing Hertel Decl. ¶ 15). Both searches resulted in a "no results found" response in NADDIS. Hertel Decl. ¶ 15. In other words, DEA located no records responsive to this part of Anand's request.

The Court finds that the DEA conducted an adequate search in response to Anand's FOIA

request as to these three categories.  An agency must provide a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials… were searched."  *Oglesby*, 920 F.2d at 68.  Here, the DEA offered Hertel's sworn declaration, which is "accorded a presumption of good faith."  *SafeCard Servs., Inc.*, 926 F.2d at 1200.  The Hertel declaration avers that all files likely to contain responsive materials were searched: DEA searched NADDIS, the centralized system that indexes all records maintained in IRFS, which houses all of the DEA's criminal law enforcement investigative records. Additionally, the Hertel affidavit explains the search terms that were utilized, reflecting a systematic approach to locating potentially responsive documents, as is required.  *See Weisberg*, 627 F.2d at 371; *Oglesby*, 920 F.2d at 68.  The Court therefore finds that the DEA has satisfactorily demonstrated that they conducted an adequate search for responsive records for Anand's request for "all drug enforcement agency documents concerning Neil Anand, Institute of Advanced Medicine and Surgery, Anand Medical Investment."

> **ii.      Anand's Request for Documents About Paul Soccio**

For the fourth category—Anand's request for documents concerning "Paul Soccio"— Defendants explain that the "DEA did not conduct a search because it is DEA standard practice to deny the request for investigative records about a third party, neither affirming nor denying the existence of records."  Defs.' Mot. at 14 (citing Hertel Decl. ¶ 16).

Paul Soccio is Plaintiff Anand's former business partner.  Defs.' Mot. at 4.  According to Defendants the "two individuals appear to have a contentious relationship."  *Id.* (citing *Anand v. Indep. Blue Cross*, Civ. A. No. 20-6243, 2021 WL 3128690, at *2 (E.D. Pa. July 23, 2021) (recounting Plaintiff Anand's allegations against Mr. Soccio), *aff'd in part*, No. 21-2679, 2022 WL 2339476 (3d Cir. June 29, 2022); *see generally Soccio v. Anand*, No. 201606395 (Bucks Cnty., Pa. Com. Pl.)).

Hertel explains that the "DEA had no evidence of Mr. Soccio's death, nor did it have authorization from Mr. Soccio to disclose information to Mr. Anand." Hertel Decl. ¶ 42. Furthermore, "[t]he disclosure of even the existence of DEA law enforcement records concerning… Mr. Soccio[] could reasonably be expected to subject him to unwarranted invasions of personal privacy" because, among other reasons, "[m]embers of the public would draw adverse inferences about Mr. Soccio from the mere fact that he might be mentioned in the law enforcement investigative records." *Id.* Therefore, in response to Anand's request for documents concerning Mr. Soccio, the DEA issued a *Glomar* response pursuant to FOIA Exemptions 6 and 7(C). Hertel Decl. ¶ 42; *see also* Defs.' Mot. at 14.

A *Glomar* response is appropriate in "certain cases, [where] merely acknowledging the existence of responsive records would itself cause harm cognizable under a FOIA exception." *People for the Ethical Treatment of Animals v. NIH ("PETA")*, 745 F.3d 535, 540 (D.C. Cir. 2014) (internal quotation marks and original alteration omitted); *see Bartko v. United States Dep't of Justice*, 898 F.3d 51, 63 (D.C. Cir. 2018) ("A *Glomar* response to a FOIA request is permitted in that rare situation when either confirming or denying the very existence of records responsive to a request would 'cause harm cognizable under an FOIA exception.'" (quoting *Roth v. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011))). "[T]o the extent the circumstances justify a *Glomar* response, the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *PETA*, 745 F.3d at 540.

A *Glomar* response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "When addressing an agency's *Glomar* response, courts must accord 'substantial weight' to agency determinations." *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 89 (D.D.C. 2016) (citing *Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982)). Consequently, in such cases,

"courts may grant summary judgment on the basis of agency affidavits that contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (internal quotation marks omitted). "The supporting affidavit must justify the *Glomar* response based on general exemption review standards established in non-*Glomar* cases." *Id.* (internal quotation marks omitted). Ultimately, "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (citation omitted).

As stated above, DEA asserted this *Glomar* response pursuant to Exemptions 6 and 7(C). "When information is claimed to be exempt from disclosure under both provisions, courts 'focus… on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)).

The Court discussed the 7(C) standard above in Section III.B.2.vi in the context of OIG's withholdings, but repeats it now for reference. Exemption 7(C) protects records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Judicial review of an agency's withholding under FOIA Exemption 7 "requires a two-part inquiry": first, whether the relevant information was in fact compiled for law enforcement purposes, and second, whether it fits one of the enumerated standards, *CBP*, 456 U.S. at 622, which, here, is 7(C). Regarding the first prong, to show that the disputed documents were "compiled for law enforcement purposes," the agency need only "establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk

or violation of federal law." *Campbell*, 164 F.3d at 32 (internal quotation marks and citation omitted); *see also Keys*, 830 F.2d at 340. Here, Defendants write that "DEA meets the requirements of a law enforcement agency," Defs.' Mot. at 31, and that "[g]iven the nature and context of DEA's investigative records, the disclosure of any information could potentially tip-off a criminal or drug trafficking organization that they are the subject of a DEA investigation, or potentially subject an individual to unwarranted attention," Hertel Decl. ¶ 42. The DEA is "entitled to deference in its determination that the records were compiled for a law enforcement purpose." *Gilman*, 32 F. Supp. 3d at 19. The Court finds that this first prong is satisfied and therefore turns to the second prong to discuss the DEA's *Glomar* response under 7(C).

In assessing an agency's claim under exemption 7(C), the district court must look to the balance of the privacy interests asserted and the public interest in disclosure. *Voinche*, 412 F. Supp. 2d at 68. Once an agency has shown a logical connection between the withheld information and this exemption, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome Exemption 7(C)'s protection for personal privacy under the test outlined" in the Supreme Court case *Favish*. *Voinche*, 412 F. Supp. 2d at 68.

Under the *Favish* test, a plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the [withheld] information is likely to advance that interest." *Favish*, 541 U.S. at 172. "It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (quoting *Reporters Comm. for Freedom of Press*, 489 U.S. at 773). When the requester advances revealing government misconduct as the relevant public interest, the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. For the public interest to prevail, the

requester must provide "compelling evidence that the agency is engaged in illegal activity," *SafeCard Servs., Inc.*, 926 F.2d at 1205–06, far "more than a bare suspicion" of official misconduct, *Favish*, 541 U.S. at 174.

Here, Hertel explains that "[t]he disclosure of even the existence of DEA law enforcement records concerning a third party, such as Mr. Soccio, could reasonably be expected to subject him to unwarranted invasions of personal privacy. Mr. Soccio has a substantial privacy interest in not being associated with a DEA law enforcement investigation."  Hertel Decl. ¶ 42.  The Court agrees that there is a significant private interest at stake here.  As a general matter, the identification of a third party individual "in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."  *Branch*, 658 F. Supp. at 209.  Therefore, "[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names... of third parties."  *Mays*, 234 F.3d at 1327; *see also Lazaridis*, 934 F. Supp. 2d at 38 (quoting *Nation Mag.*, 71 F.3d at 896).  Even if looking at Plaintiffs' Opposing Responses, Plaintiff does not present any argument that this withheld information would advance any public interest.  Accordingly, the Court finds that no public interest outweighs Mr. Soccio's privacy interests.

Therefore, because the existence or nonexistence of DEA records concerning Mr. Soccio falls within FOIA Exemption 7(C), *see Wolf*, 473 F.3d at 374, and because merely acknowledging the existence of responsive records could cause harm by invading this privacy interest, *PETA*, 745 F.3d at 540, the Court holds that the DEA's *Glomar* response was justified.  As a result, the DEA was also justified in not conducting a search for materials responsive to Anand's request for "documents concerning... Paul Soccio."  *See PETA*, 745 F.3d at 540.

*     *     *

The Court finds that the DEA has satisfactorily demonstrated that they conducted an adequate search for responsive records as for all of Anand's FOIA request.  The Court now turns to

an analysis of DEA's withholdings under FOIA.

### 2. Withholdings

Having found DEA's search to be adequate, the Court now turns to their withholdings. The DEA found records responsive to Plaintiff's request for "all drug enforcement agency documents concerning Neil Anand."[3] The DEA withheld responsive records in full under FOIA Exemption 7(A) as well as 5 U.S.C. § 552a(j). Hertel Decl. ¶ 12.

The DEA explains that if the criminal proceedings against Anand ended and FOIA Exemption 7(A) was therefore no longer applicable, certain responsive records could be disclosed but would then be subject to FOIA Exemptions 5, 6, 7(C), 7(D), 7(E), and 7(F). *Id.* ¶¶ 12, 34. In Hertel's affidavit, she explains those exemptions "briefly… for the purpose of preserving DEA's ability to assert these exemptions should Exemption 7(A), which is temporal in nature, expire." *Id.* ¶ 34. But unlike OIG, the DEA did not actually assert these other exemptions. *Compare to* Brooks Decl. ¶ 28. Therefore, the Court does not analyze any withholdings under these exemptions, as they have not actually been asserted by the DEA and, additionally, some of Hertel's explanations are speculative. *See, e.g.*, *id.* ¶ 35 (when discussing FOIA Exemption 5, stating that "DEA *anticipates* that when the pending criminal proceedings have resolved, [] Mr. Anand['s]… investigative case records will include communications between DEA and the DOJ attorneys representing the United States in the criminal proceedings…") (emphasis added).

The Court considers the withholdings that were in fact made under Exemption 7(A) and 5

---

[3] As explained above, the DEA found no records responsive to Plaintiff's request for "all drug enforcement agency documents concerning… Institute of Advanced Medicine and Surgery" as well as "Anand Medical Investment." The Court has already found that the DEA's *Glomar* response regarding Plaintiff's request for "all drug enforcement agency documents concerning… Paul Soccio" was appropriate. Accordingly, the only search that yielded responsive results was for records about Neil Anand, and therefore the only withholdings at issue here are those asserted for that search.

U.S.C. § 552a(j).

### i.    FOIA Exemption 7(A)

The Court incorporates the standard for FOIA Exemption 7(A) articulated previously in Section III.B.2.i.  The Court has already found the first part of the legal test to be satisfied—whether the information withheld was compiled for law enforcement purposes—as the DEA is a law enforcement agency and has compiled investigatory documents for a law enforcement purpose. The Court again finds that Defendants have sufficiently shown that Plaintiff Anand is subject to an ongoing criminal proceeding.  The Court now turns to whether DEA has established that disclosure would interfere with this proceeding.

Defendants contend that they "determined that disclosure of all records pertaining to Plaintiffs' investigations could reasonably be expected to interfere with Plaintiffs' criminal proceedings."  Defs.' Mot. at 17.  Hertel states that Anand's "criminal proceedings involve alleged violations of the C[ontrolled] S[ubstances] A[ct], the enforcement of which is one of DEA's primary law enforcement missions."  Hertel Decl. ¶ 40.  Hertel continues that the release of DEA's investigative case records "could reveal information that Mr. Anand… would not otherwise have access to and would undermine the United States' prosecution in the pending proceedings as well as in any criminal appellate process."  *Id.*

Plaintiff Anand has provided no basis to doubt this representation, and the Court concludes that the agency has shown that the release of responsive documents could reasonably be expected to interfere with the ongoing criminal proceedings against Anand. Accordingly, the Court concludes that the DEA's withholding of all of the responsive materials requested by Anand is properly justified, in full, on the basis of Exemption 7(A).

### ii.    Withholdings Pursuant to 5 U.S.C. § 552a(j)

The DEA also withheld information pursuant to Section (j)(2) of the Privacy Act.  The

Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records… by allowing an individual to participate in ensuring that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately." *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984). However, "like FOIA, the Privacy Act carves out exemptions from disclosure when a system of records meets certain criteria." *Mobley v. C.I.A.*, 806 F.3d 568, 586 (D.C. Cir. 2015).

Section (j)(2) of the Privacy Act permits the head of an agency to promulgate rules to exempt any system of records within the agency from an individual right of access if the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws… and which consists of information compiled for the purpose of" a criminal investigation. 5 U.S.C. § 552a(j)(2)(B). The Department of Justice has, by regulation, exempted information that is maintained as part of IRFS from such access. *See* 28 C.F.R. § 16.98(i); *see also Djenasevic v. Exec. Off. of U.S. Att'ys*, 319 F. Supp. 3d 474, 484 (D.D.C. 2018) (RCL) ("DEA has exempted pursuant to Exemption (j)(2) investigative case files maintained in its Investigative Reporting and Filing System from access.") (citing 28 C.F.R. § 16.98(i)). Therefore, an individual who is the subject of an investigative case maintained as part of IRFS does not have an individual right of access to those records under the Privacy Act. *See* Defs.' Mot. at 19.

Anand requested from the DEA investigative records about himself—specifically, "all drug enforcement agency documents concerning Neil Anand." *See* Hertel Decl. ¶ 32. Because Anand is the subject of a criminal investigation and ongoing criminal proceedings, as discussed above, the Court finds that such documents in IRFS are therefore exempt from disclosure under the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2)(B). The Court finds that DEA properly withheld information

under this exemption.

### iii.    Segregability

As discussed earlier for Anand's request to OIG, FOIA requires that "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  The Court incorporates the more detailed explication of the standard explained in Section III.B.2.ix.

Here, DEA withheld all responsive records in full under 7(A), as well as 5 U.S.C. § 552a(j)(e).  *See* Hertel Decl. ¶ 12.  "[A]n agency withholding documents under Exemption 7(A) does not need to justify its segregability determination document by document, as the exemption allows agencies to justify withholding based on categories of documents."  *Stein v. U.S. Secs. & Exchange Comm'n*, 266 F. Supp. 3d 326, 353 (D.D.C. 2017) (JDB).  Nevertheless, Hertel avers that "[e]very effort is made to release all segregable information without disclosing law enforcement techniques or procedures. No additional information may be segregable for disclosure without revealing the protected information."  Hertel Decl. ¶ 43.  The Court finds the DEA complied with its segregability obligations.

*        *        *

In sum, the Court finds that all withholdings asserted by DEA were done so properly and with justification.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to Anand's FOIA request to DEA entirely.

## IV.  CONCLUSION

For the reasons set forth above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion for Summary Judgment as against Plaintiff Anand.  The Court will **GRANT** the Motion as to Anand's FOIA request to OIG for "[a]ll information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant

corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation… [and] all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery," having found OIG's search to be adequate and withholdings justified.  The Court will also **GRANT** the Motion as to Anand's FOIA request to DEA.

The Court will **DENY** the Motion as to Anand's FOIA request to OIG for "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians" because OIG did not notify Anand that his request did not reasonably describe the records sought, as required by regulation or, in the alternative, OIG did not provide sufficient explanation as to why a search for this request would be burdensome.  The Court shall order HHS shall file a Status Report by no later than April 7, 2023, indicating how they intend to proceed such as, but not limited to, conducting a search or filing a renewed motion for summary judgment.  An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge