UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NEIL ANAND, *et al.*,

    *Plaintiffs,*

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

    *Defendants*.

Civil Action No. 21-1635 (CKK)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF SECOND MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

DOUGLAS C. DREIER, D.C. Bar No. 1020234
Assistant United States Attorney – Civil Division
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-2551
douglas.dreier@usdoj.gov

*Counsel for the United States of America*

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................................. 1

LEGAL STANDARD .................................................................................................................... 3

ARGUMENT .................................................................................................................................. 5

CONCLUSION ............................................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

\* *Anand v. Dep't of Health & Human Servs.*,
    Civ. A. No. 21-1635 (CKK), 2023 WL 2646815 (D.D.C. Mar. 27, 2023) ............................. 5

*Anderson v. Lib. Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................ 4

*Ayuda, Inc. v. FTC*,
    70 F. Supp. 3d 247 (D.D.C. 2014) ..................................................................................... 5, 6

*Brayton v. Off. of U.S. Trade Rep.*,
    641 F.3d 521 (D.C. Cir. 2011) ............................................................................................... 4

\* *Brody v. Dep't of Just.*,
    No. 22-5043, 2023 WL 1511679 (D.C. Cir. Feb. 3, 2023) .................................................... 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................ 4

*Citizens for Resp. & Ethics in Wash. v. Dep't of Labor*,
    478 F. Supp. 2d 77 (D.D.C. 2007) ........................................................................................ 4

*Defs. of Wildlife v. U.S. Border Patrol*,
    623 F. Supp. 2d 83 (D.D.C. 2009) ........................................................................................ 4

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ............................................................................................... 4

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ............................................................................................. 4

*Media Rsch. Ctr. v. Dep't of Just.*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ....................................................................................... 4

*Mil. Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ............................................................................................... 4

*Nation Mag., Wash. Bureau v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) ................................................................................................. 5

*Nat'l Sec. Couns. v. CIA*,
  969 F.3d 406 (D.C. Cir. 2020) ............................................................................................... 5

*People for the Am. Way Found. v. Dep't of Just.*,
  451 F. Supp. 2d 6 (D.D.C. 2006) ........................................................................................... 6

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ............................................................................................... 5

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ............................................................................................. 5

*Tereshchuk v. Bureau of Prisons*,
  67 F. Supp. 3d 441 (D.D.C. 2014) ......................................................................................... 5

*Wolf v. CIA*,
  569 F. Supp. 2d 1 (D.D.C. 2008) ....................................................................................... 5, 6

**Statutes**

5 U.S.C. § 552 ................................................................................................................................ 5

**Rules**

Fed. R. Civ. P. 56 .......................................................................................................................... 4

Plaintiffs Neil Anand and Lesly Pompy brought this Freedom of Information Act ("FOIA") litigation against Defendants, U.S. Department of Health and Human Services (the "Department" or "HHS") and Drug Enforcement Administration (the "DEA"). The Court, on summary judgment, has already resolved a great many issues of relevance to Plaintiff Pompy, Order (ECF No. 85); Memo. Op. (ECF No. 86); and to Plaintiff Anand, Order (ECF No. 87); Memo. Op. (ECF No. 88). The issue for the present motion is whether the part of Plaintiff Anand's FOIA request to the Department that seeks "all reports from Blue Cross Blue Shield corporation to [the Department's Office of Inspector General ("Inspector General")] concerning improper prescribing of opiates by specific physicians" is unduly burdensome. As explained herein, and in the attached Statement of Facts and Supplemental Declaration of Robin Brooks, this part of the FOIA request imposes an undue—and frankly extreme—burden, and Defendants are entitled to judgment as a matter of law.

## BACKGROUND

To avoid unnecessary duplication, Defendants refer to the Background section of the Court's prior Opinion (ECF No. 88). As relevant here, on April 17, 2021, the Inspector General received a FOIA request from Plaintiff Anand that sought the following documents: "All information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation, all reports from Blue Cross Blue Shield corporation to [the Inspector General] concerning improper prescribing of opiates by specific physicians, all reports of [the Inspector General] concerning Neil Anand or Institute of Advanced Medicine and Surgery." Anand's HHS FOIA Request (ECF No. 59-5).

1

The Inspector General maintains all records of investigations conducted by its Office of Investigations, including complaints and documents related to civil and criminal cases, in its law enforcement database ("Database"). The Inspector General has indexed the Database by subject and not by submitter. Suppl. Brooks Decl. ¶ 9 (attached). To locate information submitted by Blue Cross Blue Shield, the Inspector General must search all electronic case files in the database. *Id.* The Database is a legacy system created in or around 2004, and its search features are limited. *Id.* ¶ 10. The Inspector General cannot narrow an electronic case file search by date or conduct Boolean searches. *Id.* To select a particular date range, the Inspector General must still search by name/entity and then sort by date. *Id.* Even that approach is unreliable, however, as most cases stay open for multiple years. *Id.* For example, the Inspector General may open a case in 2005 but not close it until 2012. *Id.*

A further complication in reviewing search results for responsive records is that case files contain documents embedded within other documents. *Id.* ¶ 11. The Inspector General must open each document to ensure there are no embedded documents. *Id.* Worse yet, some of the documents within a case file are not searchable electronically because they have not been converted into a machine-readable text format via Optical Character Recognition. *Id.*

To conduct a search, the Inspector General must open the Database and search the electronic case file with specified search terms. *Id.* ¶ 12. The Inspector General identified 17,262 case results that hit on the term "Blue Cross Blue Shield," 13,146 case results that hit on the term "BCBS," and 2,320 case results that hit on the term "BC/BS." *Id.* ¶ 13. The Inspector General does not have the ability to deduplicate results across these searches. *Id.* ¶ 15.

To determine the length of time it would take to review all search results for responsive records, the Department selected a random sample of five case files from each of the three sets of

search results, ensuring that each sample contained unique cases. *Id.* ¶ 16. Each case file contains "line items," which are documents uploaded into the electronic case files in sequential order, similar to a litigation docket. *Id.* The first document is usually the opening investigative memo or complaint. *Id.* All subsequent documents are listed in chronological order until the final closing document. *Id.*

Reviewing just fifteen case files took approximately 26 hours and 57 minutes. *Id.* ¶ 23. Given the volume of records, at a rate of 52 weeks per year, 40 work hours per week, it would take someone more than 28 years to finish reviewing these records. *Id.* The Department cannot employ someone fulltime for more than 28 years simply to process Anand's FOIA request. *Id.* ¶ 27. Further, that time does not even include the additional time required to make release determinations and apply applicable FOIA exemptions. *Id.* ¶ 25. Even if the Department could employ someone fulltime for 28 years to work on Anand's FOIA request, that would cost the Department more than $3,500,000 in salary alone, which vastly understates the costs to the Department. *Id.* ¶ 26.

Further, this is all happening against the backdrop of the Department's significant backlog of 57 cases, with three high-profile cases involving COVID-19, the Wuhan Institute of Virology, and the National Institutes of Health grant to EcoHealth Alliance alone involving more than 450,000 responsive records. *Id.* ¶ 27. The Inspector General's FOIA division consists of only three people and will soon be temporarily down to two people when Ms. Brooks retires this spring. *Id.* ¶ 3.

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

3

law." Fed. R. Civ. P. 56(a); *Anderson v. Lib. Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Lib. Lobby*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Agency declarations receive "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Upon determining that an agency has released all non-exempt material, the Court has no further judicial function to perform, and the claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

As this Court has explained, "[a]gencies are not required to conduct searches that would impose unreasonable burdens." *Anand v. Dep't of Health & Human Servs.*, Civ. A. No. 21-1635 (CKK), 2023 WL 2646815, at *14 (D.D.C. Mar. 27, 2023), ECF No. 88 (citing *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995)). The agency "bears the burden to 'provide [a] sufficient explanation as to why such a search would be unreasonably burdensome.'" *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (quoting *Nation Mag.*, 71 F.3d at 892). Courts require a "substantial" showing, *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 455 (D.D.C. 2014), that includes "a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness," *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008).

The D.C. Circuit just recently confirmed that "an agency should read a FOIA request 'as drafted, not as either agency officials or the requester might wish it was drafted.'" *Brody v. Dep't of Just.*, No. 22-5043, 2023 WL 1511679, at *1 (D.C. Cir. Feb. 3, 2023) (quoting *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020)). "The FOIA places the burden of submitting a reasonably drafted request on the requester." *Id.* (citing 5 U.S.C. § 552(a)(3)(A)(i)). This means that "[a]n agency has no duty to narrow a request in order to make the required search reasonable." *Id.* (citing *Nat'l Sec. Couns.*, 969 F.3d at 410).

For instance, in *Ayuda*, the agency estimated that a review of potentially responsive records "would take more than 8,000 hours to complete given the size." 70 F. Supp. 3d at 255. The Court found that this amount of time would impose an undue burden on the agency. *Id.* at 275–76. Thus, the Court granted the agency's motion for summary judgment in relevant part. *Id.* at 282. Other cases have found similar time and expense burdens to be improper. *See, e.g.*, *Wolf*, 569 F. Supp. 2d at 9 (finding a search that would take an estimated 3,675 hours and cost $147,000 to be unreasonably burdensome); *People for the Am. Way Found. v. Dep't of Just.*, 451 F. Supp. 2d 6, 13 (D.D.C. 2006) (finding a search unreasonably burdensome where compliance would require the agency to devote 25,000 hours to searching 44,000 files manually).

Here, the Department has described the significant limits on its search capabilities and the reasons why its search would take more than 58,000 continuous hours, *see generally* Suppl. Brooks Decl., which is more than double the time involved in *People for the American Way*, more than septuple the time involve in *Ayuda*, and more than quindecuple (i.e., 15x) the time involved in *Wolf*. The expense of employing someone to spend the next twenty-eight years of their life processing Anand's FOIA request would include more than $3,500,000 in salary alone. *Id.* ¶ 26. That is not reasonable and certainly not what Congress intended by enacting the FOIA.

\* \* \*

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant summary judgment in favor of Defendants regarding the undue burden Plaintiff Anand's FOIA request imposes on the Department.

Dated:  April 26, 2023                                   Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:      /s/ *Douglas C. Dreier*
DOUGLAS C. DREIER, D.C. Bar No. 1020234
Assistant United States Attorney – Civil Division
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-2551
douglas.dreier@usdoj.gov

*Counsel for the United States of America*