UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEIL ANAND, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> *Defendants*. | Civil Action No. 21-1635 (CKK) |

**SUPPLEMENTAL DECLARATION OF ROBIN BROOKS**

I, Robin Brooks, declare as follows:

1. I am the Director, Freedom of Information Act Division, Office of Inspector General ("OIG"), U.S. Department of Health and Human Services ("HHS" or "the Department"). In this capacity, I am the Freedom of Information Officer for OIG. I have held this position with the Department since February 2006.

2. The Department's administration of its obligations under the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA"), is decentralized and consists of eleven Operating Divisions, the Office of the Secretary, and OIG, all of which receive and respond to FOIA requests.

3. The FOIA Division of OIG, which handles all FOIA requests for OIG records, is currently comprised of only three people and will temporarily be down to two people following my retirement later this spring. Our team is responsible for processing between 1,800 and 2,300 FOIA requests directed to OIG each year.

4. My duties include responding to FOIA requests for OIG records, managing searches for OIG records in response to requests under the FOIA, and determining whether to release or withhold records or portions of Department records in accordance with the FOIA and the HHS regulations implementing the FOIA. *See* 45 C.F.R. Part 5.

5. I make this declaration based upon my personal knowledge and information available to me in my official capacity.

6. I am familiar with OIG's handling of the FOIA request at issue in this case.

7. On April 17, 2021, Plaintiff Anand submitted a FOIA request to OIG seeking "[a]ll information concerning data analytics algorithms used in the Pill Mill Doctor Project, all reports and work product generated by contractor Qlarant corporation concerning the Pill Mill Doctor Project, statement of work and official contract of Qlarant corporation, all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians, all reports of OIG concerning Neil Anand or Institute of Advanced Medicine and Surgery." A true and correct copy of the request is attached to my first declaration in this case as Exhibit 1.

8. The purpose of this declaration is to explain why a search for "all reports from Blue Cross Blue Shield corporation to OIG concerning improper prescribing of opiates by specific physicians" would be unduly burdensome.

<u>System Limitations of the OIG Law Enforcement Database</u>

9. OIG maintains all records of investigations conducted by the OIG Office of Investigations ("OI"), including complaints and documents related to civil and criminal cases, in its law enforcement database ("LE database"). OIG has indexed the database by subject and does not have the ability to sort information by submitter unless an OIG investigative analyst

determines it is a complaint. Searches for complaints submitted by "Blue Cross Blue Shield," "BCBS," and "BC/BS" did not return any results. OIG does not use the term "report" to categorize information it receives, but I interpreted that term as simply information. To locate information not rising to the level of a complaint submitted by Blue Cross Blue Shield, OIG must search all Electronic Case Files ("ECF") in the database.

10. The LE database is a legacy system created in or around 2004, and the search features of the LE database are limited. OIG cannot narrow an ECF search by date or conduct Boolean searches. To select a particular date range, OIG must still search by name/entity and then sort by date. Even that approach is unreliable, however, as most cases stay open for multiple years. For example, OIG may open a case in 2005 but not close it until 2012.

11. A further complication in reviewing search results for responsive records is that case files contain documents embedded within other documents. OIG must open each document to ensure there are no embedded documents. Moreover, some of the documents within a case file are not searchable electronically because they have not been converted into a machine-readable text format via Optical Character Recognition ("OCR").

Search Procedure and Results

12. To conduct a search, OIG must open the LE database and search the ECF with specified search terms. When OIG conducts a search, the database caps the results to 10,000 search hits. To obtain the true number of hits, OIG must enlist the aid of its IT director.

13. I ran seven searches using terms related to Plaintiff Anand's request, which yielded the following results:

    a. "Blue Cross Blue Shield Corporation" – 0 results

    b. "Blue Cross Blue Shield" – 17,262 case results

      c. "Blue Cross Blue Shield Opioids" – 0 results

      d. "Blue Cross Blue Shield Opiates" – 0 results

      e. "Blue Cross Blue Shield Reports" – 0 results

      f. "BCBS" – 13,146 case results

      g. "BC/BS" – 2,320 case results

14. OIG searched for Blue Cross Blue Shield records involving both "opioids" and "opiates," though Plaintiff Anand's request referenced the narrower category of "opiates." The terms are often used interchangeably, though "opiates" technically refers to natural opioids such as heroin, morphine and codeine. "Opioids" refers to natural, semisynthetic, and synthetic opioids.

15. OIG does not have the ability to deduplicate results across the searches.

Extrapolated Length of Review

16. To determine the length of time it would take to review all search results for responsive records, I selected a random sample of five case files from each of the sets of search results, ensuring that each sample contained unique cases. Each case file contains "line items," which are documents uploaded into the ECF in sequential order, similar to a litigation docket. The first document is usually the opening investigative memo or complaint. All subsequent documents are listed in chronological order until the final closing document.

17. The search for "BCBS" returned 13,146 hits. My random sampling of five cases revealed the following:

      a. The first case file contained 296 line items and took me two hours and twelve minutes to review. This file only contained Blue Cross Blue Shield ("BCBS") claims information and did not contain any discussion of opioids or reports/complaints from BCBS.

    b. The second case file contained 86 line items and took me 41 minutes to review. This case, which is still open, involved a qui tam claim and did not contain any reports/complaints from BCBS. The search returned this case file because it contained a subpoena for BCBS claims information.

    c. The third case file contained 443 line items and took me three hours and four minutes to review. This case contained BCBS claims information related to the inappropriate billing of cardiac procedures and did not contain any discussion of opioids.

    d. The fourth case file contained 150 line items and took me one hour and six minutes to review. This case included a report from Horizon BCBS regarding the misrepresentation of physical therapy services as surgical procedures. There was no discussion of opioids.

    e. Finally, the fifth case file contained eleven line items and took me nine minutes to review. This case related to diabetes drugs and did not contain any discussion of opioids or any reports/complaints from BCBS.

18. Based on the sampling above for the "BCBS" search, reviewing five case files took me approximately seven hours and twelve minutes to review.

19. The search for "BC/BS" returned 2,320 hits. My random sampling of five cases revealed the following:

    a. The first case file contained 200 line items and took me one hour and 31 minutes to review. I opened each line item and determined that there were no reports/complaints related to opioids.

    b. The second case file contained 18 line items and took me 24 minutes to review. This case contained no reports/complaints related to opioids.

    c. The third case file contained 285 line items and took me two hours and two minutes to review. This file contained one COVID-19 test from BCBS of Idaho but no opioid cases.

    d. The fourth case file contained 45 line items and took me 43 minutes to review. This case involved the inappropriate billing of BCBS for mental health treatments, but there were no reports/complaints from BCBS and no opioids.

    e. The fifth case file contained 828 line items and took me three hours and seven minutes to review. This case involved a qui tam claim related to physician kickbacks but did not involve opioids.

20. Based on the sampling above for the "BC/BS" search, reviewing five case files took me approximately seven hours and 47 minutes.

21. The search for "Blue Cross Blue Shield" returned 17,262 hits. My random sampling of five cases revealed the following:

    a. The first case file contained 363 line items and took me two hours and 38 minutes to review. The file contained claims information from BCBS but no reports. The case concerned prescriptions issued in one state while the provider was located in another but did not concern opioids.

    b. The second case file contained 125 line items and took me one hour and six minutes to review. BCBS had been subpoenaed for claims information, and the file contained a spreadsheet with 1,700 claims. The case file did not contain any reports/complaints from BCBS.

6

    c. The third case file contained 102 line items and took me two hours and eleven minutes to review. The first line item consisted of information from BCBS of Michigan but did not regard opioids. The file also contained a lot of embedded files, which increased the review time significantly.

    d. The fourth case file contained 534 line items and took me four hours and nine minutes to review. The file did not contain any reports/complaints from BCBS. Several items had embedded files or consisted of portfolios of multiple pdfs, and there were over 40,000 pages in the case file in total.

    e. The fifth case file contained 262 line items and took me one hour and 54 minutes to review. This case did not contain any reports from BCBS or complaints involving opioids.

22. Based on the sampling above for the "Blue Cross Blue Shield" search, reviewing five case files took me approximately eleven hours and 58 minutes to review.

23. Combined, reviewing these fifteen case files took approximately 26 hours and 57 minutes. Assuming this was a representative sample, it would take approximately 58,801 hours of continuous time to review the 13,146 "BCBS" search results, 2,320 "BC/BS" search results, and 17,262 "Blue Cross Blue Shield" search results, which cannot be deduplicated—i.e., 26.95 hours / 15 sample case files * (13,146 + 2,320 + 17,262 records)). At a rate of 52 weeks per year, 40 work hours per week, it would take someone more than 28 years to finish reviewing these records (i.e., 58,801.31 continuous hours / (52 weeks * 40 hours)). Even if my office, when it resumes being fully staffed at three people, were to assign each individual to work fulltime on this specific request and neglect all other FOIA requests or other work duties, this

would still take them more than nine years to finish (i.e., 28.26 work years / 3 people), and every other FOIA request would need to be ignored during this time.

24. The consistency in the time required to review five "BCBS" search results (approximately seven hours and twelve minutes) and five "BC/BS" search results (approximately seven hours and 47 minutes) lends further credence to this random sampling. Even if the greater time required to review the five sampled "Blue Cross Blue Shield" search results were not considered in the calculation, it would still take someone more than 23.5 years to finish reviewing the records for these three search terms (i.e., [(7.2 hours + 7.78 hours) / 10 sample case files * (13,146 + 2,320 + 17,262 records)] / (52 weeks * 40 hours)).

25. The above estimates do not account for annual and sick leave and the demands of other cases. Attempting to sift through all search results for responsive records would consume all resources of the OIG FOIA office for decades, making the search for responsive records unduly burdensome. Additionally, these estimates only estimate the length of time needed to review records for responsiveness. Making release determinations and applying applicable FOIA exemptions would take additional time.

26. The individuals who would process FOIA records in my office range from GS-14 to GS-15. If HHS would employ a GS-14, Step 1 employee full-time to work on Plaintiff Anand's FOIA request for 28 years, it would cost HHS more than $3,534,524 in salary alone, which does not even account for the significant costs of benefits, nor does it account for the fact that the employee would generally receive yearly pay increases, as the employee climbs the GS scale.

27. My office currently has a backload of 57 cases, and we are currently processing three cases of great public interest regarding COVID-19, the Wuhan Institute of Virology, and the NIH

grant to EcoHealth Alliance. Those three cases alone have more than 450,000 responsive records. As a result, my office cannot devote all its resources to Plaintiff Anand's request.

I declare under penalty of perjury that the foregoing to true and correct, to the best of my information and belief. 28 U.S.C. § 1746. Executed this 24th day of April, 2023.

Robin Brooks
Director
Freedom of Information Act Division
Office of Inspector General
U.S. Department of Health and Human Services